No. 21-1786

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

_____

TIMOTHY KING, et al.,
*Plaintiffs*,

and

GREGORY J ROHL; BRANDON JOHNSON; HOWARD KLEINHENDLER;
SIDNEY POWELL; JULIA HALLER; SCOTT HAGERSTROM
*Interested Parties – Appellants,*

v.

GRETCHEN WHITMER; JOCELYN BENSON; CITY OF DETROIT, MI,
*Defendants - Appellees*

_____

On Appeal from the U.S. District Court for the Eastern District of Michigan,
Eastern Division, Case No. 2:20-cv-13134

_____

**Brief of Proposed Amicus Curiae Judicial Watch, Inc. in Support of
Interested Parties-Appellants Sidney Powell, Howard Kleinhendler,
Gregory Rohl, Julia Z. Haller, Brandon Johnson, and Scott Hagerstrom
and Reversal**

_____

Paul Orfanedes
**JUDICIAL WATCH, INC.**
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172

February 14, 2022          *Counsel for Amicus Judicial Watch, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 21-1786              Case Name: King et al., v. Whitmer, et al.

Name of counsel: Paul Orfanedes

Pursuant to 6th Cir. R. 26.1, Judicial Watch, Inc.
                                      *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

No

CERTIFICATE OF SERVICE

I certify that on _____ February 14, 2022 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Paul Orfanedes
   Paul Orfanedes
   porfanedes@judicialwatch.org

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

INTERESTS AND AUTHORITY OF *AMICUS CURIAE* ......................................1

ARGUMENT ...................................................................................................3

    I.    The District Court Abused Its Discretion When It Ruled
        That "All of Plaintiffs' Claims" Were Barred.......................................5

        A.    The District Court Abused Its Discretion By Relying
            on Rulings Issued During or After Appellants
            Initiated These Proceedings ...........................................................5

        B.    Appellants' Other Claims Were Not Barred..............................7

        C.    According to a Plurality on the Supreme Court,
            Non-Legislative Enacted Changes to State Election
            Laws May Violate the U.S. Constitution .................................11

    II.    Time Limitations In Post-Election Litigation Are
        Unquestionably Unique Circumstances Under Rule 11 ....................13

CONCLUSION ...............................................................................................16

CERTIFICATE OF COMPLIANCE....................................................................17

i

# TABLE OF AUTHORITIES

**Cases**                                                                **Page No.**

*A. Philip Randolph Inst. v. Husted*, 838 F.3d 699 (6th Cir. 2016) ...........................2

*A. Philip Randolph Inst. v. Husted*, 907 F.3d 913 (6th Cir. 2018) ...........................2

*Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021) .......................................................8

*Bognet v. Sec'y of Pa.*, 980 F.3d 336 (3d Cir. 2020) ...................................................8

*Bowyer v. Ducey*, 506 F. Supp. 3d 699 (D. Ariz. 2020) ............................................6

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020)..................................................8, 12

*Century Prods., Inc. v. Sutter*, 837 F.2d 247 (6th Cir. 1988) ..................................13

*Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020)..............6

*Foster v. Love*, 522 US 67 (1997)...............................................................................7

*Hotze v. Hudspeth*, No. 20-20574, 2021 U.S. App. LEXIS 32008
    (5th Cir. Oct. 25, 2021)................................................................................ 7-8, 9

*Ill. Conservative Union v. Illinois*,
    No. 20 C 5542 (N.D. Ill. Sept. 28, 2021) ........................................................9

*Issa et al v. Newsom et al.*, No. 2:20-cv-01044-MCE-CKD
    (E.D. Cal. May 21, 2020) .......................................................................12, 13

*Judicial Watch v. Grimes*, No. 17-94 (E.D. Ky. 2017)..............................................1

*Judicial Watch v. Husted*, No. 12-792 (S.D. Ohio 2012) ..........................................1

*Judicial Watch v. Logan*, No. 17-8948 (C.D. Cal. 2017) ..........................................1

ii

*King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020) .............................4, 8, 11

*King v. Whitmer*, No. 20-13134, 2021 U.S. Dist. LEXIS 160532
    (E.D. Mich. August 25, 2021) ........................................................5, 6, 7, 11

*Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*,
    613 F.3d 609 (6th Cir. 2010) ............................................................................6

*Pearson v. Kemp*, No. 1:20-cv-04809 (N.D. Ga. filed Dec. 8, 2020) ......................6

*PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244 (2021) ..........................9, 10

