Case No. 21-1786

United States Court of Appeals
for the Sixth Circuit

TIMOTHY KING, ET AL.

　　　　*Plaintiffs*,

and

GREGORY J. ROHL, BRANDON JOHNSON, HOWARD KLEINHENDLER,
SIDNEY POWELL, JULIA Z. HALLER, SCOTT HAGERSTROM

　　　　*Interested Parties – Appellants*,

v.

GRETCHEN WHITMER, JOCELYN BENSON, CITY OF DETROIT, MI

　　　　*Defendants – Appellees*,

**On Appeal from the United States District Court
for the Eastern District of Michigan
Case No. 2:20-cv-13134**

**Appellee City Of Detroit's Response To Emergency Motion To Stay Non-Monetary Sanctions By Appellants Sidney Powell, Howard Kleinhendler, Gregory Rohl, Julia Z. Haller, Brandon Johnson, And Scott Hagerstrom**

**FINK BRESSACK**
David H. Fink (MI – P28235)
Nathan J. Fink (MI – P75185)
*Counsel for Appellee City of Detroit*
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
nfink@finkbressack.com

## INTRODUCTION

The City of Detroit opposes this last-minute "emergency" motion for a stay of the District Court's Order. This extraordinarily late motion, filed without first seeking a stay at the District Court, is yet another example of Appellants' disregard for the rules of the courts in which they practice. On August 25, 2021, Judge Linda Parker issued her Opinion and Order, giving Appellants six months to complete 12 hours of continuing legal education—6 hours on pleading standards and 6 hours on election law. That deadline—February 25, 2022—is fast approaching. For nearly six months, Appellants sat on their rights. Only now, with days to go before they will presumably be in contempt of the District Court, Appellants bypass the District Court and ask this Court for special dispensation, offering a collection of unpersuasive excuses for their failure to comply with this Court's rules. There is simply no legal or equitable reason that these attorneys should be treated more favorably than anyone else who ignores a lawful court order.

## STANDARD FOR STAY PENDING APPEAL

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Virginian R. Co. v. U.S.*, 272 U.S. 658, 672 (1926). Instead it is "an exercise of judicial discretion," and the "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id*. at 672-73. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that

discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). "A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (brackets omitted). These legal principles have been distilled into four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken*, 556 U.S. at 434 (quoting *Hilton v. Braunskill*, 481 U.S. 770, (1987)). The first two factors "are the most critical." *Nken*, 556 U.S. at 434. "It is not enough that the chance of success on the merits be better than negligible." *Id.* (quotation marks omitted). "By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor." *Id*. (citation and quotation marks omitted).

## ARGUMENT

### I.    This Motion Is Untimely And Is Improperly Brought To This Court Without First Seeking Relief From The District Court.

It is a basic rule of appellate procedure that a party seeking a stay of a district court's order pending appeal must first move for that stay in the district court. Fed. R. App. P. 8(a)(1)(A) A motion for a stay may be brought in the Court of Appeals only where the movant demonstrates that "moving first in the district court would be impracticable" or that the district court has already denied their motion to stay.

Fed. R. App. P. 8(a)(2). Appellants claim that moving first in the district court would have been impracticable, but their explanation is unpersuasive. Appellants support their failure to follow this Court's rules with three arguments: (1) the District Court's "delay" in determining the amount of fees awarded prevented them from timely filing a motion in the District Court; (2) the District Court's stay of the monetary sanctions "effectively decided the issue of whether to stay the non-monetary [sanctions.]"; and (3) it was "prudent" to file their motion "only after their First Amendment and other arguments were fully fleshed out." Motion at 2-3. Neither of these arguments have merit, and for this reason alone the requested stay should be denied. *Whole Woman's Health v. Paxton*, 972 F.3d 649, 654 (5th Cir. 2020). (holding that where an appellant has failed to demonstrate the impracticability of moving first in the district court, denial of a motion to stay is warranted.)

Appellants' delay is inexcusable. After procrastinating for months and never seeking a stay at the District Court, Appellants come to this Court on an "emergency" basis. But any emergency is entirely of Appellants' own making. Appellate courts do "not lightly grant emergency relief, especially where the 'emergency' is largely one of [Appellants'] own making." *Boston Parent Coalition for Academic Excellence Corp. v. School Committee of City of Boston*, 996 F.3d 37, 50 (1st Cir. 2021).

