No. 21-1786

# United States Court of Appeals
## for the Sixth Circuit

——— ⊢ ———

**Timothy King, et al.**
*Plaintiffs*

and

**Gregory J. Rohl; Brandon Johnson; Howard Kleinhendler;
Sidney Powell; Julia Haller; Scott Hagerstrom**
*Interested Parties - Appellants*

v.

**Gretchen Whitmer; Jocelyn Benson; City of Detroit, MI**
*Defendants-Appellees*

——— ⊢ ———

Appeal from the United States District Court
Eastern District of Michigan
No. 2:20-cv-13134
Honorable Linda V. Parker, District Judge, Presiding

**Reply in Support of Emergency Motion to Stay Non-Monetary
Sanctions by Appellants Sidney Powell, Howard Kleinhendler,
Gregory Rohl, Julia Z. Haller, Brandon Johnson, and Scott
Hagerstrom**

Howard Kleinhendler, Esq.
369 Lexington Avenue, 12th Floor
New York, NY 10017
Ph: 917-793-1188
E-Mail: howard@kleinhendler.com

Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com

*Counsel for Appellants*

In opposing Appellants' motion for a stay, the Governor, Secretary of State, and City of Detroit rely in largest measure on the argument that Appellants should have moved for relief from the District Court first. But even if Appellants had no justification for requesting relief from this Court in the first instance, that would not foreclose their motion. Every court to consider the issue has concluded Federal Rule of Appellate Procedure 8's directive to move first in the district court is neither jurisdictional nor even mandatory.

In any event, as revealed by the extramural investigatory activities of the Governor and Secretary of State, and the District Court's Friday afternoon docket machinations, Appellants were wholly justified in bypassing the District Court. The die was cast just a day after the District Court's August 25, 2021, order that is now on appeal. On February 18, 2022—this past Friday—the District Court quietly updated its docket sheet to reflect that its Clerk's Office executed the referral on August 26, 2021, long before judgment and long before there was jurisdiction to appeal, and without notice or an opportunity for Appellants to object. Exhibit A, p. 1. The District Court is clearly bent

1

on vengeance, not justice.  At a minimum, these facts justify Appellants turning to this Court in the first instance for a fair shake.

A fair shake would stay the un-stayed portion of the District Court's judgment.  The requirement to participate in "non-partisan" CLE is a flagrant First Amendment violation, the harm from which is irreparable as a matter of law.  The referral for bar discipline bearing a federal judge's imprimatur should never have been sent prior to a full and fair opportunity for review on appeal, and the harm is again irreparable.  While the entirety of the harm attending the District Court's precipitous action may no longer be avoidable, by suspending the District Court's authority to act *nunc pro tunc*, its Clerk's Office can at least be required to recall the earlier transmission pending disposition of this appeal.  Nothing can be certain in proceedings involving separate court systems, but it can reasonably be hoped that bar associations and their supervising authorities will not cash the District Court's post-dated check.  At the very least, this Court can do what is within its power to diminish the chance.

I.   **Defendants' arguments—and actions—concerning FRAP 8 reveal the impracticability of first requesting relief from the District Court.**

The impracticability of requesting relief from a district court is a ground for requesting a stay from this Court in the first instance. *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020). Thus, a party's decision not to seek a stay pending appeal from a district court in the first instance "is not a jurisdictional defect." *Bayless v. Martine*, 430 F.2d 873, 879 n.4 (5th Cir. 1970) (citing *Cumberland Tel. & Tel. Co. v. Public Service Comm.*, 260 U.S. 212 (1922)). Even when a party "itself bears considerable responsibility for creating [the] exigency," this bears on the propriety of granting relief "rather than in deciding whether to entertain the request." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 44 (1st Cir. 2021). And a party should pay no penalty "[w]hen the district court's order demonstrates commitment to a particular resolution," as "application for a stay from that same district court may be futile and hence impracticable." *Chem. Weapons Working Grp. (CWWG) v. Dep't of the Army*, 101 F.3d 1360, 1362 (10th Cir. 1996).

3

Frankly, Appellants were afraid to go back to a district judge who had taken such a vengeful attitude towards them; who knows what other indignity the court would heap on them for deigning to ask for a stay? Having decided to stay the monetary sanctions but not the non-monetary sanctions, the court might well take umbrage at any effort to reverse its decision and make things even worse for Appellants.

