No. 21-1786

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TIMOTHY KING, et al,

    Plaintiffs,

and

GREGORY J. ROHL; BRANDON JOHNSON; HOWARD
KLEINHENDLER; SIDNEY POWELL; JULIA HALLER; SCOTT
HAGERSTROM,

    Interested Parties-Appellants,

v.

GRETCHEN WHITMER; JOCELYN BENSON; CITY OF DETROIT,
MI,

    Defendants-Appellees.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Honorable Linda V. Parker

**BRIEF FOR DEFENDANTS-APPELLEES GOVERNOR
GRETCHEN WHITMER AND SECRETARY OF STATE JOCELYN
BENSON**

                                        Heather S. Meingast (P55439)
                                        Erik A. Grill (P64713)
                                        Assistant Attorneys General
                                        Counsel of Record
                                        Attorney for Defendants-
                                        Appellees Governor Whitmer
                                        and Secretary Benson
                                        PO Box 30736
                                        Lansing, Michigan 48909
                                        517.335.7659

Dated:     June 24, 2022

# TABLE OF CONTENTS

Page

Table of Authorities......................................................................iv

Statement Regarding Oral Argument .......................................ix

Jurisdictional Statement...............................................................1

Statement of Issues Presented....................................................2

Introduction...................................................................................3

Statement of the Case ..................................................................4

      A.    Michigan certifies the November election. .............................4

      B.    Plaintiffs file suit and the District Court denies their
            motion for injunctive relief on numerous grounds. ...............5

      C.    Plaintiffs continue to press their claims despite the
            District Court's ruling and subsequent events
            rendering the case moot. ..........................................................8

      D.    The sanctions proceedings ...................................................13

Standard of Review .....................................................................15

Summary of Argument.................................................................16

Argument.......................................................................................20

I.    The District Court did not abuse its discretion in awarding
     sanctions to the State Defendants pursuant to its inherent
     authority where the court found that the claims advanced
     were meritless, that counsel knew or should have known
     this, and that the motive for filing suit was for an improper
     purpose. ......................................................................................20

      A.    Standards for granting fees under the court's inherent
            authority................................................................................20

B.    The District Court properly applied the standards for granting sanctions pursuant to its inherent authority. ....... 21

    1.    Plaintiffs' claims were meritless. ................................. 22

        a.    Elections Clause and Electors Clause claims. ................................................. 23

        b.    Equal Protection Clause ..................................... 31

    2.    Plaintiffs' counsel knew or should have known that Plaintiffs' claims were meritless. ......................... 35

        a.    The District Court determined that this factor was met, and Plaintiffs' counsel do not specifically contest that determination. ....... 35

        b.    The grounds for sanctions against each counsel is plain from the District Court's opinion. ................................................. 37

        c.    The District Court was not required to specifically delineate the culpability of each sanctioned attorney ............................................. 39

    3.    Plaintiffs and their counsel filed this suit for an improper purpose. ........................................................ 42

C.    The sanctions assessed were appropriate. ........................... 46

II.    The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to 28 U.S.C. § 1927 where it found that counsel had unreasonably and vexatiously multiplied the litigation. ........................................... 51

A.    Standards for granting sanctions under 28 U.S.C. § 1927 ...................................................................................... 51

B.    The District Court properly applied these standards in granting sanctions pursuant to § 1927. ................................ 52

a.   The grounds for sanctions against each counsel is plain from the District Court's opinion. ................................................................. 61

b.   The District Court was not required to specifically delineate the culpability of each sanctioned attorney ............................................ 63

C.   The sanctions assessed were appropriate. ........................... 65

III.   The District Court did not violate the First Amendment Rights of Plaintiffs and their counsel in imposing sanctions where the court determined that counsel were using the judicial forum in bad faith to advance meritless claims. .............. 66

Conclusion and Relief Requested ............................................................ 70

Certificate of Compliance ...................................................................... 71

Certificate of Service .............................................................................. 72

Designation of Relevant District Court Documents ............................... 73

# TABLE OF AUTHORITIES

**Cases**

*Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824 (6th Cir. 2005) ..................................................................................... 63

*Bawle v. Rockwell Intern. Corp.*, 79 Fed Appx 875 (6th Cir. 2003)........ 40

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742 (6th Cir. 2010) ............................................................................... 20, 42

*Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308 (6th Cir. 1997) ....................................................... 20, 21, 34, 41

*Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731 (1983) ........ 67

*Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336 (3rd Cir. 2020)............................................................ 32

*Bush v. Gore*, 531 U.S. 98 (2000) ................................................... *passim*

*Bush v. Palm Beach County Canvassing Bd.,* 531 U.S. 70 (2000) ......... 27

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)................................. 19, 41

*Church of Scientology v. United States,* 506 U.S. 9 (1992)..................... 48

*Colegrove v. Green*, 328 U.S. 549 (1946) .............................................. 31

*Cook v. Gralike*, 531 U.S. 510 (2001) ................................................... 25

*Dahnke v. Teamsters Local 695,* 906 F.2d 1192 (7th Cir.1990).............. 57

*Dearborn Street Bldg. Associates, L.L.C. v. Huntington Nat. Bank*, 411 Fed. Appx 847 (6th Cir. 2011) ...................................... 46

*DeFunis v. Odegaard*, 416 U.S. 312 (1974)........................................... 48

*Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp.3d 814 (D. Mont. 2020)............................................................. 28

*First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501 (6th Cir.2002) ........................................................................ 15, 41

*Ford v. Wilder*, 469 F.3d 500 (6th Cir. 2006).......................................... 48

*Fox v. Vice*, 563 U.S. 826 (2011)............................................................ 46

*Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274 (3rd Cir. 1994) ................ 43

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) ................................ 66

*George v. Hargett*, 879 F.3d 711 (6th Cir. 2018) .................................... 32

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)................................................. 32

*Goodyear Tire & Rubber Co. v. Haeger,* 137 S. Ct. 1178 (2017)............ 45

*Gray v. Sanders*, 372 U.S. 368 (1963) .................................................... 31

*Griffin Indus., Inc. v. United States E.P.A*, 640 F.3d 682 (6th Cir. 2011) ................................................................................................... 20

*In re Ferro Corp. Derivative Litig.,* 511 F.3d 611 (6th Cir.2008) ........... 15

*In re Harper*, 725 F.3d 1253 (10th Cir. 2013) ....................................... 67

*In re Itel Securities Litigation*, 79 F.2d 672 (9th Cir. 1986) ................... 67

*In re Ruben*, 825 F.2d 977 (6th Cir. 1987) ................................. 39, 51, 62

*Larsen v. Commissioner of Internal Revenue*, 765 F.2d 939 (9th Cir. 1985)............................................................................................. 67

*Los Angeles County v. Davis,* 440 U.S. 625 (1979) ................................. 48

*McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453 (6th Cir. 1997).......................................................................................... 27, 48

*Metz v. Unizan Bank*, 655 F.3d 485 (6th Cir. 2011) ......................... 20, 37

*Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005)...................................... 66

*Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18 (2d Cir. 1980) ................................................................................ 42

*Morris v. City of Detroit Water & Sewage Dep't*, 20 F. App'x 466 (6th Cir. 2001) ..................................................................... 63

*Mosely v. Hairson*, 920 F.2d 409 (6th Cir. 1990) ................................... 48

*National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ...................................................................... 66

*O'Rourke v. Dominion Voting Systems, Inc., et al.*, 552 F. Supp. 3d 1168 (D. Colo. 2021) ............................................................ 44

*Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414 (6th Cir. 1992) ....... 39

*Rees v. W.M. Barr & Co., Inc.*, 736 F. App'x 119 (6th Cir. 2018) .......... 23

*Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997) .............. 51, 59

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ...................... 20, 23

*Ruben v. Warren City Sch.*, 825 F.2d 977 (6th Cir. 1987) ..................... 57

*Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) ............................ 31, 32

*Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d 520 (6th Cir. 2006) ............................................................................ 15, 50

*Tisdale v. Fed. Express Corp.,* 415 F.3d 516 (6th Cir.2005) ................... 15

*United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.,* 705 F. App'x 342 (6th Cir. 2017) ................................................. 20, 40

*United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850 (6th Cir. 2005) ................................................................................ 35

*Wesbery v. Sanders*, 376 U.S. 1 (1964) ................................................. 31

*Wolfe v. George*, 486 F.3d 1120 (9th Cir. 2007)...................................... 67

*Williamson v. Recovery Limited Partnership*, 826 F.3d 297 (2016)........21

## Statutes

Mich. Comp. Laws § 168.43 ........................................................... 4

Mich. Comp. Laws § 168.21 ......................................................... 26

Mich. Comp. Laws § 168.22 ........................................................... 4

Mich. Comp. Laws § 168.31(1)(a)–(b) ........................................ 26

Mich. Comp. Laws § 168.43 ......................................................... 27

Mich. Comp. Laws § 168.46 ........................................................... 5

Mich. Comp. Laws § 168.47 ........................................................... 9

Mich. Comp. Laws § 168.801 ......................................................... 4

Mich. Comp. Laws § 168.821 ......................................................... 4

Mich. Comp. Laws § 168.822 ......................................................... 4

Mich. Comp. Laws § 168.842(1) ..................................................... 4

Mich. Comp. Laws § 168.879(1)(c) ................................................ 5

## Other Authorities

3 U.S.C. § 5 ................................................................................... 6

3 U.S.C. § 6 ................................................................................... 5

3 U.S.C. § 7 ................................................................................... 9

3 U.S.C. § 15 ............................................................................... 11

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. § 1927 ................................................................. *passim*

## Rules

Fed. R. Civ. P. 11(b)(3) .................................................................. 43

L.R. 7.1(e)(1)(B) ............................................................................ 57

## Constitutional Provisions

U.S. Const. Art. I, § cl. 1 .............................................................. 24

U.S. Const. art. II, § 1, cl. 2 ......................................................... 27

## STATEMENT REGARDING ORAL ARGUMENT

Appellants have requested oral argument.  Defendants-Appellees Michigan Governor Gretchen Whitmer and Secretary of State Jocelyn Benson believe that oral argument is unnecessary for the Court to decide the issues presented in this appeal of the District Court's well-reasoned opinions and that the issues raised in this appeal are resolved by established law.  However, if the Court grants oral argument, Defendants-Appellees request the opportunity to present argument.

## JURISDICTIONAL STATEMENT

Defendants-Appellees Michigan Governor Gretchen Whitmer and Secretary of State Jocelyn Benson agree that this Court generally has jurisdiction over appeals from the final decisions of district courts under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1.     A court may grant sanctions pursuant to its inherent authority when it finds that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing suit was for an improper purpose. Where the District Court made such findings, and where those findings were supported by law and fact, did the Court abuse its discretion in awarding the State Defendants sanctions?

2.     A court may grant sanctions pursuant to 28 U.S.C. § 1927 when it finds that counsel has unreasonably and vexatiously multiplied a proceeding. Where the District Court made such findings, and where those findings were supported by law and fact, did the Court abuse its discretion in awarding the State Defendants sanctions?

3.     A courtroom is a nonpublic forum in which First Amendment rights are circumscribed and do not protect the pursuit of meritless claims.  Where the District Court determined that counsel were using the judicial forum in bad faith to advance meritless claims were counsels' speech rights infringed?

## INTRODUCTION

This appeal is the vestige of an onslaught of litigation filed in Michigan challenging the legitimacy of the state's November 3, 2020, presidential election based on outlandish claims of fraud and other errors.