*Republican Party v. Boockvar*, 141 S. Ct. 1 (2020) ...............................................12

*Thomas v. Bryant*, 938 F.3d 134 (5th Cir. 2019) ....................................................11

*TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261 (6th Cir. 1983)...............................10

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995) ..................................9, 10

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ..................................................14

*Williamson v. Recovery Ltd. P'shp*, No. C2-06-292,
    2009 U.S. Dist. LEXIS 99670 (S.D. Ohio Sep. 30, 2009) ...........................10

*Wood v. Raffensperger*, 501 F. Supp. 3d 1310 (N.D. Ga. 2020).............................6

## Federal Constitutional Provisions

U.S. Const. art. I, § 4, cl. 1....................................................................................11

U.S. Const. art. II, § 1, cl. 2 ..................................................................................11

## Federal Rules

Fed. R. Civ. P. 11 ..............................................................................*passim*

## Other Authorities

1A. de Tocqueville, Democracy in America, Ch. VII (H. Reeve transl., 1899) .......3

Fed. R. Civ. P. 11 Advisory Committee's Note to the 1983 Amendment ........13, 14

Lila Hassan and Dan Glaun, *COVID-19 and the Most Litigated Presidential Election in Recent U.S. History: How the Lawsuits Break Down,* FRONTLINE, Oct. 28, 2020...................................................................................4

Rick Pluta, *Whitmer Vetoes Pair of Election-Related Bills,* MI RADIO*,* Oct. 15, 2021 ..................................................................................4

## INTERESTS AND AUTHORITY OF *AMICUS CURIAE* [1]

Judicial Watch, Inc. ("Judicial Watch" or "amicus") files this *amicus curiae* brief under authority of Federal Rule of Appellate Procedure 29(a) in support of Interested Parties-Appellants Sidney Powell, Howard Kleinhendler, Gregory Rohl, Julia Z. Haller, Brandon Johnson, and Scott Hagerstrom ("Appellants"), and urges this Court to reverse the judgment of the district court.

Judicial Watch is a non-partisan foundation that seeks to promote transparency, integrity, and accountability in government and fidelity to the rule of law. In 2010, Judicial Watch established an election integrity group to enforce federal statutes relating to election integrity and voting. Since its inception, Judicial Watch has obtained three statewide agreements related to enforcement of Section 8 of the National Voter Registration Act of 1993. *See Judicial Watch v. Grimes*, No. 17-94 (E.D. Ky. 2017) (NVRA consent decree against the Commonwealth of Kentucky); *Judicial Watch v. Logan*, No. 17-8948 (C.D. Cal. 2017) (settlement agreement with the Los Angeles County Registrar Recorder and California Secretary of State); *Judicial Watch v. Husted*, No. 12-792 (S.D. Ohio 2012) (NVRA settlement

---

[1]    No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person other than the *amicus curiae* or their counsel contributed money that was intended to fund preparing or submitting the brief.

with Ohio).    Attorneys with Judicial Watch's election integrity group have substantial experience investigating and litigating federal voting statutes, including serving in leadership roles at the U.S. Department of Justice enforcing the Voting Rights Act of 1965.  Judicial Watch has appeared before this Court several times as amicus on election integrity matters, including in *A. Philip Randolph Inst. v. Husted*, 838 F.3d 699 (6th Cir. 2016) and *A. Philip Randolph Inst. v. Husted*, 907 F.3d 913 (6th Cir. 2018).

Voting and election litigation constitute some of the most contentious, political forms of civil rights litigation.  These qualities are even more acute in post-election disputes where litigation schedules are compressed and available information is limited and often dynamic.  Nevertheless, the prosecution (and defense) of election disputes play an important role in our electoral and political process.

As a conservative advocacy group that often brings election and voting lawsuits, including those to enforce federal and state election integrity laws, Judicial Watch has a particular interest in the issues at stake here.  If the decision of the district court is affirmed, and the Appellants are sanctioned, the precedent will be weaponized to threaten legitimate parties prosecuting election integrity claims.