The District Court issued its Opinion and Order including the non-monetary sanctions on August 25, 2021. After reviewing submissions and determining monetary sanctions, the District Court entered its final order on December 2, 2021. The December 2, 2021 Order stayed the monetary sanctions pending appeal, but did not stay the non-monetary sanctions. Order, RE 179, Page ID # 7168. Appellants filed their Notice of Appeal in the District Court on December 3, 2021. Notice of Appeal, RE 182. Then, for more than ten weeks, despite the clearly-delineated February 25, 2022, deadline for compliance with the District Court's Order to attend 12 hours of continuing legal education, Appellants did nothing.

The instant motion was filed on February 14, 2022—nearly six months after Appellants were put on notice of the non-monetary sanctions and 74 days after the final Order that is the subject of this appeal. Anyone familiar with the rules of this Court should know that this motion is filed far too late to address an Order requiring compliance on or before February 25, 2022. Under ordinary circumstances, this Court's rules allow Appellees ten (10) days to respond to Appellants' Motion. Fed. R. App. P. 27(a)(3)(A) Appellants would then have had seven more days to file their Reply. Fed. R. App. P. 27(a)(4). Thus, under standard motion practice, the deadline for compliance with the District Court's Order would pass long before this motion would be heard. Nothing in their motion or brief suggests that Appellants have met the District Court's legal education requirements, so, presumably, in the absence of

emergency relief from this Court, Appellants would have been in contempt of court well before this Court could issue a ruling on the motion to stay.

Appellants claim impracticability because "it would not have been possible for the District Court and this Court both to receive full briefing and issue a decision in advance of the February 25 deadline." Motion at 2. But, even with standard motion practice, that claim is simply wrong. With nearly three months, the District Court could have ruled and left enough time for briefing and a decision from this Court. And, if this really had been Appellants' concern, they could have asked for expedited briefing schedules. They did not; instead, they did nothing. Appellants' delay in filing this motion belies their claim that an "emergency" rendered filing in the District Court impracticable.[1] *See Chemical Weapons Working Group (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1361 (10th Cir. 1996) (finding that movants' delay of 66 days between entry of order in district court and filing of motion to stay in the appellate court belied argument that moving first in the district court was temporally impracticable). While Appellants may have preferred to bypass the District Court and move this Court for a stay, "[p]reference and impracticability are not synonyms." *Whole Woman's Health*, 972 F.3d at 654.

---

[1] Appellants do not explain why it would have been impossible for the District Court to resolve the stay issue in the 85 days between December 2, 2021 and February 25, 2022, while they have asked this Court to decide the issue in 10 days.

The only case that Appellants cite in support of their temporal impracticability argument is clearly distinguishable. In *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020), this Court found that it would be impracticable for the Governor of Kentucky to move the district court for a stay of an injunction barring enforcement of COVID-19 orders regarding the state's schools where the injunction was entered by the district court only 5 days before in-person instruction was scheduled to begin. Here, any temporal emergency is solely the result of Appellants' own delay.

Appellants' argument that the District Court's decision to stay the payment of monetary sanctions on its own initiative somehow proves that the District Court had prejudged any motion for stay of the non-monetary sanctions is both incomprehensible and offensive. The fact that the District Court, *sua sponte*, stayed monetary sanctions pending appeal certainly does not compel the conclusion that the District Court would be unwilling to consider a properly filed and briefed motion to stay the non-monetary sanctions. Appellants' insinuation that the District Court would not have heard in good faith a motion to stay is unworthy of consideration by this Court. *Evans v. Michigan*, 568 U.S. 313, 325-26 (2013) ("We presume here, as in other contexts, that courts exercise their duties in good faith."). The fact that the District Court issued a ruling adverse to Appellants in the first instance does not mean that it would be "futile" to move the District Court for a stay; that factor would apply in virtually every request for a stay. *Boston Parent Coalition*, 996 F.3d at 43;

*see also, Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844-45 (D.C. Cir. 1977) ("Prior recourse to the initial decisionmaker would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision."); *Bayless v. Martine*, 430 F.2d 873, 879 n.4 (5th Cir. 1970) ("It does not follow from the refusal to grant a preliminary injunction pending a trial in the court below that the district court would refuse injunctive relief pending an appeal.").