There is no doubt this Court has the authority to enter the requested stay. The only question is, should it? If it was not clear before that it should, the events of Friday reveal the necessity of this Court's intervention—and how hollow Defendants' howls of unfairness ring. It would not have mattered in the slightest if Appellants had moved for a stay on December 3, 2021, or even August 27, 2021, as Defendants now disingenuously suggest they should have. The District Court had already secretly undermined any stay effort.

The District Court's alacritous action is not just suspicious and surprising (especially after taking more than six months to hold the sanctions hearing), it is inequitable. The norm in proceedings in the nature of attorney discipline is to automatically stay, or at least stay as of right upon request, most recommendations of discipline pending

4

review—sometimes even to stay them multiple times, at multiple levels of review. *E.g.*, Mich. Ct. R. 9.118(E) (stays by hearing panel); *id.* R. 9122(C) (stays by Michigan Supreme Court). Yet not only did the District Court not automatically stay its sanction, we now know, courtesy of text-only docket entry wedged between RE 172 and RE 173, that it executed half of its non-monetary sanction—the referral for bar discipline—*the day after entering the order.* And we learn this fact only Friday, February 18, 2022, nearly six months after the fact. Exhibit A, p. 1. That's not cricket.

The futility and therefore impracticability of moving first for relief from the District Court is therefore plain as day. The District Court is so determined to see Appellants dispatched by their bar associations that it could not wait even 24 hours—and certainly not long enough for the preparation and filing of the stay motion Defendants now taunt Appellants for having failed to file—before it executed on its judgment. Or actually, its opinion, since judgment and therefore jurisdiction to appeal would not issue for yet another three months, on December 2, 2021.

Given the kind of treatment Appellants have come to expect from the District Court, they are not surprised it kept its action secret until this past Friday.  But far from supporting their position that Appellants should have requested a stay earlier, Defendants' discovery and highlighting of this prior act reveals the District Court's adamantine "commitment to a particular resolution," rendering this Court the appropriate body from which to request a stay in the first instance.  And the District Court's *sua sponte* revision of its docket sheet to include a critical fact not previously reflected in the public record justifies a renewed window for seeking relief in this Court.

## II. Defendants' arguments on the merits of a stay only increase Appellants' likelihood of success.

Both Defendants correctly note that, prior to 2017, courts were empowered to issue non-compensatory, which is to say non-monetary, sanctions under their inherent authority.  Detroit's Response, COA RE 34, p. 9; State-Defendants' Response, COA RE 35, p. 11 (both citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).  And there is no dispute that, even after *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017), federal district courts retain the authority to promulgate *rules* authorizing non-monetary sanctions.  State-

Defendants' Response, COA RE 35, p. 11 (citing E.D. Mich. L.R.
83.22(d)). What federal district courts no longer possess post-*Haeger*,
however, is the power to impose non-compensatory, non-monetary
sanctions under their inherent authority without regard to their duly
promulgated local rules and substantial procedural protections. Any
sanction that is not compensatory but is imposed under a court's
inherent authority as "punishment for the sanctioned party's
misbehavior" can be imposed only after the court "provide[s] procedural
guarantees applicable in criminal cases, such as a 'beyond a reasonable
doubt' standard of proof.'" *Haeger*, 137 S. Ct. at 1186.[1]

As the State-Defendants' brief admits, the District Court had a
process available for imposing non-compensatory sanctions—its
disciplinary process. Yet, of all the sanctions requested, the only
discipline-related one the District Court *failed* to grant was referral of
Appellants to its own court's disciplinary process. Did the District

---

[1] Perhaps this language means a district court could bypass the
disciplinary process in its local rules so long as it observes the
procedural protections applicable to a criminal contempt hearing. *But
see Hollingsworth v. Perry*, 558 U.S. 183, 184 (2010) (per curiam)
("Courts enforce the requirement of procedural regularity on others, and
must follow those requirements themselves."). In any event, there is no
dispute that this District Court did not observe such protections.

Court correctly perceive that this would have highlighted its lack of authority to impose non-monetary sanctions on its own?  We will never know.  But what we do know is that the District Court did not employ this process.  There are grave questions about even the authority of the District Court to enter the sanctions Appellants seek to stay, to say nothing of their propriety.[2]

Defendants' response on the merits of Appellants' First Amendment argument only strengthens it as well.  If there was any doubt that the "non-partisan" continuing legal education sanction was a direct response to the content of Appellants' advocacy speech, there is no longer.  The Governor and Secretary of State—who it bears noting quite correctly call themselves "the State Defendants," and who are engaged in state action in this case—explicitly tie the continuing legal education punishment to Appellants' advocacy "that was," in their view,

---

[2] As for this Court's authority to remedy the mess made by the District Court's premature referral, Appellants maintain that a stay is an appropriate remedy since the action now requested—recall of the referral letters—is a within-judiciary matter.  That is, Appellants do not seek to compel or prevent action by a third party, as when seeking an injunction.  In an abundance of caution, however, and because the standards are similar and the same appellate rule governs, Appellants request the Court construe their initial motion as also requesting an injunction pending appeal to whatever extent necessary.