Filed at the eleventh hour and supported by nothing more than speculation and conjecture, Plaintiffs, Republican presidential elector candidates and party operatives, and their counsel pursued legal claims that they knew or should have known were frivolous.  Further, Plaintiffs' counsel unreasonably and vexatiously extended this case by failing to dismiss when it was clearly moot by their own acknowledgement.  As a result, the District Court appropriately imposed sanctions under 28 U.S.C. § 1927 against all counsel.

The District Court also had inherent authority to impose sanctions and award attorneys' fees where counsel pursued frivolous claims and did so for an improper purpose.  Again, Plaintiffs' and their counsel offered nothing more than conspiracy theories unaccompanied by any actual evidence of fraud affecting the results of Michigan's presidential election.  Where their legal claims were frivolous, and the

timing of the lawsuit and the nature of the relief requested suspect, the District Court did not abuse its discretion in determining that counsels' motive for filing suit was improper, and that sanctions were warranted.

This Court should affirm and dismiss counsels' appeal.

## STATEMENT OF THE CASE

### A.    Michigan certifies the November election.

Michigan, like the other states and the District of Columbia, held an election on November 3, 2020 to select electors for president and vice president.  See Mich. Comp Laws § 168.43.

Michigan's city and township clerks began canvassing results immediately after the polls closed on November 3.  Mich. Comp. Laws § 168.801.  The boards of county canvassers commenced canvassing two days later, and the 83 county boards completed their canvasses by November 17.  Mich. Comp. Laws §§ 168.821, 168.822.

Defendant Board of State Canvassers, a bipartisan board, see Mich. Comp. Laws § 168.22, was required to meet by the twentieth day after the election to certify the results.  Mich. Comp. Laws § 168.842(1). The Board met on November 23 and certified the statewide results by a

4

3-0 vote.[1]  President Joe Biden defeated former President Donald

Trump by 154,188 votes.[2]  No presidential candidate requested a

recount within the time permitted.  See Mich. Comp. Laws

§ 168.879(1)(c).

"As soon as practicable after the state board of canvassers has"

certified the results, the Governor must certify the presidential electors

to the Archivist for the United States.  Mich. Comp. Laws § 168.46; 3

U.S.C. § 6.[3]  Defendant Governor Whitmer certified the electors the

same day the Board certified the results.[4]

### B.    Plaintiffs file suit and the District Court denies their motion for injunctive relief on numerous grounds.

Late in the evening on November 25 and the day before

Thanksgiving, Plaintiffs, several Republican Party electors and

---

[1] *See* 11/23/20 Draft Meeting Minutes, Board of State Canvassers, available at
https://www.michigan.gov/documents/sos/112320_draft_minutes_70867
2_7.pdf, (accessed June 24, 2022.)

[2] *See* November 2020 General Election Results, available at
https://mielections.us/election/results/2020GEN_CENR.html., (accessed
June 24, 2021.)

[3] Although Michigan's statute continues to refer to the U.S. Secretary of
State, under 3 U.S.C. § 6 the Certificate of Ascertainment is sent to the
Archivist of the United States.

[4] *See* Michigan's Certificate of Ascertainment, available at
https://www.archives.gov/files/electoral-college/2020/ascertainment-
michigan.pdf, (accessed June 24, 2022.)

operatives, filed their complaint for declaratory and injunctive relief in
the District Court against Michigan Secretary of State Jocelyn Benson,
Governor Whitmer, and the Board of State Canvassers. (R. 1,
Complaint, Page ID # 1.)  Plaintiffs alleged widespread fraud in the
distribution, collection, and counting of ballots in Michigan, as well as
violations of state law as to certain election challengers and the
manipulation of ballots through corrupt election machines and
software.  (*Id.*)  Four days later, Plaintiffs filed an amended complaint
(R. 6, Am. Compl., Page ID # 872), an emergency motion for declaratory
and injunctive relief, (R. 7, Mot., Page ID # 1832), and an emergency
motion to seal on November 29, 2020.  (R. 8. Page ID # 1850.)  Plaintiffs
asserted in their injunctive motion that relief "must be granted in
advance of December 8, 2020."  (R. 7, Pl' Mot, Page ID # 1846).[5]

Plaintiffs' amended complaint consisted of over 200 numbered
paragraphs and over 900 additional pages of affidavits and other
documents, in which they raised a similar litany of perceived fraud and
irregularities that had been alleged in other Michigan cases and

---

[5] Under federal law, the "safe harbor" provision regarding Michigan's
certification of electors was set to activate on December 8.  *See* 3 U.S.C.
§ 5.

rejected by the courts. (R. 6, Am. Compl., Page ID # 872.) Plaintiffs alleged three claims pursuant to 42 U.S.C. § 1983: (Count I) violation of the Elections and Electors Clauses; (Count II) violation of the Fourteenth Amendment Equal Protection Clause; and (Count III) denial of the Fourteenth Amendment Due Process Clause. (R. 6, Page ID # 882.) In Count IV, Plaintiffs alleged violations of the Michigan Election Law. (*Id.*)

On December 1, motions to intervene were filed by the City of Detroit (R. 15, Page ID # 2090), Robert Davis (R. 12, Page ID # 1860), and the Democratic National Committee and Michigan Democratic Party ("DNC/MDP"). (R. 14, Page ID # 1878.) On December 2, the District Court granted the motions to intervene. (R. 28, Page ID # 2142.) Defendants filed response briefs with respect to Plaintiffs' emergency motions by 8:00 p.m. the same day. (R. 29, 31, 32, 34, 35, 36, 37, 39, 49, 50.)

On December 7, 2020, the District Court entered an opinion and order denying Plaintiffs' emergency motion for injunctive relief, holding that Plaintiffs failed to demonstrate a likelihood of success on the merits of their claims for numerous reasons. (R. 62, Op. & Order, Page

ID # 3301–3328.)  The Court further concluded that the irreparable harm, balance of harm, and public interest factors weighed against granting relief.  (*Id.* at Page ID # 3329.)

### C. Plaintiffs continue to press their claims despite the District Court's ruling and subsequent events rendering the case moot.

The next day, December 8, Plaintiffs filed a notice of appeal to this Court.  (R. 64, Page ID # 333.)  But Plaintiffs did not move to expedite their appeal or file any substantive documents, likely because the State of Texas moved to file an original action against Michigan and several other "swing" states in the U.S. Supreme Court on December 7, making similar allegations of widespread fraud in Michigan's general election, and requesting that the Supreme Court overturn Michigan's certified results.  See *Texas* v. *Pennsylvania, et al.*, 22O155.  But on December 11, the Supreme Court denied Texas's motion "for lack of standing under Article III of the Constitution" because "Texas ha[d] not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections."[6]

---

[6] *See* order dated December 11, 2020, in Case No. 22O155, available at https://www.supremecourt.gov/orders/courtorders/121120zr_p860.pdf (accessed June 24, 2022.)

Plaintiffs then pivoted and filed a petition for certiorari in the Supreme Court on December 11, seeking to bypass review of the District Court's opinion by this Court. *See* U.S. Supreme Court No. 20-815.[7]  Plaintiffs did not move to expedite their petition at that time, despite the time-sensitive nature of their claims.

Three days later, on December 14, and as required by law, Michigan's presidential electors "convene[d]" in the State's capitol and cast their votes for then President-elect Biden.  Mich. Comp. Laws § 168.47; 3 U.S.C. § 7.[8]  They did so under heavy security in light of credible threats of violence that required the capitol and other state buildings be closed to the public.[9]

On the same day and outside Michigan's capitol, candidates for presidential elector selected by the Republican Party, presumably

---

[7] Docket sheet and filings available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html, (accessed June 24, 2022).

[8] *See* Michigan's Certificate of the Votes, available at https://www.archives.gov/files/electoral-college/2020/vote-michigan.pdf (accessed June 24, 2022.)

[9] *See* Michigan Gov. Whitmer Addresses Security Threat to Electoral College Vote, 12/14/20, National Public Radio, available at https://www.npr.org/sections/biden-transition-updates/2020/12/14/946243439/michigan-gov-whitmer-addresses-security-threat-to-electoral-college-vote (accessed June 24, 2022.)

including some of the Plaintiffs herein, sought access to the capitol in order to cast alternate votes for President Trump. They were not allowed access to the building, however, because there is no process for permitting the unsuccessful elector candidates to cast their votes.[10] Furthermore, leadership for both the Michigan House of Representatives and the Michigan Senate had indicated that the results of the election and the presidential electors must stand under the law.[11]

Days later, on December 18, Plaintiffs moved to expedite their petition for certiorari in the Supreme Court and to consolidate it with another pending petition.[12] Defendants Whitmer, Benson and the Board filed a response in opposition to Plaintiffs' motion.[13]

Back in the District Court, on December 22, Defendants Whitmer, Benson and the Board, (R. 70, Defs' Mot. & Br., Page ID # 3350–3428),

---

[10] *See* Michigan Republicans who cast electoral votes for Trump have no chance of changing Electoral College result, 12/15/20, MLIVE, available at https://www.mlive.com/public-interest/2020/12/michigan-republicans-who-cast-electoral-votes-for-trump-have-no-chance-of-changing-electoral-college-result.html, (accessed June 24, 2022.)

[11] *Id.*

[12] Docket sheet and filings for Case No. 20-815 are available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html, (accessed June 24, 2022.)

[13] *Id.*

along with Intervening Defendants City of Detroit, the DNC and the MDP, filed motions to dismiss the case.

On January 6, 2021, Congress convened in a joint session as required by 3 U.S.C. § 15 to count the electoral votes of the fifty states and the District of Columbia. Despite the shocking events that later occurred, in the early hours of January 7, Congress counted Michigan's 16 electoral votes for President-elect Biden. And at the end of the joint session, Mr. Biden was certified the winner and the new President-elect. With that declaration, the November 3, 2020, presidential election concluded.

Not surprisingly, the Supreme Court thereafter denied Plaintiffs' motion to expedite their appeal on January 11, 2021 in a short order.[14]

The next day, back in the District Court, Plaintiffs requested an extension until January 19 to respond to the motions to dismiss, (R. 82), and the City of Detroit filed a response in opposition (R. 83). By text order, the court granted Plaintiffs an extension only until January 14, 2021.

---

[14] *Id.*

On January 14, instead of responding to the motions to dismiss, Plaintiffs filed notices of voluntary dismissal under Rule 41 as to all Defendants except Robert Davis (who had answered the amended complaint). (R. 86 through 91.) Subsequently, Plaintiffs moved for a voluntary dismissal as to Davis. (R. 92.)

Notably, also on January 14, Defendants Whitmer, Benson, and the Board, as well as the City of Detroit, filed responses in opposition to Plaintiffs' petition in the Supreme Court since Plaintiffs had not withdrawn or dismissed that appeal despite the vote in Congress seven days earlier.[15]

Plaintiffs eventually sought to dismiss their appeal before this Court, which dismissal was entered January 26, 2021. (R. 114.) And the Supreme Court denied Plaintiffs' petition by routine order on February 22, 2021.[16] It is unclear whether Plaintiffs' counsel communicated to the Supreme Court that they had dismissed both the underlying case and the appeal weeks earlier.