2

## ARGUMENT

Over 175 years ago, Alexis de Tocqueville described America's presidential

election in this way:

> For a long while before the appointed time has come, the election
> becomes the important and, so to speak, the all-engrossing topic of
> discussion. Factional ardor is redoubled, and all the artificial passions
> which the imagination can create in a happy and peaceful land are
> agitated and brought to light. The President, moreover, is absorbed by
> the cares of self-defense. He no longer governs for the interest of the
> state, but for that of his re-election; he does homage to the majority, and
> instead of checking its passions, as his duty commands, he frequently
> courts its worst caprices. As the election draws near, the activity of
> intrigue and the agitation of the populace increase; the citizens are
> divided into hostile camps, each of which assumes the name of its
> favorite candidate; the whole nation glows with feverish excitement,
> the election is the daily theme of the press, the subject of private
> conversation, the end of every thought and every action, the sole
> interest of the present. It is true that as soon as the choice is determined,
> this ardor is dispelled, calm returns, and the river, which had nearly
> broken its banks, sinks to its usual level; but who can refrain from
> astonishment that such a storm should have arisen?

1A. de Tocqueville, Democracy in America, Ch. VII (H. Reeve transl., 1899).[2]   On

several occasions, this long national tradition has led to litigation.   That was

especially true in 2020, when a divisive presidential election, coinciding as it did

---

[2]      Available    at    http://xroads.virginia.edu/~Hyper/DETOC/1_ch08.htm    (last
visited Feb. 11, 2022.

with a worldwide pandemic and countless new state electoral practices, led to over 400 election related lawsuits even before election day.[3]

Election and voting litigation typically first arise by way of pre-election suits, but some, like this one, arise post-election.  Due to the nature of the fixed election date for the national presidential election and post-election certification, these cases usually require expedited proceedings.  Regardless of the outcome, eventually these disputes move from the courtroom to appellate courts to the legislatures where, like this year, countless new reforms are considered.[4]

As part of that process, Appellants filed suit on behalf of several federal candidates seeking to be presidential electors.  The suit raised novel, complex statewide claims involving the Elections Clause, the Electors Clause, and the Fourteenth Amendment of the United States Constitution.  The district court held truncated, emergency proceedings before promptly ruling *twelve* days after the complaint was filed.  *See King v. Whitmer*, 505 F. Supp. 3d 720 (E.D. Mich. 2020).  Appellants lost and immediately appealed before voluntarily dismissing the case.

---

[3]    Lila Hassan and Dan Glaun, *COVID-19 and the Most Litigated Presidential Election in Recent U.S. History: How the Lawsuits Break Down,* FRONTLINE, Oct. 28, 2020, available at https://to.pbs.org/3oLHcqu (last visited February 13, 2022).
[4]    Rick Pluta, *Whitmer Vetoes Pair of Election-Related Bills,* MI RADIO, Oct. 15, 2021, available at https://bit.ly/3JnEcIN (last visited Feb. 11, 2022).

Traditionally, that has been the end to such proceedings.  Eight months later, however, the trial court sanctioned Appellants, holding them jointly and severally liable for $21,964.75 to Defendants Governor and Secretary of State and $153,285.62 to Defendant City of Detroit.  *King v. Whitmer*, No. 20-13134, 2021 U.S. Dist. LEXIS 160532 (E.D. Mich. August 25, 2021) ("sanctions order").

Amicus submits that the district court abused its discretion in sanctioning Appellants.

## I.    The District Court Abused Its Discretion When It Ruled That "All of Plaintiffs' Claims" Were Barred.

Amicus respectfully submits the district court wrongly concluded that all of Appellants' arguments were frivolous under Rule 11(b)(2).  In particular, the district court underestimated the degree of disagreement amongst the courts over some of the legal issues raised in these proceedings, especially those related to the Elections and Electors Clauses.

### A. The District Court Abused Its Discretion By Relying on Rulings Issued During or After Appellants Initiated These Proceedings.

The district court's decision to sanction Appellants relied, in part, on the rulings from other highly truncated preliminary proceedings that were being conducted contemporaneously with the proceedings in this matter.  The court explained that "[a]t the inception of this lawsuit, all of Plaintiffs' claims were barred by the doctrines of mootness, laches, and standing, as well as Eleventh Amendment

immunity." *King*, 2021 U.S. Dist. LEXIS 160532, at *52.  The court cited to several

other rulings from 2020 post-election proceedings that it seemingly relied on to

determine that the Appellants' claims were frivolous at inception.  *Id.* at *56 n.34.

The court explained that "[t]he fact that no federal district court considering the

issues at bar has found them worthy of moving forward supports the conclusion that

the Plaintiffs' claims are frivolous."  *Id.*

Yet, every one of the cases cited by the district court in footnote 34 was issued

*after* the Appellants filed their complaint.[5]  *Id.*  While that supports the decision to

deny preliminary relief, it does not prove that Appellants' claims were frivolous "at

the inception."  Appellants are not responsible for conforming their claims to rulings

that were not released until after they filed their complaint or requested the court

hold emergency proceedings.