The sole case cited by Appellants on this point, *Walker v. Lockhart*, 678 F.2d 68 (8th Cir. 1982), is distinguishable. In *Walker*, an inmate plaintiff sought an injunction barring Arkansas prison officials from moving him out of administrative segregation, on the basis that his life would be endangered if he were returned to the general prison population. *Id*. at 69-70. The Eighth Circuit excused the plaintiff from filing a motion for an injunction pending appeal in the trial court on the basis that the trial court had previously determined that the plaintiff was "safe" in the Arkansas prison system and had stated that it was "unwilling to interfere with the operation of the Arkansas prison in respect to Mr. Walker." *Id*. at 70. The district court in *Walker* expressly stated that it had reached a decision on the merits of the plaintiff's motion for an injunction, in addition to the merits of his substantive claims. Here, the only evidence that Appellants can cite in support of their argument that it would have

been futile to move the District Court for a stay is that the District Court stayed enforcement of the monetary portion of its Order on its own initiative.

Appellants' suggestion that this late filing is justified because they were waiting until "their First Amendment and other merits arguments were fully fleshed out" has no basis in the rules and would apply in literally every appeal.

## II.   Appellants Have Failed To Demonstrate That They Are Likely To Prevail On The Merits.

### a.  The sanctions order is not procedurally defective

Appellants' argument regarding the propriety of non-monetary sanctions under Rule 11 is without merit. Appellants' argument ignores the District Court's analysis of Appellants' Rule 11 violations. The District Court did not impose Rule 11 sanctions on Appellants because they "fail[ed] to dismiss the case once it became moot." Motion at 8. It imposed Rule 11 sanctions because it determined that "[a]t the inception of this lawsuit, all of Plaintiffs' claims were barred by the doctrines of mootness, laches, and standing, as well as Eleventh Amendment immunity." RE 172, Page ID # 6942. Appellants are also incorrect that a court's inherent authority does not enable it to impose non-monetary sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (listing non-monetary sanctions courts may impose under their inherent authority).

### b.  The sanctions order does not violate Appellants' First Amendment rights

Appellants argue that the District Court's order compelling them to attend non-partisan continuing legal education classes violates their First Amendment rights. Motion at 9-11. The First Amendment's free speech clause protects individuals from compelled speech and it protects individuals' right of association, but it does not protect individuals from being compelled to listen to speech with which they disagree. *See e.g., Verner v. State of Colo.*, 716 F.2d 1352, 1353 (10th Cir. 1983) (affirming dismissal of the plaintiff's claim that Colorado's continuing legal education requirements violated his First Amendment rights). Appellants cite no case law supporting the proposition that individuals have a First Amendment right not to hear speech they disagree with. Not surprisingly, the cases they cite deal only with restrictions on speech itself. Certainly, governmental content-based restrictions on speech are subject to exacting judicial review, but the District Court's Order imposes no restrictions on the Appellants' right to speak.[2]

The suggestion that non-partisan continuing legal education is some type of indoctrination or political "re-education" is patently absurd. Almost all continuing legal education is not partisan. The District Court's cautionary guidance that this

---

[2] And, any First Amendment claim based upon freedom of association was recently rejected by this Court when it found that compulsory membership in a state bar association does not violate lawyers' First Amendment rights. *Taylor v. Buchanan*, 4 F.4th 406, 407 (6th Cir. 2021).

education should be "non-partisan" actually protects Appellants from any argument that they were required to take courses with an inappropriate political bias. More importantly, the District Court did not select the courses to be taken; the Court allowed the Appellants to choose their own courses, simply requiring that those courses not be partisan and that they provide training in the rules of pleading and in election law.

### c. The District Court appropriately sanctioned Appellants for filing frivolous claims

Appellants argue that non-monetary sanctions under Rule 11 were not proper because they did not file frivolous claims. Appellants note that failure to satisfy Rule 12(b)(6) alone is not sufficient to impose sanctions under Rule 11. Motion at 11-12. This is, of course, true. But the District Court did not sanction Appellants simply because they failed to state a claim on which relief could be granted. Instead, the District Court determined that all of Appellants' claims were barred by mootness, laches and lack of standing, that they failed to present a non-frivolous argument for modifying the law, and that they had not even identified any authority that would authorize a court to grant the extraordinary relief requested. RE 172, Page ID # 6942-43.

Appellants cite three cases for the proposition that this Court "take[s] a strict view of what constitutes frivolousness for purposes of sanctions." Motion at 12. Each case is distinguishable. In *Wall v. Michigan Rental*, 852 F.3d 492, 497 (6th Cir.