"meant to challenge the very fabric of our democracy by sowing doubt in the results of the presidential election." State-Defendants' Response, COA RE 35, p. 19.

Attorneys may have no First Amendment or other right to avoid listening to continuing legal education programming. But attorneys, like all Americans, have an absolute First Amendment right against being limited in their speech (as they are limited when the educational courses they may take are limited) for partisan reasons ("sowing doubt in the results of the presidential election") using partisan means (requiring that any course "be non-partisan").[3] Even if the freedom to select an educational course were not itself protected expressive

---

[3] As noted in footnote 60 of Appellant's Opening Brief:

> [T]he very terms "political" or "nonpartisan" are themselves insusceptible of principled application. Far too frequently the mantle of nonpartisanship is thrown over the shoulders of those who have been successful in obtaining political and economic power in our society, while the pejorative of 'political' is reserved for those who have been less successful in those same endeavors. More obliquely (although no less perniciously), the appellation of nonpartisan is often affixed to ideas and values whose very emptiness of political content may itself be considered an expression of political position.

*Air Line Pilots Ass'n, Int'l v. Dep't of Aviation of City of Chi.*, 45 F.3d 1144, 1462 (7th Cir. 1995) (Flaum, J., concurring).

activity—and it is[4]—Defendants are quite incorrect that there is no

right against compelled listening. The "captive audience" doctrine

forbids speakers from foisting their ideology on audiences, like

attorneys subject to court order, that cannot avoid that speech. *See*

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n,* 447 U.S. 530, 541-42

(1980); *see also Frisby v. Schultz,* 487 U.S. 474, 487 (1988).

Defendants' other merits arguments are so insubstantial that

Appellants will wait to respond until their reply brief on the merits.

## III. Defendants cannot seriously contest the remaining stay factors.

The only real argument made, beyond a smarmy footnote in

Detroit's brief, Detroit's Response, COA RE 34, p. 14 n.3, on the

irreparable First Amendment harm Appellants face is the State-

---

[4] The First Amendment protects the right to receive information from a willing speaker. "Freedom of speech presupposes a willing speaker. But where a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 756 (1976). The right to receive information "is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution" because "the right to receive ideas follows ineluctably from the sender's First Amendment right to send them." *Bd. of Educ., Island Trees Union Free Sch. Dist. Number 26 v. Pico,* 457 U.S. 853, 867 (1982) (emphasis omitted). For state and municipal actors to disregard these basic tenets is alarming, but not, under the circumstances, surprising.

Defendants' rather curious suggestion that Appellants can be made whole by being compensated for the cost of registering for the required "non-partisan" courses and their time spent taking the courses. State-Defendants' Response, COA RE 35, pp. 17-18. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam). It is disturbing that the attorneys for high state officials do not comprehend this basic tenet of constitutional law.

The only argument made on the irreparable harm Appellants face from the District Court's referral for bar discipline amounts to the argument nobody really cares what a federal judge thinks. Detroit's Response, COA RE 34, pp. 13-14. If so, it is difficult to understand why Detroit fought and fights so hard for the referral. In any event, the argument merits little response. The fact bar discipline *could* take long enough that this Court will have had an opportunity to pass on the merits of the District Court's order does not mean it *will* take that long—or that the harm attending any bar action undertaken in reliance on the District Court's unlawful order is remediable. Attorney

discipline is, by its very nature, irremediable.  That is the reason such processes usually defer the discipline until a final judgment on its propriety has been reached.

Neither Detroit nor the State-Defendants attempt to show they will be harmed by a stay.  As for the public interest, the only harm Defendants advert to is Appellants' continued advocacy for their beliefs.  State-Defendants' Response, COA RE 35, p. 19.  They admit that harm is one not avoided by the District Court's order.  *Id.*  But perhaps more fatally, while there may be countries where governors and secretaries of state are empowered to dictate the messages their citizens may advance, America is not yet one.  The public interest is served by a stay of the District Court's unlawful and politically divisive order, one that runs contrary to the most basic beliefs of the democracy it purports to defend.

## CONCLUSION

For the foregoing reasons, Appellants respectfully request the Court stay the non-monetary sanctions pending disposition of this appeal.