---

[15] *Id.*

[16] *Id.*

**D.    The sanctions proceedings**

Defendant City of Detroit filed a motion for sanctions under Rule 11 on January 5, 2021, (R. 78, Page ID # 3616-3836), which the State Defendants filed a concurrence with on January 14, 2021, (R. 84, Page ID # 3881.)

On January 28, 2022, Defendants Governor Whitmer and Secretary Benson filed a motion for sanctions pursuant to 28 U.S.C. § 1927 and the District Court's inherent authority to sanction Plaintiffs' counsel Sidney Powell, Greg Rohl, Scott Hagerstrom, and Stefanie Junttila, and award attorneys' fees.  (R. 105, Page ID # 4340.)[17] Plaintiffs and their counsel filed a response in opposition to the State's motion, (R. 112, Page ID # 4600), and the State Defendants filed a reply in support of their motion, (R. 116, Page ID # 4741).

Subsequently, the Defendants Whitmer and Benson moved to file a supplemental brief in support of their motion for sanctions in light of admissions Plaintiffs' counsel Powell made in a defamation case filed by Dominion Voting Systems, (R. 118, Page ID # 4778), which motion the

---

[17] Defendant Board of State Canvassers did not join in this motion.

District Court granted.  Plaintiffs and their counsel opposed the motion and supplemental brief.  (R. 120, Page ID # 4995.)

The District Court heard the various motions for sanctions during a marathon hearing on July 12, 2021.  (R. 157, Tr.)  Afterwards, the court entered an order permitting supplemental briefing by the parties as to issues that arose during the hearing.  (R. 150, Order, Page ID # 5269.)  The Plaintiffs' counsel involved in this appeal filed supplemental briefs, (R. 161, Page ID # 5794; R. 165, Page ID # 6562), to which the State Defendants filed a combined response, (R. 166, Page ID # 6583.)

On August 25, 2021, the District Court issued its lengthy opinion and order granting the motions for sanctions under Rule 11, 28 U.S.C. § 1927 and the court's inherent authority.  (R. 172, Op. & Order, Page ID # 6890.)  The Court awarded attorney fees and imposed other professional sanctions against Plaintiffs' counsel and ordered Defendants to submit their costs within 14 days, to which Plaintiffs' counsel could respond.  *Id*., Page ID # 6998.

Counsel for the State Defendants timely submitted their costs, requesting an award of $21,964.75 in attorney fees.  (R. 173, Page ID # 7000.)  Plaintiffs' counsel filed no objections as to the amount of the

14

State's request.  On December 2, 2021, the District Court issued its opinion and order awarding fees to the defendants, including the $21,964.75 requested by the State Defendants.  (R. 179, Op. & Order, Page ID # 7142, 7168.)

Thereafter, Plaintiffs' counsel filed various appeals, including the instant appeal by Plaintiffs' counsel Powell, Howard Kleinhendler, Rohl, Julia Haller, Brandon Johnson, and Hagerstrom.  (R. 182, Page ID # 7174.)  Because the State Defendants only sought sanctions against Powell, Rohl, and Hagerstrom and Junttila, the State Defendants' arguments are generally directed to these counsel, although the State agrees that all counsel were properly sanctioned.[18]

## STANDARD OF REVIEW

This Court reviews for abuse of discretion the decision to impose sanctions pursuant to Rule 11, Rule 26, 28 U.S.C. § 1927, and the district court's inherent power.  *Salkil v. Mount Sterling Twp. Police Dep't,* 458 F.3d 520, 527 (6th Cir. 2006), *Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 525 (6th Cir.2005); *First Bank of Marietta v.*

---

[18] Plaintiffs' counsel Lambert Junttila filed a separate appeal, (R. 187, Page ID # 7182), to which the State Defendants will separately respond.

*Hartford Underwriters Ins. Co.,* 307 F.3d 501, 510 (6th Cir.2002). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp. Derivative Litig.,* 511 F.3d 611, 623 (6th Cir.2008).

## SUMMARY OF ARGUMENT

Plaintiffs' disorganized brief on appeal does not squarely address the issues and tends to obfuscate matters rather than clarify them. The State Defendants have done what they could to make sense of the arguments, and to provide an orderly response. To the extent the State Defendants have misapprehended an argument or failed to address an argument that pertains to them, Defendants rely on and incorporate their several briefs filed in the District Court.

Plaintiffs and their counsel argue that the District Court abused its discretion in imposing sanctions against them under Rule 11 of the Federal Rules of Civil Procedure,[19] 28 U.S.C. § 1927, and the court's inherent authority. But they are wrong for three reasons.

___

[19] The State Defendants did not move for sanctions under Rule 11. (R. 105, Page ID # 4340.) To the extent the District Court granted sanctions in the State Defendants favor under that rule, as counsel

16

First, the District Court properly granted sanctions in favor of the State Defendants pursuant to its inherent authority. Applying the proper standards and supporting its determination with facts and law, the court concluded the Plaintiffs' legal claims were meritless, that counsel knew or should have known this, and that Plaintiffs' motive in filing this lawsuit was improper.

Plaintiffs' argument that *Bush v. Gore* supported their legal claims is without merit where that decision is distinguishable. Further, counsels' argument that the court failed to apply or specify the proper standard for imposing sanctions and failed to make specific findings of culpability as to each sanctioned attorney, is not supported by the text of the court's opinion or case law. And their argument that the court erred in rendering all counsel jointly and severally liable for the State Defendants' fees, and that the court could not impose non-monetary sanctions, is not supported by the record or case law.

---

suggest in her briefing, Defendants support the court's inherent discretion to do so. But the State Defendants will leave the substantive defense of the court's imposition of Rule 11 sanctions to the City of Detroit, the movant under that rule. The arguments the City makes will be applicable to the State as well, and arguments here would be duplicative.

The District Court therefore did not abuse its discretion in imposing sanctions pursuant to its inherent authority.

Second, the District Court properly granted sanctions in favor of the State Defendants under 28 U.S.C. § 1927.  Applying the proper standards and supporting its determination with facts and law, the court concluded the Plaintiffs' counsel had unreasonably and vexatiously multiplied the proceedings by failing to dismiss their lawsuit when it became moot on December 14, 2021, after the vote of Michigan's presidential electors, per Plaintiffs' own arguments.

Plaintiffs' counsel argued that they subsequently determined their claims would not be moot because certain Plaintiffs were part of an "alternate slate of electors."  But this argument is meritless because a party's subjective belief that they have a cause or claim does not make it so, and there was no support in the law for this argument.  Further, counsels' argument that the court failed to apply or specify the proper standard for imposing sanctions and failed to make specific findings of culpability as to each sanctioned attorney, is not supported by the text of the court's opinion or case law.  Last, their argument that the District Court erred in failing to limit the award of attorneys' fees to those

18

incurred as a result of conduct sanctionable under § 1927 is without merit. Because the State Defendants were entitled to all the fees they requested under the court's grant of sanctions pursuant to its inherent authority, any smaller subset of fees was subsumed within the court's award.

The District Court therefore did not abuse its discretion in imposing sanctions pursuant to 28 U.S.C. § 1927.

And third, the District Court did not violate Plaintiffs' or their counsels' First Amendment rights in imposing sanctions under the facts and circumstances of this case. Contrary to counsels' argument, a courtroom is a nonpublic forum in which First Amendment rights are circumscribed and do not protect the pursuit of meritless claims. Here, the court did not impose sanctions because it disagreed with Plaintiffs' speech. It imposed sanctions because it determined Plaintiffs' counsel were using the judicial forum for an improper purpose.

Because Plaintiffs' counsel failed to demonstrate the District Court abused its discretion or violated any of Plaintiffs' or counsels' rights in imposing sanctions, this Court should affirm.

19

# ARGUMENT

I. **The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to its inherent authority where the court found that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing suit was for an improper purpose.**

### A. Standards for granting fees under the court's inherent authority.

"A court may assess attorney's fees under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) [ ] (internal quotation marks omitted), or when the conduct is 'tantamount to bad faith,' *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 [ ] (1980)." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). A court may award attorney fees under the bad faith exception upon finding the following three prongs set forth in *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) are met: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010)) (internal

quotation marks omitted).  This Court reviews a court's findings of fact, including its findings of bad faith, for clear error.  *Griffin Indus., Inc. v. United States E.P.A*, 640 F.3d 682, 686 (6th Cir. 2011).

Plaintiffs' counsel assert in their brief that the State Defendants' motion for sanctions pursuant to the court's inherent authority was untimely because it was filed after Plaintiffs' voluntary dismissal.  But this Court has upheld sanctions imposed after a voluntary dismissal. *See United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.,* 705 F. App'x 342, 345 (6th Cir. 2017).[20]

## B.    The District Court properly applied the standards for granting sanctions pursuant to its inherent authority.

The District Court correctly set forth the standards and rules applicable for granting sanctions pursuant to its inherent authority.  (R. 172, Op. & Order, Page ID # 6931–36.)  And that court correctly applied these standards in granting sanctions in favor of Governor Whitmer and Secretary Benson pursuant to its inherent authority.

---

[20] This standard applies where a plaintiff has filed a frivolous lawsuit. *Williamson v. Recovery Limited Partnership*, 826 F.3d 297, 301-02 (2016).  But " 'bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.' "  *Hall v. Cole*, 412 U.S. 1, 15 (1973).  *See also, Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–66 (1980).

### 1.    Plaintiffs' claims were meritless.

The first element for an award of sanctions under the court's inherent authority is that the claims advanced were meritless. *Big Yank Corp.*, 125 F.3d at 313.

The District Court determined that Plaintiffs' claims were meritless because they were not grounded in the law or the facts, incorporating its conclusions from its Rule 11 analysis:

> As discussed in the preceding subsections, Plaintiffs' counsel advanced claims that were not well-grounded in the law, as demonstrated by their (i) presentment of claims not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing the law; (ii) assertion that acts or events violated Michigan election law, when the acts and events (even if they occurred) did not; and (iii) failure to inquire into the requirements of Michigan election law. Plaintiffs' counsel advanced claims that were also not well-grounded in fact, as demonstrated by their (i) failure to present any evidentiary support for factual assertions; (ii) presentment of conjecture and speculation as evidentiary support for factual assertions; (iii) failure to inquire into the evidentiary support for factual assertions; (iv) failure to inquire into evidentiary support taken from other lawsuits; and (v) failure to inquire into Ramsland's outlandish and easily debunked numbers.

(R. 172, Op. & Order, Page ID # 6991.)

Plaintiffs' counsel argue on appeal that they brought non-frivolous legal claims based on a reasonable interpretation of the law and plausible arguments to extend the law.  (ECF No. 27, Pls' Br., Page ID #

61–67.)  But the only case they cite in their favor is *Bush v. Gore*, 531 U.S. 98 (2000).  *Id.*, Page ID # 62.  Further, they do not discuss *Bush* in the context of their specific legal claims.  *Id.*, Page ID # 62–67. Presumably, Plaintiffs are relying on *Bush* to support their Electors Clause claim (Count I), or their Equal Protection Clause claim (Count II), or both, since *Bush* involved both constitutional provisions.  *Id.* However, nothing in *Bush* supports their substantive Due Process Clause claim (Count III) or their state-law claims (Count IV), and Plaintiffs' counsel have waived argument that those claims had any merit.  *Rees v. W.M. Barr & Co., Inc.,* 736 F. App'x 119, 124 (6th Cir. 2018) ("The '[f]ailure to raise an argument in an appellate brief waives the argument on appeal.")  As a result, and despite Plaintiffs' counsels' failure to develop their arguments, the State Defendants will address Counts I and II.