Rule 11's inquiry focuses on "what was reasonable to believe at the time the

pleading, motion, or other paper was submitted."  *Merritt v. Int'l Ass'n of Machinists*

*and Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (citation omitted).  The

rulings from Georgia, Wisconsin, and Arizona support the court's denial of

preliminary relief, nothing more.  Moreover, none of the election cases cited by the

---

[5]     *Pearson v. Kemp*, No. 1:20-cv-04809 (N.D. Ga. filed Dec. 8, 2020); *Wood v. Raffensperger*, 501 F. Supp. 3d 1310 (N.D. Ga. 2020); *Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020); *Bowyer v. Ducey*, 506 F. Supp. 3d 699 (D. Ariz. 2020).

trial court that supposedly "disposed of" Appellants' claims were controlling law in this Circuit. *See King*, 2021 U.S. Dist. LEXIS 160532, at *56 n.33, n.34. Rule 11 provides breathing space for parties to make a good faith application for a modification of existing law, and Appellants were certainly entitled to make such arguments in emergency proceedings without the threat of Rule 11 sanctions.

### B. Appellants' Other Claims Were Not Barred.

*Amicus* respectfully disagrees that it was frivolous for Appellants to argue that their claims were not barred by the doctrines of mootness, laches, and standing, as well as Eleventh Amendment immunity.

With respect to standing, prior to the 2020 election, it was commonly understood that candidates and voters had standing under the Elections and Electors Clause. *See, e.g.*, *Foster v. Love*, 522 US 67 (1997) (involving a voter initiated suit to enforce federal Election Day statutes). However, candidate standing radically narrowed on the eve of the 2020 election after a few district courts ruled that President Trump lacked standing in several pre-election suits. For many election law practitioners, this was a sudden, material shift in the law, because prior to these rulings candidates were generally viewed to have federal standing, especially if the claims involved federal elections in which they were currently federal candidates. Courts are still struggling with this new shift, as recently illustrated by a ruling from the Fifth Circuit that discussed candidate standing. *See Hotze v. Hudspeth*, No. 20-

7

20574, 2021 U.S. App. LEXIS 32008, at *8 (5th Cir. Oct. 25, 2021) (Oldham, J.,

dissenting) ("[I]t's hard to imagine anyone who has a more particularized injury than

the candidate has.")

This lack of a majority view on candidate standing illustrates why the district

court abused its discretion when it ruled Appellants' standing arguments were

frivolous. The district court's ruling that it was frivolous to contend that federal

candidates have standing in federal suits involving their federal election is all the

more vexing when considering that its order denying emergency relief required it to

address a circuit split *on this very issue*. *See King*, 505 F. Supp. 3d at 736-37

(discussing *Bognet v. Sec'y of Pa.*, 980 F.3d 336 (3d Cir. 2020) and *Carson v. Simon*,

978 F.3d 1051 (8th Cir. 2020)). It is even more perplexing when the Sixth Circuit

has been silent on the issue. While the district court had authority to adopt the Third

Circuit's approach in *Bognet*, it certainly was not frivolous for Appellants to argue

for Sixth Circuit district courts to adopt the Eighth Circuit's approach in *Carson*. In

fact, the Appellants' arguments in support of the Eighth Circuit's approach were

more than reasonable; they were more aligned with pre-2020 precedent than the

Third Circuit's approach.[6] The district court never explained why it believes the

---

[6]    The Supreme Court later vacated the Third Circuit's ruling in *Bognet*. *See Bognet v. Degraffenreid*, 141 S. Ct. 2508 (2021). *Carson* remains good law.

Eighth Circuit's approach was unreasonable or frivolous under Rule 11.[7]

Regardless, Appellants' good faith standing arguments were not sanctionable under Rule 11.

With regard to sovereign immunity under the Eleventh Amendment, Appellants' arguments again were not frivolous. There are unique immunity issues that apply to the Elections and Electors Clauses. *Cf. U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 804–05 (1995) and *PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2258–59 (2021). The Northern District of Illinois recently discussed these issues in a ruling on a motion to dismiss. *Ill. Conservative Union v. Illinois*, No. 20 C 5542, ECF No. 29 (N.D. Ill. Sept. 28, 2021). In that case, the State of Illinois and its Board of Elections both claimed sovereign immunity for plaintiffs' claims arising under the NVRA, a statute passed pursuant to Congress' Elections Clause powers. Finding that neither defendant was entitled to Eleventh Amendment immunity in the Election Clause context, the court explained that the "Constitution divested the States of any original power over elections and gave that power to the federal government" and thus "the States consented to suit for claims related to the time, place, and manner of federal elections." *Id.* (applying the plan of the

---

[7]    Resolving the conflict between the vacated Third Circuit's and the Eighth Circuit's approach to standing is an issue with which federal courts are *still* struggling. *See Hotze*, 2021 U.S. App. LEXIS 32008, at *5.