2017) and *Porter v. Brown*, 289 F. App'x 114, 117 (6th Cir. 2008), this Court considered, but then declined to impose, sanctions against appellants who filed arguably frivolous appeals. But the mere fact that this Court exercised its discretion not to impose sanctions for a frivolous filing in two instances does not render it improper for another court to impose sanctions under Rule 11. Likewise, in *Kalvitz v. City of Cleveland*, 763 Fed. App'x 490 (6th Cir. 2019) this Court chose not to sanction an appellant's counsel for "poor advocacy[.]" *Id.* at 497. Notably, this Court stated in *Klavitz* that an appellant should be sanctioned where they "argued the facts and evidence, in complete disregard for the law"—exactly what the District Court found Appellants did in this case. *Id.* (quoting *McDonald v. Flake*, 814 F.3d 804, 817 (6th Cir. 2016)); RE 172, Page ID # 6942-53.

Appellants argue that if this Court allows the sanctions imposed against them to stand "no sensible attorney will take election cases in this Circuit[.]" Motion at 12. But Appellants were not sanctioned for filing an election case, or for representing "certain kinds of clients[,]" or for filing disfavored claims—they were sanctioned because they asserted, in bad faith and for an improper purpose, claims that had no colorable basis in fact or law. RE 172, Page ID # 6992.

### d.  The District Court properly held that the City complied with Rule 11's safe harbor

Appellants argue that Rule 11 sanctions are inappropriate because they dismissed the case before the deadline to respond to the City's motion for Rule 11

sanctions. Rule 11(c)(2) requires a party filing a motion for Rule 11 sanctions to first serve a copy of the motion upon the party against whom sanctions are sought. If the filing is not withdrawn or appropriately corrected within 21 days, the party seeking sanctions may then file the motion with the court. As detailed in the District Court's Opinion, the City fully complied with the Rule 11 safe harbor requirement. The City served a safe harbor letter containing the motion upon Appellants on December 15, 2020. RE 161-3, Page ID # 6059-67. 21 days later, on January 5, 2021, the City filed its motion for Rule 11 sanctions. RE 78. Appellants cite no authority in support of their argument that the safe harbor period does not expire until a Rule 11 sanctions motion (which cannot even be filed until after the expiration of the safe harbor period) is fully briefed. If Appellants were correct, a party facing Rule 11 sanctions could evade any responsibility by waiting until the motion for sanctions is fully briefed, weigh their chances of success, and then dismiss a frivolous case at the last moment. Such a construction of the safe harbor requirement would run directly counter to the "central purpose" of Rule 11, which is to "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

### III.    Appellants Will Not Face Irreparable Harm Without A Stay.

Appellants are not at risk of irreparable harm without a stay of the non-monetary sanctions. The District Court did not order that Appellants be disbarred or suspended from the practice of law, merely that they be referred to their state bar

associations for investigation. RE 172, Page ID # 6999. Appellants do not claim that any adverse action has been taken against them by any state bar association, and any investigation into their misconduct will likely take considerable time. Appellants' argument that they risk irreparable harm because participating in continuing legal education at a non-partisan institution of their choosing would be "irremediable" is risible at best. [3]

## IV.    The Public Interest Would Not be Served by a Stay

The final element in addressing this type of extraordinary relief—the public interest—also favors rejection of this motion. The District Court found that Appellants engaged in "a historic and profound abuse of the judicial process." RE 172, Page ID # 6890. Granting Appellants' tardy application for a stay of the non-monetary sanctions imposed by the District Court would be directly contrary to the public interest, sending a message that lawyers need not observe the rules or the orders of federal courts.

---

[3] Indeed, Appellants' failure to timely and properly file their Motion to Stay suggests that 6 hours of continuing legal education classes on pleading standards would be salutary.

## CONCLUSION

This motion is simply a continuation of Appellants' flagrant disregard for the rules of the courts in which they practice. Appellants' untimely "emergency" motion to stay the District Court's Order for non-monetary sanctions is meritless and should be denied.

Respectfully submitted,

February 18, 2022

**FINK BRESSACK**[4]

By:    /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
*Counsel for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

---

[4] Counsel for the City of Detroit, the governmental unit responsible for the conduct of the election which Appellants sought to overturn, and the entity referred to by Appellants as an "officious interloper." Motion at 5.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 18, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record registered for electronic filing.

**FINK BRESSACK**

By:    */s/* Nathan J. Fink
Nathan J. Fink (P75185)
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel.: (248) 971-2500
nfink@finkbressack.com