Respectfully submitted this 21st day of February 2022.

12

/s/ Sidney Powell_____
Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com

/s/ Howard Kleinhendler_____
Howard Kleinhendler, Esq.
369 Lexington Avenue, 12th Floor
New York, NY 10017
Ph: 917-793-1188
E-Mail: howard@kleinhendler.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 27(d)(2)(A), I certify that the attached Reply in Support of Emergency Motion to Stay Non-Monetary Sanctions is proportionately spaced, has a typeface of at least 14 points, including headings and footnotes, and contains 2522 words.

DATED this 21st day of February 2022.

/s/ Sidney Powell_____
Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he is a member of the bar of this Court in good standing, and that the foregoing Reply in Support of Emergency Motion to Stay Non-Monetary Sanctions was delivered via electronic service on this date to:

Heather S. Meingast
Erik A. Grill
Assistant Attorneys General
Office of the Attorney General
of Michigan
P.O. Box 30217
Lansing, MI 48909
*Counsel for Defendants*

David H. Fink
Nathan J. Fink
Fink Bressack
38500 Woodward Avenue
Suite 350
Bloomfield Hills, MI 48304

*Counsel for Intervenor Detroit*

I declare under the penalties of perjury that the foregoing is true and correct, and that this certificate was executed in Dallas, Texas, this 21st day of February 2021.

/s/ Sidney Powell_____
Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellants*

# Exhibit A

| | |
|---|---|
| **From:** | cmecfadmin@mied.uscourts.gov |
| **Sent:** | Friday, February 18, 2022 2:22 PM |
| **To:** | do_not_reply@mied.uscourts.gov |
| **Subject:** | Text-Only Order in 2:20-cv-13134-LVP-RSW King et al v. Whitmer et al |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Eastern District of Michigan**

## Notice of Electronic Filing

The following transaction was entered on 2/18/2022 at 2:21 PM EST and filed on 8/26/2021

| | |
|---|---|
| **Case Name:** | King et al v. Whitmer et al |
| **Case Number:** | 2:20-cv-13134-LVP-RSW |
| **Filer:** | |
| **WARNING: CASE CLOSED on 12/02/2021** | |
| **Document Number:** | No document attached |

**Docket Text:**
**On this date, the Clerk of the Court sent the Court's August 25, 2021 decision to the Michigan Attorney Grievance Commission and the appropriate disciplinary authority for each jurisdiction where Plaintiffs' counsel is admitted, referring the matter for investigation and possible suspension. (AFla)**

**2:20-cv-13134-LVP-RSW Notice has been electronically mailed to:**

Andrew A. Paterson , Jr    aap43@hotmail.com

Daniel M. Share    dshare@bsdd.com, jmichaels@bsdd.com

Darryl Bressack    dbressack@finkbressack.com, ggayer@finkbressack.com, khunt@finkbressack.com

David H. Fink    dfink@finkbressack.com, ggayer@finkbressack.com, khunt@finkbressack.com, nfink@finkbressack.com

Donald D. Campbell    donald.campbell@ceflawyers.com, sherrie.marinkovich@ceflawyers.com

Erik A. Grill     grille@michigan.gov, albrol@michigan.gov, richardsm1@michigan.gov

Eugene Driker     edriker@bsdd.com, ssimkins@bsdd.com

Ezra D Rosenberg     erosenberg@lawyerscommittee.org, ezra-rosenberg-8295@ecf.pacerpro.com

Gregory J. Rohl     greg@rohllaw.com

Heather S. Meingast     meingasth@michigan.gov, albrol@michigan.gov, richardsm1@michigan.gov

Jon Greenbaum     jgreenbaum@lawyerscommittee.org, jon-greenbaum-5373@ecf.pacerpro.com

Julie M Houk     jhouk@lawyerscommittee.org

Mary Ellen Gurewitz     megurewitz@gmail.com, rcunningham@michlabor.legal

Nathan J. Fink     nfink@finkbressack.com, ggayer@finkbressack.com, khunt@finkbressack.com

Paul J. Stablein     paulstablein@stableinlaw.com

Scott R. Eldridge     eldridge@millercanfield.com, yoak@millercanfield.com

Stefanie Lynn Junttila     attorneystefanielambert@gmail.com

Stephen E. Glazek     sglazek@bsdd.com, STaylor@bsdd.com

Thomas M. Buchanan     tbuchana@winston.com

Timothy E. Galligan     galligan@galliganpllc.com

**2:20-cv-13134-LVP-RSW Notice will not be electronically mailed to:**