### a.    Elections Clause and Electors Clause claims.

Count I of Plaintiffs' amended complaint contended that, because the Michigan Legislature has established laws for the administration of elections, including presidential elections, the State Defendants violated the Elections Clause and Electors Clause by "*fail[ing] to follow* the

requirements of the Michigan Election Code, as enacted by the Michigan Legislature[.]" (R. 6, Am. Comp., ¶ 180, Page ID # 938) (emphasis added). Plaintiffs recited a litany of purported election law violations, and requested that "the results for President in the November 3, 2020 election [ ] be set aside, [and] the State of Michigan should be enjoined from certifying the results[.]" (*Id.*, ¶¶ 180–81, Page ID # 938–39.)

But Plaintiff counsels' theory that failing to follow state election statutes violates the Elections or Electors Clauses would have effectively constitutionalized *any and every* claimed violation of state election law—no matter how minor, fleeting, or inconsequential—any time there was a presidential election. Had it been adopted by the court, counsels' argument would have dramatically expanded federal court oversight of state elections, and any deviation from state law by local officials anywhere in the state would be a matter of federal review. Importantly, Plaintiffs' counsel offered no support for such an expansive reading of these clauses. And, in fact, it was contrary to existing case law, including *Bush*.

As an initial matter, the District Court correctly determined that Plaintiffs lacked standing to bring these claims. (R. 62, Op. & Order, Page ID # 3320–24.) But even if Plaintiffs had standing, their claims were meritless.

The Elections Clause provides: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but Congress may at any time make or alter such Regulations, except as to the Place of chusing Senators." U.S. Const. Art. I, § cl. 1. In reviewing claims under the Elections Clause, the Supreme Court has generally weighed state election laws against federal requirements—but has not examined alleged *violations* of enacted state laws against those federal requirements. For example, in *Cook v. Gralike*, the Supreme Court addressed whether an amendment to the Arkansas Constitution imposing term limits on congressional offices violated the Election Clause. 531 U.S. 510, 525–26 (2001). Similarly, in *Arizona State Legislature v. Arizona Independent Redistricting Comm.*, the Supreme Court addressed whether an amendment to Arizona's Constitution creating the commission and modifying the state's redistricting process

25

violated the Elections Clause. 576 U.S. 787, 814–24 (2015). And in *Lance v. Coffman*, the Supreme Court was asked to address whether Colorado's Constitution, as interpreted by the state courts, violated the Elections Clause. 549 U.S. 437 (2007). But there, the Court concluded that the private citizen plaintiffs lacked standing because "[t]he only injury plaintiffs allege is that the law—specifically the Elections Clause—has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past." *Lance*, 549 U.S. at 442.

Here, Plaintiffs' allegations under the Elections Clause were not well pleaded because they were not alleging any state statutes violated the Elections Clause, but rather that local elections officials violated Michigan election laws. Such allegations did not state a claim for relief under the Elections Clause as interpreted by the Supreme Court. Moreover, Plaintiffs did not state claims against the State Defendants. As noted above at pages 4-5, the Governor and the Board of State Canvassers have only limited, ministerial duties with respect to an election, including a presidential election, none of which include

administering or enforcing the statutes Plaintiffs claim were violated. The Secretary is charged with supervising election officials, Mich. Comp. Laws § 168.21, and issuing directions for the proper conduct of elections, Mich. Comp. Laws § 168.31(1)(a)–(b). But Plaintiffs did not allege any specific conduct by her that violated any of the statutes of which Plaintiffs complained. Nor did the Secretary issue any instructions or directions that were contrary to law or otherwise advised any local elections officials to act contrary to Michigan Election Law. Thus, regardless of the procedural arguments that the District Court correctly concluded barred this claim, i.e., standing, mootness, laches, immunity, and abstention, Plaintiffs' Elections Clause claim was substantively meritless.

The Electors Clause of the U.S. Constitution provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of [Presidential] Electors." U.S. Const. art. II, § 1, cl. 2. Michigan, like most states, provides that "electors of president and vice-president of the United States shall be elected" every four years at the November general election "in the manner [ ] provided" by the Michigan Election Law. Mich. Comp. Laws § 168.43. In *Bush v. Palm*

27

*Beach County Canvassing Bd.,* 531 U.S. 70, 76 (2000), the Supreme Court held that state legislatures enacting laws governing the selection of presidential electors are acting under a grant of authority under Article II, § 1, cl. 2 of the U.S. Constitution. The Supreme Court has also held that the power to define the method of selecting presidential electors is exclusive to the state legislature, *McPherson v. Blacker,* 146 U.S. 1, 27 (1892), and cannot be "taken or modified" even by the state constitutions. *Bush v. Gore,* 531 U.S. 98, 112–13 (2000) (Rehnquist, C.J., concurring). From this modest premise, Plaintiffs contended that any violation of the Michigan Election Law is tantamount to a modification of the Michigan Legislature's enactments. But neither *Bush* nor *McPherson* held as much.

The Elections Clause and Electors Clause have "considerable similarity," and interpretations of one clause may inform the other. *Ariz. State Legislature*, 576 U.S. at 839 (Roberts, C.J., dissenting); *see also Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp.3d 814, 832–34 (D. Mont. 2020) (finding that the term "Legislature" has the same meaning in both clauses). Again, Plaintiffs did not allege that any statute violated the tenets of the Electors

Clause, but rather that state election laws were violated in certain jurisdictions by local officials.  In *Bush v. Gore*, the question was whether the Florida Supreme Court's decision prescribing statewide recount procedures that differed from legislatively enacted procedures unlawfully infringed upon the state's legislative scheme enacted pursuant to the Electors Clause.  531 U.S. at 104–12.  The Supreme Court concluded that the Florida decision did in that case because it did not provide for a uniform recount process that comported with the Equal Protection Clause's one-person, one-vote principle.  *Id.* Accordingly, the Supreme Court reversed the Florida Supreme Court, thereby halting the statewide recount and allowing Florida's already certified election results to stand.  *Id.* at 110–11.

Notably, *Bush* was "limited to the present circumstances" before the Court.  *Id.* at 109.  Regardless, contrary to counsels' arguments, *Bush* does not support Plaintiffs' claim.  In this case there was no decision by the Michigan Supreme Court, or any other state court, prescribing a statewide process contrary to or inconsistent with legislatively enacted laws.  Plaintiffs' allegations were simply complaints that local election officials, principally in the City of Detroit,

were not complying 100% with various election statutes. These allegations did not demonstrate a widespread or "significant departure from the legislative scheme for appointing Presidential electors[.]" *Bush*, 531 U.S. at 113 (Rehnquist, C.J., concurring). Further, as with Plaintiffs' Elections Clause claim, the named State Defendants did not engage in any of the alleged misconduct and did not issue any rule, interpretation, or directive that provided for a process different from that provided by Michigan Election Law. Rather, Michigan's presidential electors were elected consistent with the legislative scheme set forth in the Michigan Election Law. Plaintiffs' Electors Clause claim simply was not well-pled under *Cook* and *Arizona State Legislature*, or under *Bush*.

The District Court concluded as much in its opinion and order granting sanctions, where it incorporated its prior ruling in denying injunctive relief. (R. 172, Op. & Order, Page ID # 6942, n 28.) The District Court also addressed Plaintiffs' reliance on *Bush*, finding the facts and relief requested in *Bush* distinguishable from the instant case. (*Id.*, Page ID # 6944.) The court then incorporated this analysis in its

later determination that sanctions were warranted pursuant to its inherent authority.  (*Id*., Page ID # 6990–91.)

Thus, regardless of the procedural arguments that the District Court correctly concluded barred this claim, i.e., standing, mootness, laches, immunity, and abstention, (R. 62, Page ID # 3302-3324), Plaintiffs' Electors Clause claim was without merit.

### b.    Equal Protection Clause

Similarly, Plaintiffs' equal protection claim was meritless.  In Count II, Plaintiffs alleged that "Defendants['] fail[ure] to comply with the requirements of the Michigan Election Code [ ] diluted the lawful ballots of the Plaintiffs and of other Michigan voters and electors in violation of the United States Constitution guarantee of Equal Protection." (R. 6, ¶ 188, Page ID # 941.)

"Equal protection of the laws" means that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104–05.  Voting rights can be impermissibly burdened "by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."

*Id.* (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)). "Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right [to vote]." *Reynolds*, 377 U.S. at 559 (quoting *Wesberry v. Sanders*, 376 U.S. 1, 17–18 (1964)). "[A]ll who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and wherever their home may be." *Id.* at 557–58 (quoting *Gray v. Sanders*, 372 U.S. 368, 379 (1963)). Thus, "a law that would expressly give certain citizens a half-vote and others a full vote" would be violative of the Equal Protection Clause. *Wesberry*, 376 U.S. at 19 (quoting *Colegrove v. Green*, 328 U.S. 549, 569 (1946)).

A vote-dilution claim is generally only viable, and a party only has standing to assert such a claim, where the law devalues certain voters' votes over another group of voters' votes. *See, e.g., Rucho v. Common Cause*, 139 S. Ct. 2484, 2501 (2019) (" '[V]ote dilution' in the one-person, one-vote cases refers to the idea that each vote must carry *equal weight*." (emphasis added)); *Gill v. Whitford*, 138 S. Ct. 1916, 1929–30 (2018); *Bush,* 531 U.S. at 104–05 and the cases cited therein.

32

Again, as above, the District Court correctly determined that Plaintiffs lacked standing to bring their equal protection claim. (R. 62, Op. & Order, Page ID # 3318–19.) But even if Plaintiffs had standing, their claim was meritless.

Plaintiffs' allegations in the complaint failed to show that there had been a devaluation of any person's—or group of persons'—votes as being less valuable than others. Plaintiffs' votes carried the same weight as the purported invalid votes. And so Plaintiffs could not show a violation of "one-person, one-vote jurisprudence." *Bush*, 531 U.S. at 107 (citing *Gray*, 372 U.S. 368.) See, e.g., *George v. Hargett*, 879 F.3d 711 (6th Cir. 2018) (method for counting votes on state proposal did not violate equal protection). Further, at the time Plaintiffs filed their amended complaint, at least one Circuit had rejected a similar argument. *See Bognet v. Secretary Commonwealth of Pennsylvania*, 980 F.3d 336, 353–60 (3ʳᵈ Cir. 2020), vacated based on mootness, 141 S. Ct. 2508 (2021). There, as here, Plaintiffs' "conceptualization of vote dilution—state actors counting ballots in violation of state election law—is not a concrete harm under the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 354. Indeed, "if dilution of lawfully cast

ballots by the 'unlawful' counting of invalidly cast ballots 'were a true equal-protection problem, then it would transform every violation of state election law . . . into a potential federal equal protection claim." *Id.*

The decision in *Bush* does not support a different conclusion. In *Bush*, the question before the Court was "whether the recount procedures the Florida Supreme Court has adopted are consistent with its obligation to avoid arbitrary and disparate treatment of the members of its electorate." *Bush*, 531 U.S. at 105. The Court concluded that the process did not "satisfy the minimum requirement for nonarbitrary treatment of voters" because it did not include "specific standards" for determining a voter's intent: "The formulation of uniform rules to determine intent based on these recurring circumstances is practicable and, we conclude, necessary." *Id.* at 105–06.