9

Convention doctrine as set forth under *U.S. Term Limits* and *PennEast*). Stated differently, states never had any power over federal elections prior to the constitution and, thus, never had any immunity in federal elections to preserve following the ratification of the Eleventh Amendment.

The unique immunity issues that arise in the Election Clause context are often overlooked by trial courts. That is to be expected where, like here, a trial court is having to evaluate these questions in a truncated, emergency proceeding. Nevertheless, it was not frivolous or unreasonable under Rule 11(b)(2) for Appellants to argue that Michigan state Defendants were not immune under the Elections and Electors Clause.

The district court's sanction relating to the equitable doctrine of laches has the most potential to prejudice future advocacy and deter civil rights litigants. Because the doctrine of laches is so fact-specific, it is virtually impossible for plaintiffs to know whether it bars their claims, prior to being served with a dispositive motion. *Williamson v. Recovery Ltd. P'shp*, No. C2-06-292, 2009 U.S. Dist. LEXIS 99670, at *14 (S.D. Ohio Sep. 30, 2009) ("matters related to … the equitable doctrine of laches are inherently fact specific and thus not amenable to dismissal at the pleading stage."). "The [laches] doctrine's provenance is the conscience of the Chancellor, and its application is not governed by the rules of the common law." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1268 (6th Cir. 1983).

10

The district court correctly noted that federal courts have used the doctrine in the voting context. *King*, 505 F. Supp. 3d at 731-32. But, as the Fifth Circuit noted, the doctrine generally has limited uses in the context of elections. *Thomas v. Bryant*, 938 F.3d 134, 150 (5th Cir. 2019). Converting the doctrine into grounds for sanctions was an abuse of discretion. The possibility of sanctions over the issue of laches creates a risk for all civil rights litigants who are often challenging longstanding government practices and laws. Many of our country's most celebrated civil rights cases could have been subject to laches when they were filed since they challenged longstanding government practices and laws.

### C. According to a Plurality on the Supreme Court, Non-Legislative Enacted Changes to State Election Laws May Violate the U.S. Constitution.

As noted earlier, many states, including Michigan, saw new election procedures implemented during the 2020 federal election. However, some of those new procedures were adopted by state executive and judicial branches, rather than the state legislatures as required under the Election and Electors Clauses. U.S. Const. art. I, § 4, cl. 1 and U.S. Const. art. II, § 1, cl. 2. In its sanctions order, the district concluded that Appellants' Election and Electors Clause claims were frivolous. *King*, 2021 U.S. Dist. LEXIS 160532, at *63. Amicus respectfully submits the district court abused its discretion by ignoring significant precedent

11

supporting the contention that certain non-legislative changes (or waivers) to state election laws may trigger a violation of the Elections or Electors Clauses.

The first suit alleging violations of the Elections and Electors Clause arose in May 2020 in response to an executive order by Governor Newsom mandating that all counties implement all-mail balloting. *See Issa et al v. Newsom et al.*, No. 2:20-cv-01044-MCE-CKD (E.D. Cal. May 21, 2020). Shortly after that suit was filed, the California Assembly adopted new legislation implementing Governor Newsom's executive order and, thus, the suit was dismissed a few weeks later on July 9, 2020. *See Issa*, No. 2:20-cv-01044-MCE-CKD, ECF No. 65 (E.D. Cal. July 9, 2020). However, similar suits sprang up nationwide as state executive and judicial branches ordered new electoral practices. Plaintiffs in several of these cases were successful, including the plaintiffs in *Carson*, 978 F.3d at 1060 ("[T]he Secretary has no power to override the Minnesota Legislature.")