But here, Plaintiffs did not allege that any election statute, rule, etc., was infirm because it treated voters in an arbitrary or disparate manner. Rather, their argument was that certain local elections officials were enforcing election laws in an arbitrary manner. So, the

decision in *Bush* is not on point and does not support Plaintiffs' equal protection claim.

As noted above, the District Court concluded in its opinion and order granting sanctions that Plaintiffs' equal protection claim was without merit. (R. 172, Op. & Order, Page ID # 6942, 6944 & n 28, 6990–91).  Thus, regardless of the procedural arguments that the District Court correctly concluded barred this claim, i.e., standing, mootness, laches, immunity, and abstention, Plaintiffs' Equal Protection Clause claim was without merit.

### 2. Plaintiffs' counsel knew or should have known that Plaintiffs' claims were meritless.

The second element for an award of sanctions under the court's inherent authority is that counsel knew or should have known that the claims advanced were meritless.  *Big Yank Corp.*, 125 F.3d at 313.

### a. The District Court determined that this factor was met, and Plaintiffs' counsel do not specifically contest that determination.

The District Court concluded that "Plaintiffs' counsel knew or should have known that [their] claims and legal contentions were not well-grounded in law or fact," again incorporating its preceding analysis under Rule 11.  (R. 172, Op. & Order, Page ID # 6991.)

Plaintiffs' counsel do not squarely address this element in their brief on appeal. In a footnote, counsel complain that the District Court made no "individualized findings of bad faith" as to any counsel, and they quote the court's "bad faith" ruling. (ECF No. 27, Pls' Br., Page ID #80, n 63) (quoting R. 172, Page ID # 6991.) They further complain that what the District Court relied on "is simply a recitation of the acts, unaccompanied by any discussion of an *individual's* action, failure to act, or even duty to act, that the District Court found improper." *Id.* (emphasis in original). Plaintiffs' counsel also complain that " 'knew or should have known' " was the wrong standard, suggesting it instead should be " 'knows or reasonably should know.' " *Id.*

An argument set forth exclusively in a footnote is not properly presented for the Court's review. *United States v. Dairy Farmers of Am., Inc.*, 426 F.3d 850, 856 (6th Cir. 2005) ("An argument contained only in a footnote does not preserve an issue for our review.").

Rather, in the arguments they have preserved, counsel assert that the District Court "fail[ed] to specify which sanctions authority it use[d] to impose which sanctions against which Appellants." (ECF No. 27, Pls' Br, Page ID # 73–74.) Plaintiffs' counsel also argue that the District

36

Court "erred as a matter of law by imposing sanctions collectively
against all attorneys without explaining its individualized consideration
of their relative responsibility for any misconduct." (*Id.*, Page ID # 85–
90.)

> **b.    The grounds for sanctions against each
> counsel is plain from the District Court's
> opinion.**

The State Defendants moved for sanctions under 28 U.S.C. § 1927
and the court's inherent authority. (R. 105, Page ID # 4336–37.) The
State Defendants' § 1927 claim was specifically directed at attorneys
Powell, Rohl, Hagerstrom, and Junttila. *Id.*, Page ID # 4348. The
State's "inherent authority" argument was directed at "Plaintiffs", as
the parties, and at "Plaintiffs' counsel," generally meaning Powell, Rohl,
Hagerstrom, and Junttila. *Id.*, Page ID # 4369–74. The City of Detroit
moved for sanctions under Rule 11, and it was clear from its filing that
it was seeking sanctions based on the conduct of *all* attorneys who
participated in this action. (R. 78, Page ID # 3616.)

The District Court recognized that the State Defendants were
moving under the court's inherent authority, and that City of Detroit
was moving under Rule 11. (R. 172, Op. & Order, Page ID # 6903–07.)

The court also correctly set forth the standards and rules applicable for granting sanctions pursuant to its inherent authority. (*Id.*, Page ID # 6931–36, 6990.)

In granting such sanctions, the District Court did not discuss independently which of Plaintiffs' counsel it was awarding sanctions against, because the court plainly awarded sanctions against all "Plaintiffs' counsel" under that theory, not just Powell, Rohl, Hagerstrom, and Junttila, as argued by the State Defendants. (*Id.*, Page ID # 6990–91.) And the District Court had the inherent authority to grant sanctions against all Plaintiffs' counsel, even where the City of Detroit had moved under Rule 11. *See, e.g., Chambers*, 501 U.S. at 50 (courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules"); *Metz*, 655 F.3d at 491 ("inherent power sanctions may be proper, even if Rule 11 applies").

Further, Plaintiffs' counsels' argument that the District Court did not "specify which sanctions authority it use[d] to impose which sanctions against which Appellant," (ECF No. 27, Page ID # 74), is without merit. The District Court articulated the standards for

38

granting sanctions pursuant to its inherent authority and applied those standards to all "Plaintiffs' counsel." (R. 172, Op. & Order, Page ID # 6931–36, 6990–91.)

### c. The District Court was not required to specifically delineate the culpability of each sanctioned attorney.

Plaintiffs' counsel further argue that the District Court was required to specifically discuss the sanctionable conduct perpetrated by each sanctioned attorney with respect to each ground upon which sanctions were imposed, i.e., Rule 11, § 1927, and inherent authority. (ECF No. 27, Page ID # 85–90.) The State Defendants disagree.

In their brief, counsel cite no authority for the proposition that, when several attorneys participate jointly and equally in sanctionable conduct, they cannot be sanctioned without detailed findings as to each attorney's level of responsibility for the sanctionable conduct. None of the cases Plaintiffs' counsel cite in their brief say as much, and none of them address the imposition of inherent authority sanctions, other than *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir. 1992). (ECF No. 27, Page ID # 87–89.) In *Orlett*, this Court remanded to the district court for further findings regarding a request for sanctions

39

under the court's inherent authority where the court did not address that ground in the first instance. This Court stated "[a]lthough the question of required findings under the claim of bad faith is in doubt, we will remand the case for some resolution in this regard because of the remand necessary under Rule 11." _Orlett_, 954 F.2d at 418–19. So, this case did not address sanctioning a group of counsel or the findings required to do so.

Nevertheless, the State Defendants agree that a court must make findings in determining that a sanctions award is appropriate. _See, e.g., In re Ruben_, 825 F.2d 977, 991 (6th Cir. 1987) ("[A] district judge faced with a sanction motion must make certain findings in determining that an award is appropriate. Careful analysis and discrete findings are required.") Here, the District Court satisfied this standard. The court observed the underlying case first-hand, heard six hours of argument on the sanctions motions, invited supplemental briefing, and issued a 110-page opinion detailing its findings and conclusions. _See, e.g., Bawle v. Rockwell Intern. Corp._, 79 Fed Appx 875, 879 (6th Cir. 2003) (concluding that district court had make sufficiently specific findings to support imposition of sanctions). And regardless, this Court "may

uphold the district court's sanction ruling notwithstanding the absence of specific findings if there is sufficient evidence in the record to support its ruling." *United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 75 F. App'x 342, 345 (6th Cir. 2017) (citation omitted).

But it is plain from the court's opinion, particularly the court's discussion of Rule 11 sanctions, that it determined all Plaintiffs' counsel—those whose signatures were electronically affixed to filings (Powell, Rohl, Hagerstrom and Junttila) and those who were listed as "of counsel" (Wood, Haller, Kleinhendler, Johnson and Newman)—were equally responsible for the sanctionable conduct. (R. 172, Page ID # 6895, 6899, 6901–02, 6914–26.) Indeed, thereafter the District Court refers to "Plaintiffs' attorneys" throughout the opinion, including in its determination that Rule 11 was violated, which determination the court incorporated in its conclusion that sanctions pursuant to its inherent authority were warranted. *Id.*, Page ID # 6942–91.

Because the District Court made findings to support its determination that all counsel knew or should have known that the legal claims advanced were meritless, and counsel do not specifically

41

argue they did not know or could not have known, this element was satisfied.

### 3. Plaintiffs and their counsel filed this suit for an improper purpose.

The third element for an award of sanctions under the court's inherent authority is that the motive for filing the suit was for an improper purpose. *Big Yank Corp.*, 125 F.3d at 313.

Again, a federal court possesses inherent power to sanction parties and their counsel for misconduct where a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers,* 501 U.S. at 45–47. The power extends to a full range of litigation abuses, both inside and "beyond the courtroom." *Id.* at 45–46, 57. Sanctions are appropriate where the moving party demonstrates "[i]mproper purpose," including harassment and conduct that is "tantamount to bad faith," "even in the absence of a specific finding of bad faith." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002). "[T]he 'mere fact that an action is without merit does not amount to bad faith.'" *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (quoting *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980)). Rather, there must be

42

"something more," like fraud on the court, improper use of the court, harassment, delay, or disruption of litigation. *Id.* at 753–54.

Here, the District Court concluded that "Plaintiffs and their counsel filed this lawsuit for improper purposes." (R. 172, Op. & Order, Page ID # 6991.)  The District Court incorporated its analysis under Rule 11, where the court likewise determined that Plaintiffs' counsel had acted with improper purpose. *Id.*, Page ID # 6976–90.  In short, the court concluded that conduct by counsel, including statements made publicly or in other litigation, the failure to conduct a reasonable inquiry into the underlying factual assertions, the failure to inform the court and the parties of a faulty affidavit, and counsels' statements at the hearing that they would file the same case all over again, demonstrated that the principal purpose for filing the lawsuit was not to press meritorious legal arguments, but to use the court for the improper purpose of advancing political arguments. *Id.*

Like the second element discussed above, counsel do not squarely address this factor in their brief on appeal.  They do spend several pages arguing that their factual assertions were supported and not frivolous and that they had a right to rely upon the affidavits and

reports they submitted.  (ECF No. 27, Pls' Br., Page ID # 27–45.)  But the District Court's rejection of those same arguments in its opinion was careful and correct, and not a politically based, "invidious" rewriting of the record.  (R. 172, Op. & Order, Page ID # 6947–75.)

Plaintiffs' counsel had a duty to inquire into the factual assertions and allegations made in their complaint and in the various affidavits sworn to by third parties (not Plaintiffs), submitted to the court.  Fed. R. Civ. P. 11(b)(3).  Many of these factual allegations and affidavits were borrowed from other cases, but that did not excuse counsels' duty to vet the facts, especially where many of the fact assertions had been refuted or called into question by opposing affidavits in those cases. While it may not be impermissible to rely on other counsels' work in another case, it did not relieve the instant counsel of performing their own vetting.  See, e.g., *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278–79 (3rd Cir. 1994).  Indeed, in a case brought in Colorado challenging the 2020 election, which was based in part on allegations from the instant case, the district court similarly concluded that counsel had failed to conduct a reasonable inquiry into the factual allegations alleged there and awarded sanctions.  *O'Rourke v. Dominion Voting*

44

*Systems, Inc., et al.*, 552 F. Supp. 3d 1168, 1189–97, 1199 (D. Colo. 2021) ("This lawsuit was filed with a woeful lack of investigation into the law and (under the circumstances) the facts. The lawsuit put into or repeated into the public record highly inflammatory and damaging allegations that could have put individuals' safety in danger. Doing so without a valid legal basis or serious independent personal investigation into the facts was the height of recklessness.")

Further, it is difficult to square Plaintiffs' counsels' continued assertions that their fact allegations were well-supported when an investigation by the Michigan Legislature refuted or explained many of those claims.[21]  Had Plaintiffs' counsel taken time at the outset to better vet their claims and allegations, they may have realized that many were to speculative or unsupported to bring before the court.  But they did not, and this failure supports the District Court's conclusion that counsel acted in bad faith.