To be sure, claims under the Elections and Electors Clause are fact specific, but they are not frivolous by any measure. In fact, on October 28, 2020, at least three Supreme Court justices agreed that there was a "strong likelihood" that a judicially ordered change to state electoral practices (without an underlying violation of state and federal law) violated the Elections and Electors Clauses. *Republican Party v. Boockvar*, 141 S. Ct. 1, 2 (2020) (Alito, J., concurring). Of course, Judicial Watch does not seek to revisit the district court's denial of emergency relief on these

claims. Rather, Judicial Watch notes that the law on these claims was in flux between May 21, 2020 when these such claims first appeared in the *Issa* case, through the post-election process in 2020. Accordingly, it was not frivolous for Appellants to claim that some waivers of, or changes to, Michigan's election laws may have violated the Elections or Electors Clauses.

## II.    Time Limitations In Post-Election Litigation Are Unquestionably Unique Circumstances Under Rule 11.

"The conduct of counsel that is the subject of sanctions must be measured by an objective standard of reasonableness under the circumstances." *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 251 (6th Cir. 1988) (citations omitted). "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Fed. R. Civ. P. 11 Advisory Committee's Note to the 1983 Amendment. "The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id. See also Sutter*, 837 F.2d at 250. Because it did not account for the unique circumstances under which these proceedings occurred, the district court abused its discretion sanctioning Appellants under Rule 11(b)(3).

The notes from the 1983 Amendments to Rule 11 provide several factors to assist courts in determining what constitutes a reasonably inquiry:

13

how much time for investigation was available to the signer; whether
he had to rely on a client for information as to the facts underlying the
pleading, motion, or other paper; whether the pleading, motion, or other
paper was based on a plausible view of the law; or whether he depended
on forwarding counsel or another member of the bar.

*Id.* When accounting for the acutely truncated proceedings in this case, each of these
factors weighs against finding that Appellants violated Rule 11(b)(3).

Most election and voting litigation involve preliminary relief.[8]  Compared to
other types of civil litigation, these cases proceed at breakneck speed often due to
immovable, external federal and state deadlines such as those for candidate
qualifying, ballot printing and mailing, election day, and election certification.  This
breakneck speed is especially acute in the context of post-election proceedings.  As
a result, courts hearing these cases often must forgo traditional formalities.

The emergency proceedings in this matter were initiated, fully briefed, and
concluded *over twelve days*.  This timeline was, of course, appropriate under the
circumstances.  However, litigants handling novel, complex statewide claims in
truncated proceedings cannot be expected to meet the standards that apply to an

---

[8]    The Supreme Court has long recognized that preliminary proceedings are less
trustworthy than rulings on the merits, which can limit their precedential value.
"[P]reliminary injunction is customarily granted on the basis of procedures that are
less formal and evidence that is less complete than in a trial on the merits." *Univ. of
Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) (explaining that because preliminary
rulings are not binding at trial "it is generally inappropriate for a federal court at the
preliminary-injunction stage to give a final judgment on the merits.") (citations
omitted).

ordinary civil trial.  It is impossible to overstate the amount of work needed to prepare a statewide election case even without the acute time restrictions that arise in post-election proceedings.

Appellants were not allowed any discovery throughout these proceedings. More importantly, they were not allowed discovery before being ordered to defend the merits of post-election claims they brought in highly truncated emergency proceedings.  Yet, the district court's sanction order suggests it engaged in a merits-based hearing before sanctioning Appellants.  Holding litigants from truncated, emergency proceedings to the same level of care of ordinary civil litigants is highly prejudicial.  More significantly, to do so affirmatively violates Rule 11's requirement that a litigants' conduct "must be measured by an objective standard of reasonableness under the circumstances."

While there is no doubt that some of the claims brought in these emergency proceedings are controversial and unpopular, requiring Appellants to engage in a post-dismissal, pre-discovery defense of the merits of their claims does not comport with Rule 11's mandate for ordering sanctions.  Because its Rule 11(b)(3) findings do not account for the unique circumstances present in these proceedings, the district court abused its discretion.

## CONCLUSION

For the foregoing reasons, Judicial Watch respectfully request this Court reverse the lower court's order sanctioning Appellants.

February 14, 2022

Respectfully submitted,

 *s/ Paul Orfanedes*
Paul Orfanedes
**JUDICIAL WATCH, INC.**
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172
porfanedes@judicialwatch.org

*Attorneys for Judicial Watch, Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this brief is proportionally spaced, 14-point Times New Roman font.  Per Microsoft Word count, the brief contains 3561 words excluding tables and certificates.


February 14, 2022                                      *s/ Paul Orfanedes*

**CERTIFICATE OF SERVICE AND ELECTRONIC FILING**

I hereby certify, pursuant to Fed. R. App. P. 25(d)(2), that I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system.  I certify that the parties in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF service.

February 14, 2022                                        *s/ Paul Orfanedes*