To the extent Plaintiffs rely on the failure to apply "standards" and make "individualized" findings arguments discussed above in

_____

[21] *See* Oversight Committee Report on The November 2020 Election in Michigan, available at SMPO_2020ElectionReport_2.pdf (s3.us-east-1.amazonaws.com).

relation to this element, (ECF No. 27, Pls' Br, Page ID # 73–90).  Both
are, again, unpersuasive for the reasons stated previously.

So, because the District Court made findings to support its
determination that Plaintiffs' counsel acted with an improper purpose,
and counsel do not affirmatively argue to the contrary, this element was
satisfied.  And because all three elements necessary for the imposition
of sanctions pursuant to the court's inherent authority were satisfied,
the District Court did not abuse its discretion in imposing sanctions
against Plaintiffs' counsel.

### C.    The sanctions assessed were appropriate.

Plaintiffs' counsel take issue with the sanctions or remedies that
the District Court imposed.

There is no dispute that a court can award attorney fees to the
moving party as a sanction pursuant to a court's inherent authority.
*Chambers*, 501 U.S. at 45–46.  In *Goodyear Tire & Rubber Co. v.
Haeger*, the Supreme Court clarified that "a federal court's inherent
authority to sanction a litigant for bad-faith conduct by ordering it to
pay the other side's legal fees . . . is limited to the fees the innocent
party incurred solely because of the misconduct."  137 S. Ct. 1178,

1183–84 (2017).  In other words, "[t]he complaining party . . . may recover 'only the portion of [her] fees that [s]he would not have paid but for' the misconduct."  *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

Here, the District Court granted the State Defendants' motion and as a sanction pursuant to its inherent authority ordered Plaintiffs' counsel to pay the State Defendants' attorney fees reasonably incurred in defending this action.  (R. 172, Op & Order, Page ID # 6996–98.)  And the court ordered that Plaintiffs' counsel were jointly and severally responsible for paying the State's fees, *id.*, Page ID # 6998, which this Court has found appropriate in sanctions cases, *see Dearborn Street Bldg. Associates, L.L.C. v. Huntington Nat. Bank*, 411 Fed. Appx 847, 852 (6th Cir. 2011).

As the District Court observed in its subsequent opinion awarding attorney fees, no counsel objected to the reasonableness of the State Defendants' requested fees of $21,964.75.  (R. 179, Op. & Order, Page ID # 7143.)  And the court awarded the State its requested fees to be paid jointly and severally by all counsel.  *Id.*, Page ID # 7168.

In awarding fees, the District Court recognized that an award pursuant to the court's inherent authority is intended to compensate the moving party for only work required due to the misconduct. *Id.*, Page ID # 7145–46. In its sanctions opinion and order, the District Court concluded that the instant lawsuit was frivolous or improper from its inception. (R. 172, Page ID # 6996.) As a result, the State Defendants were entitled to an award reflecting all costs incurred in defending the action below, which is what the State requested in its notice and affidavits of cost, (R. 173, State's Notice, Page ID # 7000, 7007–17), and what the court awarded. The court did not abuse its discretion or otherwise error in awarding the State Defendants their requested fees pursuant to its inherent authority to sanction counsel.

Plaintiffs' counsel further complain about the District Court's sanction requiring them to take continuing education courses. (ECF No. 27, Pls' Br., Page ID # 80–81.) But the District Court clearly possesses the power, under its inherent authority, to impose non-monetary forms of punishment. *See* Chambers, 501 U.S. at 44–45 (listing examples of non-monetary sanctions courts may impose under their inherent authority, such as dismissal of a case). Regardless, this

48

issue or argument is moot.  Counsel have complied with this sanction as demonstrated by their affidavits filed with the District Court.  (R. 196, 197, 198, 199, 200, 201, 202, 203, and 204.)  Although they profess in those affidavits that they are not waiving any claims, counsel cannot waive mootness.

In general, a federal court has a continuing duty to ensure that it adjudicates only genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties.  *See Church of Scientology v. United States,* 506 U.S. 9, 12 (1992); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir. 1997) (en banc).  If "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," then the case is moot and the court has no jurisdiction.  *Los Angeles County v. Davis,* 440 U.S. 625, 631 (1979).  A "live" controversy is one that "persists in 'definite and concrete' form even after intervening events have made some change in the parties' circumstances."  *Mosely v. Hairson*, 920 F.2d 409, 414 (6th Cir. 1990) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)); *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("The test for mootness is whether the relief sought would, if

49

granted, make a difference to the legal interests of the parties.")

(internal quotation marks and citation omitted).

Here, there is no longer a live controversy. Plaintiffs' counsel complied with this sanction, and even if the Court were to reverse this aspect of the District Court's decision the relief given would make no difference to the legal interests of the parties. In other words, the relief requested would have no real or meaningful impact on the legal interests of the parties. Counsels' argument as to this specific sanction is thus moot.

Plaintiffs' counsel also complain of the District Court's referral of each counsel to the relevant professional disciplinary committees. (ECF No. 27, Pls' Br, Page ID # 80–83.) But consistent with the court's inherent authority, the local court rules gave the District Court authority to impose non-monetary sanctions for attorney misconduct. See E.D. Mich. L.R. 83.22(d). And regardless, this argument is also moot. The District Court referred counsel within days of its August 25th decision as the State Defendants noted in their response in opposition to Plaintiffs' motion to stay the court's order filed before this Court. (ECF No. 35, State's Response, Page ID #21.) Because they have

already been referred, there is no meaningful relief this Court can

provide. *Church of Scientology,* 506 U.S. at 12.

The District Court did not abuse its discretion or err in imposing

sanctions against Plaintiffs' counsel pursuant to its inherent authority,

and the sanctions that were imposed—both monetary and non-

monetary—were supported by law and fact.


## II.    The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to 28 U.S.C. § 1927 where it found that counsel had unreasonably and vexatiously multiplied the litigation.

### A.    Standards for granting sanctions under 28 U.S.C. § 1927.

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so

multiplies the proceedings in any case unreasonably and vexatiously

may be required by the court to satisfy personally the excess costs,

expenses, and attorneys' fees reasonably incurred because of such

conduct."   Under this statute, the attorney's subjective bad faith is not

relevant because the court applies an objective standard, and "sanctions

under section 1927 [are appropriate] when it determines that an

attorney reasonably should know that a claim pursued is frivolous."

*Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d 520, 532 (6th Cir.

51

2006) (quoting *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th

Cir.1986)).  "Simple inadvertence or negligence, however, will not

support sanctions under § 1927."  *Salkil*, 458 F.3d at 532 (citing *Ridder*

*v. City of Springfield,* 109 F.3d 288, 298 (6th Cir.1997).)  " 'There must

be some conduct on the part of the subject attorney that trial judges,

applying collective wisdom of their experience on the bench could agree

falls short of the obligations owed by a member of the bar to the court.' "

*Id.* (quoting *Ridder*, 109 F.3d at 298, quoting *In re Ruben,* 825 F.2d 977,

984 (6th Cir. 1987)).

Plaintiffs assert in their brief that the State Defendant's motion

for sanctions under § 1927 was untimely after the voluntary dismissal.

But a motion for sanctions under § 1927 can be filed even after final

judgment in a case.  *Ridder*, 109 F.3d at 297; *Red Carpet Studios Div. of*

*Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 644–45 (6th Cir. 2006).

### B.    The District Court properly applied these standards in granting sanctions pursuant to § 1927.

In its opinion and order, the District Court correctly set forth the

standards applicable for granting sanctions pursuant to § 1927.  (R.

172, Page ID # 6909–10.)  In sum, the District Court concluded that

Plaintiffs' counsel violated § 1927 because their continued pursuit of

this litigation after December 14, 2021, the day Michigan's presidential electors voted and the day Plaintiffs' counsel stated in briefing it would be become moot—was unreasonable and vexatious. *Id.*, Page ID # 6936–41.  The court did not abuse its discretion in reaching this conclusion because the facts and law supported that conclusion.

In denying Plaintiffs' emergency motion for declaratory and injunctive relief, the District Court concluded that the Eleventh Amendment barred Plaintiffs' claims, including their state-law claims; that their claims were moot; that their claims were barred by laches; that abstention applied; that Plaintiffs lacked standing to bring their equal protection, Electors Clause and Elections Clause claims; and that as a result Plaintiffs had no likelihood of succeeding on the merits of their claims.  (R. 62, Op. & Order, Page ID # 3301–28.)

In addressing mootness, the District Court observed, "[t]he time has passed to provide most of the relief Plaintiffs request in their Amended Complaint; the remaining relief is beyond the power of any court." *Id.*, Page ID # 3307.  The court summarized the relief Plaintiffs requested in their amended complaint:

> Plaintiffs ask the Court to: (a) order Defendants to decertify the results of the election; (b) enjoin Secretary Benson and

> Governor Whitmer from transmitting the certified election results to the Electoral College; (c) order Defendants "to transmit certified election results that state that President Donald Trump is the winner of the election"; (d) impound all voting machines and software in Michigan for expert inspection; (e) order that no votes received or tabulated by machines not certified as required by federal and state law be counted; and, (f) enter a declaratory judgment that mail-in and absentee ballot fraud must be remedied with a manual recount or statistically valid sampling. (ECF No. 6 at Pg ID 955–56, ¶ 233.)

*Id.*, Page ID # 3308.  The court observed that "[w]hat relief [it] could grant Plaintiffs is no longer available."  *Id.*  As the District Court recognized, all 83 Michigan Counties and the Defendant Board of State Canvassers had certified the election results, and Defendant Whitmer had already certified Michigan's electors before Plaintiffs even filed their lawsuit.  *Id.*  Further, the time had also run for challenging the election based on voting equipment errors and for seeking a recount under Michigan's statutory processes.  *Id.*, Page ID # 3309.  Indeed, the former President or his campaign could have requested a recount under Michigan Election Law, but neither did. Instead, Plaintiffs asked this court to order one instead.  As the court noted, "[a]ny avenue for this Court to provide meaningful relief has been foreclosed," and thus

"Plaintiffs' requested relief concerning the 2020 General Election is moot." *Id.*, Page ID # 3309–10.

The court rendered this decision on December 7, Plaintiffs filed a notice of appeal to the Sixth Circuit on December 8, and then did nothing to advance that appeal, indeed they never filed a brief. (R. 64, Page ID # 3332.) They waited three days and then filed their petition for certiorari on December 11, and then waited another seven days to move to expedite their petition before the Supreme Court. That was four days after Michigan's electors had voted, an act Plaintiffs sought to enjoin.

And as the District Court observed in its opinion, in Plaintiffs' petition for certiorari, Plaintiffs and their counsel recognized that their claims would be moot absent expedited consideration by that Court. They noted they sought "immediate preliminary relief . . . to maintain the status quo *so that the passage of time and the actions of [Defendants] do not render the case moot*, depriving [the Supreme] Court of the opportunity to resolve the weighty issues presented herein and [Defendants] of any possibility of obtaining meaningful relief." (R. 105-2, Page ID # 4401, 4409) (emphasis added.)

Plaintiffs' counsel asked the Supreme Court to "exercise its authority to issue the writ of certiorari and stay the vote for the Electors in Michigan," to "stay or set aside the results of the 2020 General Election in Michigan," and to "stay the Electoral College Vote[.]" (*Id.*, pp 10, 15–16.)  Similarly, they argued that "the Michigan results must be decertified, [and] the process for seating electors stayed[.]" (*Id.*, p. 17.)  They requested an "injunction prohibiting the State Respondents from transmitting the certified results[.]" (*Id.*, p. 22.)  In their conclusion, they asked the Supreme Court to enter an emergency order "instructing [Defendants] to de-certify the results of the General Election for the Office of President," or alternatively to order Defendants "to certify the results of the General Election for Office of the President in favor of President Donald Trump." (*Id.*, p 31.)  Plaintiffs expressly acknowledged to that Court that "[o]*nce the electoral votes are cast, subsequent relief would be pointless*," and "*the petition would be moot.*" (*Id.*, pp. 7, 15) (emphasis added.)

Thus, to the extent this case was not already moot as the District Court concluded on December 7, Plaintiffs and their counsel knew that this case would be moot once the electors voted on December 14.  Yet,

56

that date came and went with no acknowledgement by Plaintiffs and their counsel to Defendants, to the District Court, or the Supreme Court. As a result, the State Defendants were required to follow through with filing a first responsive pleading to Plaintiffs' amended complaint on December 22.[22] Defendants filed a motion to dismiss in lieu of answering. (R. 70, Defs' Mot. & Br., Page ID # 3350–3428.)

In response to defense counsel's e-mail to Plaintiffs' counsel seeking concurrence in their motion to dismiss, Plaintiffs' counsel Ms. Lambert Junttila responded that since "[t]his case is on appeal to the Sixth Circuit and to the United States Supreme Court," Plaintiffs' counsel was "not in a position to respond to [the request for concurrence] until these appeals are decided," and counsel did "not believe [the District Court] has jurisdiction to consider [Defendants'] motion while the case is on appeal." (R. 105-3, Page ID # 4432.) As the District Court observed, (R. 172, Page ID # 6939, n 27), this statement

---

[22] Plaintiffs' counsel argues in their brief that it was unnecessary for the Defendants to file their motion to dismiss. (ECF No. 27, Page ID # 64, n 58.) But the State Defendants' first responsive pleading was due under the court rules on December 22, 2020. See Fed. R. Civ. P 12(a)(1)(A). Defendants could have sought an extension, but the case was moot, legally without merit, and its continued existence was casting a shadow on Michigan's electoral vote process.

by Plaintiffs' counsel was of course incorrect since no stay had been entered by that court, by this Court, or by the Supreme Court in this case. In fact, Plaintiffs did not move for a stay of this case in any court. Plaintiffs' counsel presumably realized their error as they subsequently asked for an extension of time to respond to Defendants' motion on January 12, 2021, (R. 82), the day their response was due under the court rule. *See* L.R. 7.1(e)(1)(B). And then, two days later, Plaintiffs' counsel filed the voluntary dismissal as to Defendants instead of responding—a month after the vote of the electors on December 14 and eight days after Congress voted.

Again, § 1927 sanctions are appropriate where "an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' " *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006) (quoting *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir. 1987)). Such sanctions are intended to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios*, 465 F.3d at 646. Section 1927 has been interpreted "to impose a continuing duty upon

attorneys to dismiss claims that are no longer viable." *Dahnke v. Teamsters Local 695,* 906 F.2d 1192, 1201 n. 6 (7th Cir.1990).  An attorney who is sanctioned pursuant to this statute must "personally satisfy the excess costs attributable to his [or her] misconduct." *Red Carpet Studios*, 465 F.3d at 646.

Here, Plaintiffs' case was not well-taken from its inception.[23]  As the District Court noted in its December 7 opinion, Plaintiffs' requested relief was nearly moot before their case was even filed.  (R. 62, Page ID # 3307–10).  And if that was not true by December 7, it was certainly true by December 14 after Michigan's electors had voted.  As discussed above, Plaintiffs' counsel represented to this Nation's highest court that their claims would be moot after Michigan's electors voted.  But still, Plaintiffs and their counsel did not dismiss this case, thereby necessitating the filing of motions to dismiss on December 22.  Of course, Defendants did so only to have Plaintiffs' counsel voluntarily

---

[23] The State Defendants argued below that Plaintiffs' counsel vexatiously maintained and multiplied this proceeding from the filing of their amended complaint forward.  (R. 105, Page ID # 4359-4368.)  *See Ridder,* 109 F.3d at 297-299 (holding there that attorney could be liable for vexatious conduct that began with "the filing of the complaint").  The District Court, however, did not go that far in its opinion.

59

dismiss the case when it came time for their response. Again, by refusing to timely dismiss this case as moot, Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings and caused unnecessary expense to the State Defendants.

Plaintiffs argued to the District Court that they determined their case was not moot by December 14 after all, because at least three of the Presidential elector Plaintiffs believed they were, in fact, properly elected electors, and apparently, believed the case should be maintained. (R. 172, Op & Order, Page ID # 6937–38.) Plaintiffs make a similar argument on appeal, stating "[w]hen an alternate slate of electors for Michigan was advanced in early January, new life came into the case." (ECF No. 27, Pls' Br, Page ID # 64–65.) But as the District Court observed, a party's subjective belief that they have a cause or claim does not make it so, and there was no support in the law for this argument. (R. 172, Op. & Order, Page ID # 6937–38.)[24]

---

[24] Notably, this false or "alternate slate of electors" is the subject of an ongoing criminal investigation. *See*, Bridge Michigan, June 23, 2022, Trump fake elector probe into 2020 race expands with Michigan subpoenas | Bridge Michigan (accessed June 24, 2022).

Here, counsels' zealousness clearly clouded their legal judgment and led them to engage in tactics that fell far short of the obligations they owed the District Court as licensed attorneys. *Ridder*, 109 F.3d at 298. As a result, the District Court properly sanctioned attorneys Powell, Rohl, Hagerstrom, and Junttila, as requested by the State Defendants and the remaining Plaintiffs' counsel as well under § 1927.

As they did with respect to the court's imposition of sanctions under its inherent authority, Plaintiffs' counsel do not squarely address the District Court's analysis of the facts and application of the law to conclude that sanctions under § 1927 were warranted against Plaintiffs' counsel. Rather, they again appear to assert the failure to apply "standards" and make "individualized" findings arguments discussed above. (ECF No. 27, Pls' Br., Page ID # 73–90.) Both are, again, unpersuasive.

### a.   The grounds for sanctions against each counsel is plain from the District Court's opinion.

The State Defendants moved for sanctions under 28 U.S.C. § 1927 and directed their claim at attorneys Powell, Rohl, Hagerstrom, and Junttila. (R. 105, Page ID # 4336–37, 4348.) The District Court

recognized that the State Defendants were moving under § 1927.  (R. 172, Op. & Order, Page ID # 6903–07.)  The court also correctly set forth the standards and rules applicable for granting sanctions pursuant to its inherent authority.  (*Id*., Page ID # 6909–10.)

In granting such sanctions under § 1927, the District Court did not discuss independently which of Plaintiffs' counsel it was awarding sanctions against, because the court plainly awarded sanctions against all "Plaintiffs' counsel" under that theory, not just Powell, Rohl, Hagerstrom, and Junttila, as the State argued.  *Id*., Page ID # 6936–41. And the District Court had the authority to sua sponte grant sanctions against all Plaintiffs' counsel, even without a motion.  *See Dixon v. Clem*, 492 F.3d 665, 676–79 (6th Cir. 2007) (affirming court's sua sponte imposition of § 1927 sanctions on attorney).

Further, Plaintiffs' counsels' argument that the District Court did not "specify which sanctions authority it use[d] to impose which sanctions against which Appellant," (ECF No. 27, Page ID # 74), is without merit.  The District Court articulated the standards for granting sanctions pursuant to § 1927 and applied those standards to all "Plaintiffs' counsel" in its opinion and order granting sanctions.  (R.

172, Op. & Order, Page ID # *Id.*, Page ID # 6936–41.)  Contrary to counsels' argument, the District Court did not "mix-and-match" standards.  It applied the test for imposing § 1927 sanctions and found all counsel at fault.

> **b.  The District Court was not required to specifically delineate the culpability of each sanctioned attorney.**

Plaintiffs' counsel argue that the District Court was required to specifically discuss the sanctionable conduct perpetrated by each sanctioned attorney before it could impose sanctions under § 1927.  (ECF No. 27, Page ID # 85–90.)  The State Defendants disagree.

Again, counsel cite no authority for the proposition that, when several attorneys participate jointly in sanctionable conduct, they cannot be sanctioned without detailed findings as to each attorney's level of responsibility for the sanctionable conduct.

But the State Defendants agree that a court must make findings in determining that a sanctions award is appropriate.  *In re Ruben*, 825 F.2d at 991.  Here, the District Court satisfied this standard.  The court concluded that, based on Plaintiffs' counsels' own assertions in briefing, including to the U.S. Supreme Court, Plaintiffs' claims became moot as

of December 14, 2020. (R. 172, Op & Order, Page ID # 6936–37.) But Plaintiffs and counsel did not dismiss their claims, which caused all Defendants to have to file first responsive pleadings, which " 'caused [the Defendants] and the [C]ourt to waste resources' in the meantime." *Id.*, Page ID # 6940 (quoting *Morris v. City of Detroit Water & Sewage Dep't*, 20 F. App'x 466, 468 (6th Cir. 2001); *see also Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824, 835 (6th Cir. 2005) (affirming impositions of sanctions where attorney "refus[ed] to voluntarily dismiss the count and forc[ed] [opposing counsel] to pursue a dispositive motion in order to have the claim dismissed"). As a result, the court found "that Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings in this case and their arguments to the contrary are unavailing." (R. 172, Op. & Order, Page ID # 6941.)

It is plain from the court's opinion that it determined all Plaintiffs' counsel were equally responsible for the sanctionable conduct. Because the District Court made findings to support its determination that all counsel for Plaintiffs were equally responsible for vexatiously multiplying the proceedings below, and counsel do not affirmatively and

squarely argue to the contrary, the court did not abuse its discretion or err in imposing sanctions under § 1927.

### C.    The sanctions assessed were appropriate.

Plaintiffs' counsel also take issue with the sanctions award that the District Court imposed pursuant to § 1927. Counsel complains that under § 1927, the District Court was limited to awarding "legal expenses Defendants incurred after December 14." (ECF No. 27, Pls' Br., Page ID # 80.) "Yet . . . when fashioning the remedy, the District Court held Appellants liable for all of the Governor and Secretary of State's (and Detroit's) legal expenses." *Id.*

The District Court ordered that "Plaintiffs' attorneys shall jointly and severally pay the fees and costs incurred by the State Defendants and the City of Detroit *to defend this action.*" (R. 172, Op. & Order, Page ID # 6998) (emphasis added). The State Defendants' notice and fee affidavits reflected costs incurred in defending the action below. (R. 173, State's Notice, Page ID # 7000, 7007–17.) And the court awarded the State the full amount of the requested fees to be paid jointly and severally by all counsel. (R. 179, Op. & Order, Page ID # 7168.)

It is true that the State Defendants and the District Court did not itemize or parse the costs that would have been payable under § 1927. But because the court granted sanctions pursuant to its inherent authority in favor of the State Defendants, the State Defendants were entitled to the modest amount they sought, which subsumed any smaller subset owed under § 1927. This is likely why the District Court did not require the State Defendants and the City of Detroit to separately account for costs associated with Plaintiffs' counsels' misconduct under § 1927. Under these circumstances, the court did not abuse its discretion or otherwise err in granting sanctions under § 1927.

Finally, counsel complain that the non-monetary sanctions could not properly be awarded under § 1927. (ECF No. 27, Pls' Br., Page ID # 80.) But as discussed above, these sanctions or remedies were properly imposed, and Plaintiffs' counsels' claims to the contrary are moot.

**III. The District Court did not violate the First Amendment Rights of Plaintiffs and their counsel in imposing sanctions where the court determined that counsel were using the judicial forum in bad faith to advance meritless claims.**

Plaintiffs' counsel argue that the District Court violated their First Amendment rights by imposing sanctions because the court

"disapprove[d] of their message."  (ECF No. 27, Page ID # 71–72.)  But

this argument is without merit because the District Court imposed

sanctions based on Plaintiffs' and their counsels' abuse of the judicial

forum.

As the District Court observed in its opinion, an attorney's right to

free speech while litigating an action " 'is extremely circumscribed.' "

(R. 172, Op. & Order, Page ID # 6981–82) (quoting *Mezibov v. Allen*, 411

F.3d 712, 717, 720–21 (6th Cir. 2005) (quoting *Gentile v. State Bar of

Nev.*, 501 U.S. 1030, 1071 (1991)).  And as this Court explained in

*Mezibov*:

> It is not surprising that courts have thus far been reluctant
> to allow the First Amendment to intrude into the courtroom.
> At first blush, the courtroom seems like the quintessential
> arena for public debate, but upon closer analysis, it is clear
> this is not, and never has been, an arena for free debate. . . .
> An attorney's speech in court and in motion papers has
> always been tightly cabined by various procedural and
> evidentiary rules, along with the heavy hand of judicial
> discretion. . . . [and in] [t]he courtroom[,] . . . the First
> Amendment rights of everyone (attorneys included) are at
> their constitutional nadir.

*Id.* at 717 (internal citations omitted) (emphasis in original).  Attorneys

"voluntarily agree[ ] to relinquish [their] rights to free expression in . . .

judicial proceeding[s]" and "voluntarily accept[ ] almost unconditional

restraints on [their] personal speech rights" when before a court. *Id*. at 719–20.

Plaintiffs' counsel argued the principles articulated in *Mezibov* are no longer good law under *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018). (ECF No. 27, Page ID # 70.) But that case addressed state statutes imposing content-based speech restrictions on health clinics, not the activities of lawyers and clients inside the courtroom.

But more to the point, Plaintiffs and their counsel have no protected-speech right to file or maintain a meritless lawsuit. Unsurprisingly, courts have rejected similar arguments. *See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition.") (internal citations omitted); *In re Harper*, 725 F.3d 1253, 1261 (10th Cir. 2013) (First Amendment does not protect the filing of frivolous motions); *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007) ("there is no constitutional right to file frivolous litigation" (footnote omitted)); *Larsen v. Commissioner of*

*Internal Revenue*, 765 F.2d 939, 941 (9th Cir. 1985) ("The right to petition protected by the First Amendment does not include the right to maintain groundless proceedings."); *In re Itel Securities Litigation*, 79 F.2d 672, 676 (9th Cir. 1986) (finding that the petitioner attorney's argument that the First Amendment guarantees the right of any citizen to present any petition without penalty is "frivolous").

The First Amendment did not absolve Plaintiffs' counsel of their ethical obligations as attorneys or insulate them from the imposition of sanctions in this case. The two quotes that Plaintiffs' counsel take out of context from the District Court's opinion, (ECF No. 27, Page ID # 72–73), do not reflect animus towards the content of Plaintiffs' counsels' message. Indeed, the court noted elsewhere in its opinion that the First Amendment allows Plaintiffs' counsel to say what they wish on social media, in press conferences, on television, but that "federal courts are reserved for hearing genuine legal disputes which are well-grounded in fact and law." (R. 172, Op. & Order, Page ID # 6980.) The comments of which Plaintiffs' counsel complain reflect the District Court's determination that because the lawsuit was so legally deficient in both fact and law, Plaintiffs' counsels' motives in filing suit appeared to be

more an effort to use the court as a bully pulpit rather than to pursue meritorious litigation.  Using the court in that way is improper, and the District Court did not violate any First Amendment rights in so concluding.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Defendants-Appellees Governor Gretchen Whitmer and Secretary of State Jocelyn Benson respectfully request that this Court affirm the District Court's August 25, 2021, opinion and order granting sanctions in favor of Defendants-Appellees and its December 2, 2021, opinion and order awarding Defendants-Appellees $21,964.75 in attorneys' fees.

Respectfully submitted,

*/s/ Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees Gretchen Whitmer &
Jocelyn Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

Dated:  June 24, 2022

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.     This brief does not comply with the type-volume limitation of
Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding
the part of the document exempted by Federal Rule of Appellate
Procedure 32(f), this brief contains more than 13,000 words.  This
document contains 13,726 words.  This brief is accompanied by a motion
for excess word count.

2.     This document complies with the typeface requirements of
Federal Rule of Appellate Procedure 32(a)(5) and the type-style
requirements of Federal Rule of Appellate Procedure 32(a)(6) because
this document has been prepared in a proportionally spaced typeface
using Word 2013 in 14-point Century Schoolbook.

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees Gretchen Whitmer &
Jocelyn Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659

71

# CERTIFICATE OF SERVICE

I certify that on June 24, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees Gretchen Whitmer &
Jocelyn Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 11/25/2020 | 1 | 1-830 |
| First Amended Complaint | 11/29/2020 | 6 | 872-1831 |
| Pls' Emergency Mtn Declaratory and Permanent Injunctive Relief | 11/29/2020 | 7 | 1832-1849 |
| Pls' Mtn File Affidavits Under Seal | 11/29/2020 | 8 | 1850-1856 |
| State Defs' Response Opp Pls' Emergency Mtn TRO | 12/02/2020 | 31 | 2162-2458 |
| DNC Opp Pls' Mtn Seal | 12/02/2020 | 32 | 2459-2465 |
| City of Detroit Opp Pls' Mtn Seal | 12/02/2020 | 34 | 2470-2478 |
| State Defs' Opp Pls' Mtn Seal | 12/02/2020 | 35 | 2479-2485 |
| DNC Opp Pls' Mtn Declaratory, Emergency & Permanent Injunctive Relief | 12/02/2020 | 36 | 2486-2738 |
| Davis Response Pls' Mtn TRO | 12/02/2020 | 37 | 2739-2750 |

| City of Detroit Response Pls' Mtn Declaratory, Emergency & Permanent Injunctive Relief | 12/02/2020 | 39 | 2808-2933 |
|---|---|---|---|
| Pls' Reply to Responses in Opposition to Mtn for Declaratory, Emergency & Permanent Injunctive Relief | 12/03/2020 | 49 | 3068-3152 |
| Pls' Reply to Responses to Mtn to Seal | 12/03/2020 | 50 | 3153-3164 |
| Opinion & Order Denying Pls' Emergency Mtn Declaratory, Emergency & Injunctive Relief | 12/07/2020 | 62 | 3295-3330 |
| Pls' Notice of Appeal of Opinion (R. 62) | 12/08/2020 | 64 | 3332 |
| State Defendants' Mtn to Dismiss | 12/22/2020 | 70 | 3350-3428 |
| City of Detroit Mtn for Sanctions, Disciplinary Action, Disbarment Referral and Referral to State Bar Disciplinary Bodies | 01/05/2021 | 78 | 3616-3836 |
| Pls' Mtn for Extension of Time to Respond to Defs' & Intervenors' Mtns to Dismiss & for Sanctions | 01/12/2021 | 82 | 3857-3869 |
| Defs Whitmer & Benson Concurrence in City of | 01/14/2021 | 84 | 3879-3882 |

| | | | |
|---|---|---|---|
| Detroit's Motion for Sanctions | | | |
| Pls' Notice of Voluntary Dismissal of Benson | 01/14/2022 | 86 | 4030-4032 |
| Pls' Notice of Voluntary Dismissal of City of Detroit | 01/14/2022 | 87 | 4033-4035 |
| Pls' Notice of Voluntary Dismissal Whitmer | 01/14/2022 | 88 | 4036-4038 |
| Pls' Notice of Voluntary Dismissal of Democratic National Committee | 01/14/2022 | 89 | 4039-4041 |
| Pls' Notice of Voluntary Dismissal of Board of State Canvassers | 01/14/2022 | 90 | 4042-4044 |
| Pls' Notice of Voluntary Dismissal MI Democratic Party | 01/14/2022 | 91 | 4045-4047 |
| Pls' Mtn Voluntary Dismissal Intervenor-Defendant Davis | 01/17/2022 | 92 | 4048-4057 |
| Defs Whitmer & Benson Mtn for Sanctions | 01/28/2021 | 105 | 4334-4450 |
| Pls' Opposition State Defs' Mtn for Sanctions | 02/11/2021 | 112 | 4600-4731 |
| Defs Whitmer & Benson Reply Support Mtn for Sanctions | 03/11/2021 | 116 | 4741-4773 |

| | | | |
|---|---|---|---|
| Defs Whitmer & Benson Mtn for Leave to File Supplemental Briefing | 04/06/2021 | 118 | 4778-4991 |
| Pls' Response to Defs Whitmer & Benson Supplemental Brief | 04/23/2021 | 120 | 4995-5067 |
| Order (re supplemental briefs) | 07/12/2021 | 150 | 5269 |
| Rohl, Johnson, Kleinhendler, Powell, Haller & Hagerstrom Supplemental Brief | 07/26/2021 | 161 | 5794-6097 |
| Junttila Supplemental Brief | 07/28/2021 | 165 | 6562-6582 |
| Defs Whitmer & Benson Response to Pls' Counsel Supplemental Briefs | 08/04/2021 | 166 | 6583-6674 |
| Opinion & Order (re sanctions) | 08/25/2021 | 172 | 6890-6999 |
| Defs Whitmer & Benson Notice Regarding Sanctions Award | 09/08/2021 | 173 | 7000-7017 |
| Opinion & Order (re sanctions) | 12/02/2021 | 179 | 7142-7168 |
| Rohl, Johnson, Kleinhendler, Powell, Haller & Hagerstrom's Notice of Appeal | 12/03/2021 | 182 | 7174-7176 |
| Junttila's Notice of Appeal | 01/03/22 | 187 | 7182-7184 |

| Affidavit of Emily P. Newman | 02/25/2022 | 196 | 7321-7348 |
| Affidavit of Julia Z. Haller | 02/25/2022 | 197 | 7349-7363 |
| Affidavit of Gregory J. Rohl | 02/25/2022 | 198 | 7364- 7386 |
| Affidavit of L. Lin Wood | 02/25/2022 | 199 | 7387-7395 |
| Affidavit of Brandon C. Johnson | 02/25/2022 | 200 | 7396-7410 |
| Affidavit of Scott Hagerstrom | 02/25/2022 | 201 | 7411-7422 |
| Affidavit of Sidney Powell | 02/25/2022 | 202 | 7423-7447 |
| Affidavit of Stafanie Lambert Junttila | 02/25/2022 | 203 | 7448-7449 |
| Affidavit of Stafanie Lambert Junttila | 02/28/2022 | 204 | 7450-7451 |