Case No. 21-1786

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

TIMOTHY KING, et al.

        Plaintiffs,

        and,

GREGORY J. ROHL, BRANDON JOHNSON, HOWARD KLEINHENDLER, SIDNEY POWELL, JULIA HALLER; SCOTT HAGERSTROM

        Interested Parties-Appellants,

        v.

GRETCHEN WHITMER, JOCELYN BENSON, CITY OF DETROIT

        Defendants-Appellees.

On Appeal from the United States District Court for the Eastern District of Michigan, No. 2:20-cv-13134

# DEFENDANT-APPELLEE CITY OF DETROIT'S BRIEF ON APPEAL

David H. Fink (MI – P28235)
Nathan J. Fink (MI – P75185)
Attorneys for the City of Detroit
**FINK BRESSACK**
38500 Woodward Avenue,
Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Defendant-Appellee City of Detroit is a municipal corporation and is not a subsidiary or an affiliate of a publicly owned corporation.

# **TABLE OF CONTENTS**

**CORPORATE DISCLOSURE STATEMENT** ...................................................... i

**TABLE OF CONTENTS** ..................................................................... ii

**TABLE OF AUTHORITIES** .......................................................... iv

**STATEMENT REGARDING ORAL ARGUMENT** ....................................... viii

**COUNTERSTATEMENT OF JURISDICTION** ....................................................1

**COUNTERSTATEMENT OF ISSUES** .......................................................2

**STATEMENT OF THE CASE** ................................................................4

    **I.**    **Common Procedural History** .................................................4

    **II.**   **Issues to Particular to these Appellants** ........................................11

**SUMMARY OF THE ARGUMENT** ...................................................11

**ARGUMENT** ..................................................................................13

    **I.**    **Standard of Review** ...................................................................13

    **II.**   **Appellants Violated Rule 11 By Filing Claims Lacking Any Basis In Fact Or Law** .........................................................................13

        **A.**    **Appellants' Factual Claims Violated Rule 11(b)(3)**............13

            **1.**    **Erroneous Beliefs of Others do not Relieve Appellants of their Rule 11 Duties**...................................13

            **2.**    **Appellants did not justifiably rely on information received from their clients** ...........................................14

            **3.**    **Plaintiffs' Claims Had No Legitimate Factual Support** ........................................................................16

            **4.**    **Appellants' reliance on affidavits consisting of speculation and hearsay was unreasonable**...............20

            **5.**    **Appellants' reliance on the "expert" reports was unreasonable** ...........................................................27

        **B.**    **Appellants' Legal Claims Violated Rule 11(b)(2)** ...............33

1.   *Bush v. Gore* does not Establish that Appellants' Claims are Warranted by Existing Law.....................33

2.   The District Court did not Have Authority to Grant the Requested Relief ......................................39

3.   Appellants Never Advanced a Nonfrivolous Argument for the Extension, Modification or Reversal of Existing Law, or Establishing New Law ..................40

III.  The District Court's Sanctions Order Was Procedurally Proper...42

A.   Appellants' Arguments Rely on Misstatements of the Law42

B.   Appellants Have Attempted to Avoid Accountability by Misrepresenting the Facts of Their Involvement.................44

C.   Appellants Violated 28 U.S.C. § 1927.....................................46

D.   The District Court had Inherent Authority to Sanction Appellants .......................................................47

E.   The District Court's Disciplinary Referrals were Proper ..49

F.   Remand is Unnecessary ...........................................51

G.   The District Court Properly Sanctioned Appellants Jointly and Severally ....................................................52

H.   The City Complied with the Rule 11 Safe Harbor Rule .....55

I.   The District Court Properly Awarded the City its Reasonable Attorney Fees ........................................56

IV.  The District Court Did Not Violate Appellants' First Amendment Rights ........................................................57

CONCLUSION ...............................................................62

ADDENDUM ................................................................65

iii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albright v. Upjohn*, 788 F.2d 1217 (6th Cir. 1986) ...................................................14

*Bailey v. Papa John's USA, Inc*., 236 F. App'x 200 (6th Cir. 2007) .....................38

*Barner v. Pilkington N. Am., Inc*., 399 F.3d 745 (6th Cir. 2005) ...........................53

*Big Rapids Mall Associates*, 98 F.3d 926 (6th Cir. 1996) .......................................14

*Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731 (1983) ..................................57

*Bodenhamer Bldg. Corp. v. Architectural Rsch. Corp.*,
    989 F.2d 213 (6th Cir. 1993) ................................................................54

*Bowyer v. Ducey*, 506 F. Supp. 3d 699 (D. Ariz. 2020) ................................... 33, 36

*Brubaker v. City of Richmond*, 943 F.2d 1363 (4th Cir. 1991) ...............................27

*Bush v. Gore*, 531 U.S. 98 (2000)....................................................................... *passim*

*Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020)....................................................36

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)......................................................48

*Christianburg Garment Co. v. Equal Emp't Opportunity Comm'n*,
    434 U.S. 412 (1978)..............................................................................24

*Cicero v. Borg-Warner Automotive, Inc.*,
    163 F. Supp. 2d 743 (E.D. Mich. 2001) ...............................................25

*Coffey v. Healthtrust, Inc.*, 955 F.2d 1388 (10th Cir. 1992)...................................50

*Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976) ........38

*Converse Const. Co., Inc. v. Converse Steel Fabricators & Erectors, Inc.*,
    181 F.3d 79 (1st Cir. 1998)...................................................................49

*Cooter & Gell v. Hartmax Corp*., 496 U.S. 384 (1990) .........................................12

*Costantino v. Detroit et al.*, Wayne Cnty. Cir. Ct. Case No. 20-014780-AW .........5

*Dearborn Street Bldg. Associates, LLC v. Huntington Nat. Bank*,
    411 F. App'x 847 (6th Cir. 2011) ........................................................38

*Detroit Unity Fund v. Whitmer*, 819 F. App'x 421 (6th Cir. 2020) .......................37

*Donald J. Trump for President Inc. v. Benson*,
    Mich. Ct. Claims Case No. 20-000225-MZ ........................................5

*Eclipse Res.-Ohio, LLC. v. Madzia*,
    No. 2:15-CV-00177, 2017 WL 247732 (S.D. Ohio Jan. 20, 2017)....................21

*Ex parte Young*, 209 U.S. 123 (1908).......................................................36

*Feehan v. Wisconsin Elec. Comm'n*, 506 F. Supp. 3d 596 (E.D. Wis. 2020) .........36

*Feehan v. Wisconsin Elections Comm'n*,
    506 F. Supp. 3d 596 (E.D. Wisc. 2020)................................................33

*Fuller v. Donahoo*, 33 F.3d 1378 (5th Cir. 1994)..........................................57

*General Motors Corp., Inc.*, 908 F.2d 675 (10th Cir. 1990) ..................................15

*Gill v. Whitford*, 138 S. Ct. 1916 (2018)....................................................35

*Gohmert v. Pence*, 510 F. Supp. 3d 435 (E.D. Tex. 2021) ......................................36

*Goldman v. Barrett*, 825 F. App'x 35 (6th Cir. 2020)..................................... 23, 24

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017)................... 47, 48

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................13

*In re Corrinent*, 645 F.3d 1141 (9th Cir. 2011).........................................50

*In re Kelly*, 808 F.2d 549 (7th Cir. 1986) ..................................................57

*In re Leone*, 50 F.3d 15 (9th Cir. 1995)......................................................58

*In re Primus*, 436 U.S. 412 (1978)...........................................................59

*Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*,
    875 F.2d 1224 (6th Cir. 1989) ..................................................... 32, 43

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015)......................................23

*Katz v. Household Int'l, Inc.*, 36 F.3d 670 (7th Cir. 1994)......................................54

*King v. Fleming*, 899 F.3d 1140 (10th Cir. 2018) ..................................................58

*Kleinmark v. St. Catherine's Care Ctr.*, 585 F. Supp. 2d 961 (N.D. Ohio 2008) ...25

*Lance v. Coffman*, 549 U.S. 437 (2007) ..................................................................35

*Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678 (8th Cir. 1997) ...................49

*Legal Servs. Corp. v. Velaquez*, 532 U.S. 533 (2001) ............................................60

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
      572 U.S. 118 (2014)..........................................................................................38

*McNeill v. Wayne Cty.*,
      No. 05-72885, 2005 WL 1981292 (E.D. Mich. Aug. 10, 2005) .......................25

*NAACP v. Button*, 371 U.S. 415 (1963)...................................................................59

*National Institute of Family and Life Advocates v. Becerra*,
      138 S. Ct. 2361 (2018).......................................................................................58

*Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686 (6th Cir. 2016)............13

*Nieves v. City of Cleveland*, 153 F. App'x 349 (6th Cir. 2005) ....................... 32, 55

*NPF Franchising, LLC v. SY Dawgs*,
      No. 21-3516, 2022 WL 2137145 (6th Cir. 2022)..............................................52

*O'Rourke v. Dominion Voting Sys., Inc.*,
      552 F. Supp. 3d 1168 (D. Colo. 2021)...............................................................17

*Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989) ...............................42

*Riddle v. Egensperger*, 266 F.3d 542 (6th Cir. 2011)............................................60

*Smith v. Detroit Federation of Teachers Local 231 AFT, AFL-CIO*,
      829 F.2d 1370 (6th Cir. 1987) ...........................................................................49

*Stoddard v. City Elec. Comm'n of the City of Detroit*,
      Wayne Ctny. Cir. Ct. Case No. 20-014604-CZ....................................................5

*United States ex re. Tingley v. PNC Financial Services Group, Inc.*,
    705 F. App'x 342 (6th Cir. 2017) .......................................................21

*United States v. Alvarez*, 567 U.S. 709 (2012) ........................................58

*United States v. Richardson*, 418 U.S. 166 (1974) ..................................36

*United States v. Throckmorton*, 98 U.S. 61 (1878) ......................... 40, 41

*United Transportation Union v. Michigan Bar*, 401 U.S. 576 (1971) ...................60

*Wisconsin Voters Alliance v. Harris*, 28 F.4th 1282 (D.C. Cir. 2022)....................50

**Rules**

E.D. Mich. L.R. 83.22(c)……………………………………………………50

Fed. R. Civ. P. 11……...………….……….....………………………………*passim*

Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment) ......................24

**Statutes**

28 U.S.C. § 1927……………………………………………………………….*passim*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal presents the straightforward issue of whether the District Court abused its discretion in sanctioning Appellants for conduct it found to be "a historic and profound abuse of the judicial process." (Opinion, RE 172, Page ID # 6890). Defendant-Appellee City of Detroit believes this appeal can be decided on the briefs and does not request oral argument. However, if this Court grants Appellants the opportunity to present oral argument, Defendant-Appellee City of Detroit respectfully requests the opportunity to present oral argument in response.

## <u>COUNTERSTATEMENT OF JURISDICTION</u>

Defendant-Appellee City of Detroit concurs in Appellants' Statement of Jurisdiction and does not dispute this Court's jurisdiction over this appeal.

## COUNTERSTATEMENT OF ISSUES

1. Did the District Court abuse its discretion in sanctioning Appellants for failing to conduct a sufficient pre-filing inquiry into the factual bases of their claims and for filing pleadings containing factual assertions without evidentiary support?

    City of Detroit's Answer: No.

2. Did the District Court abuse its discretion in sanctioning Appellants for asserting legal claims that were not warranted by existing law, or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law?

    City of Detroit's Answer: No.

3. Did the District Court abuse its discretion in awarding the City of Detroit its reasonable legal expenses based on Appellants' violation of Fed. R. Civ. P. 11?

    City of Detroit's Answer: No.

4. Did the District Court violate Appellants' First Amendment rights?

    City of Detroit's Answer: No.

5. Did the District Court abuse its discretion in sanctioning Appellants where it determined that Appellants engaged in conduct that warranted sanctions under

Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the District Court's inherent authority?

    City of Detroit's Answer: No.

6. Did the District Court abuse its discretion in sanctioning Appellants where it determined that each of the Appellants were responsible for the violations sanctioned?

    City of Detroit's Answer: No.

7. Did the District Court abuse its discretion by failing to properly apply the procedural safeguards applicable to each sanctions authority?

    City of Detroit's Answer: No.

## <u>STATEMENT OF THE CASE</u> [1]

### I.    Common Procedural History

This appeal arises out of the frivolous pleadings filed by Gregory J. Rohl, Brandon Johnson, Howard Kleinhendler, Sidney Powell, Julia Haller and Scott Hagerstrom (collectively "Appellants")[2] along with their co-counsel (collectively "Plaintiffs' counsel"), purportedly seeking to overturn the result of the 2020 presidential election. Plaintiffs' counsel claimed that the 2020 election result was the product of fraud. But this lawsuit was not a serious attempt at remedying any perceived fraud; it was designed to further a false narrative that this country's democratic institutions cannot be trusted. While the District Court denied any judicial relief, the lawsuit achieved its real objective—it undermined faith in the integrity of the election and encouraged misinformed citizens to interfere with the peaceful transition of power.

---

[1] Defendant-Appellee City of Detroit is responding to four separate appeals that involve overlapping issues. Accordingly, this Statement of the Case section is substantially similar to that filed or to be filed by the City in the three other matters (Case No. 21-1785, Case No. 21-1787 and Case No. 22-1010). All four appeals share a common procedural history. Factors particular to each Appellant will be addressed in Section II of the Statement of the Case.

[2] The City of Detroit acknowledges Fed. R. App. P. 28(d). However, because this Appeal is brought by six of the nine attorneys sanctioned by the District Court, the City believes that "Appellants" is the least confusing designation for this set of Appellants.

Plaintiffs' counsel did not rush to the courthouse following the fraud they claim occurred on November 3, 2020. They waited more than three weeks before filing their initial complaint. (Complaint, RE 1, Page ID # 1-75). While Plaintiffs' counsel bided their time, other lawsuits challenging the outcome of the 2020 election were filed and the specious claims in those cases were rejected.[3] But Plaintiffs' counsel did not use that time to vet their claims.

When Plaintiffs' counsel did file their lawsuit, they had not uncovered new evidence of fraud. Instead, their claims relied on multiple affidavits which had been previously filed, and previously discredited, in the *Costantino* case. (Opinion, RE 172, Page ID # 6951-53). Plaintiffs' counsel then undertook no effort to serve any of the Defendants, and the District Court was required to enter a text-only order on December 1, 2020, directing Plaintiffs' counsel to effect service. (*Id.* at Page ID # 6897). As the District Court noted, Plaintiffs' counsel's failure to timely file or prosecute this action was indicative of their "bad faith and improper purpose in bringing this suit." (*Id.* at Page ID # 6985).

---

[3] The previously-filed lawsuits included: *Donald J. Trump for President Inc. v. Benson*, Mich. Ct. Claims Case No. 20-000225-MZ, motion for preliminary injunction denied Nov. 6, 2020; *Stoddard v. City Elec. Comm'n of the City of Detroit*, Wayne Ctny. Cir. Ct. Case No. 20-014604-CZ, motion for preliminary injunction denied Nov. 6, 2020; and *Costantino v. Detroit et al.*, Wayne Cnty. Cir. Ct. Case No. 20-014780-AW, motion for preliminary injunction denied Nov. 13, 2020. (City's Response to Injunction Motion, RE 39, Page ID # 2816).

Plaintiffs' Complaint named as Defendants Governor Gretchen Whitmer and Secretary of State Jocelyn Benson (the "State Defendants"), along with the Michigan Board of State Canvassers. As the Complaint primarily focused on perceived irregularities in the counting of ballots at the TCF Center in Detroit, an operation directed by the Detroit City Clerk, the City of Detroit (the "City") filed a motion to intervene on November 27, 2020, to ensure that its citizens were not disenfranchised. (City's Motion to Intervene, RE 5, Page ID # 840-857). The District Court granted the City's Motion to Intervene on December 2, 2020. (Order Granting Motions to Intervene, RE 28, Page ID # 2142-2147). Plaintiffs' counsel filed an Amended Complaint and an Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief on November 29, 2020. (Amended Complaint, RE 6, Page ID # 872-957; Injunction Motion, RE 7, Page ID #1832-1849). In their Motion seeking injunctive relief, Plaintiffs' counsel stated that their requested relief "must be granted in advance of December 8, 2020, which is the 'safe harbor' date for states to submit their slates of electors under 3 U.S.C. § 5." (Injunction Motion, RE 7, Page ID # 1846). The City filed its response in opposition to Plaintiff's Motion for injunctive relief on December 2, 2020. (City's Response to Injunction Motion, RE 39, Page ID # 2808-2852).

On December 7, 2020, the District Court entered an order denying Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief.

6

(Opinion Denying Injunction Motion, RE 62, Page ID # 3295-3330). The District Court determined that the Plaintiffs were not entitled to injunctive relief because their claims were barred by Eleventh Amendment immunity, mootness, laches, the abstention doctrine and lack of standing. (*Id.* at Page ID # 3302-24). The District Court found that "this lawsuit seems to be less about achieving the relief Plaintiffs seek—as much of that relief is beyond the power of this Court—and more about the impact of their allegations on People's faith in the democratic process and their trust in our government." (*Id.* at Page ID # 3329-3330).

The following day, December 8, 2020, Plaintiffs' counsel inexplicably filed a Notice of Appeal to the Federal Circuit Court of Appeals.[4] On the same day, Plaintiffs filed a Notice of Appeal through the ECF system to the Sixth Circuit Court of Appeals but failed to move to expedite their appeal. (Notice of Appeal, RE 64, Page ID # 3332). Plaintiffs' counsel then filed a petition for certiorari in the Supreme Court on December 11, 2020. *See* U.S. Supreme Court No. 20-815.[5] In their petition, Plaintiffs' counsel stated that "[o]nce the electoral votes are cast [on December 14, 2020] subsequent relief would be pointless." (Opinion, RE 172, Page ID # 6899).

---

[4] The Notice of Appeal filed in the Eastern District of Michigan failed to "name the court to which the appeal [was] taken," as required by Fed. R. App. P. 3(c)(1)(C). Plaintiffs' counsel then (through the ECF system) improperly designated the appeal as an appeal to the Federal Circuit Court of Appeals.

[5] Docket sheet and filings available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html.

7

However, Plaintiffs' counsel did not dismiss their appeal after that date passed. Instead, they moved to expedite their petition for certiorari on December 18, 2020.

In the District Court, the City served its Rule 11 notice letter and motion on Appellants and her co-counsel on December 15, 2020. (Rule 11 Notice, RE 161-3, Page ID # 6058-67). On December 22, 2020, the City, the State Defendants, and the DNC and MDP filed motions to dismiss. (State Defendants' Motion to Dismiss, RE 70, Page ID # 3350-3428; DNC and MDP Motion to Dismiss, RE 72, Page ID # 3433-3465; City's Motion to Dismiss, RE 73, Page ID # 3544-3580). On the same date, intervenor Robert Davis ("Davis") filed a motion seeking sanctions against Plaintiffs' counsel under 28 U.S.C. § 1927 and the Court's inherent authority. (Davis Motion for Sanctions, RE 69, Page ID # 3338-3349). On January 3, 2021, two days before Plaintiffs' response to Davis's sanctions motion was due, Plaintiffs' counsel filed a motion requesting an extension of time to respond to Davis's sanctions motion until January 19, 2021, which was granted. (Plaintiffs' Motion to Extend Time as to Davis, RE 74, Page ID # 3597-3599; Order Granting Motion to Extend Time, RE 76, Page ID # 3610-3611). On January 5, 2021, immediately after the expiration of the safe harbor period, the City filed its motion for Rule 11 sanctions against Plaintiffs' counsel. (City's Rule 11 Motion, RE 78, Page ID # 3616-3671).

On January 6, 2021, Congress convened in a joint session to count the electoral votes. Despite the infamous events of that day, Congress counted

Michigan's electoral votes and certified Joseph Biden as the winner of the 2020 election on the morning of January 7, 2021. In the District Court, Plaintiffs filed a motion to extend time to answer the three motions to dismiss on January 12, 2021. (Plaintiffs' Motion to Extend Time as to Motions to Dismiss, RE 82, 3857-3864). The Court granted this motion in a text-only order, extending the time for Plaintiffs to answer the motions to dismiss until January 14, 2021.

On January 14, 2021, the last day on which Plaintiffs could have responded to the motions to dismiss, Plaintiffs' counsel filed notices of voluntary dismissal under Rule 41 as to all Defendants except Davis.[6] (Notices of Dismissal, RE 86-91, Page ID # 4030-4047). On January 28, 2021, the State Defendants moved for sanctions against certain Plaintiffs' counsel under 28 U.S.C. § 1927. (State Defendants' Sanction Motion, RE 105, Page ID # 4334-4378).

After the sanctions motions were fully briefed, the District Court held a hearing on July 12, 2021, during which Appellants and co-counsel had the opportunity to respond to the District Court's questions. (Notice of Hearing, RE 147, Page ID #5262-5263). Following the hearing, the District Court permitted the parties to file supplemental briefing. (Order for Supplemental Briefing, RE 150, Page ID #

---

[6] Davis had filed an answer to Plaintiffs' amended complaint. (Davis Answer, RE 38, Page ID # 2751-2807). Plaintiffs subsequently moved for voluntary dismissal as to Davis. (Motion for Voluntary Dismissal, RE 92, Page ID # 4048-4053). The District Court granted Plaintiffs' motion for voluntary dismissal as to Davis on July 9, 2021. (Pre-Hearing Order, RE 149, Page ID # 5265-5268).

9

5269). The District Court issued an Opinion and Order granting the motions for sanctions filed by the City and the State Defendants and granting in part and denying in part the sanctions motion filed by Davis. (Opinion, RE 172, Page ID # 6890-6999). The District Court determined that Plaintiffs' counsel were responsible for "a historic and profound abuse of the judicial process" and ordered that Plaintiffs' counsel jointly and severally pay the fees and costs incurred by the City and the State Defendants and that each attorney attend 12 hours of non-partisan continuing legal education on pleading standards and election law. (*Id.* at Page ID # 6890, 6998-6899). The District Court also ordered the clerk of the court to transmit a copy of the order to the Michigan Attorney Grievance Commission and the appropriate disciplinary authority for each jurisdiction in which Plaintiffs' counsel are admitted, thereby "referring the matter for investigation and possible suspension or disbarment." (*Id.* at Page ID # 6998-6899).

On December 2, 2021, after the completion of briefing on the issue of reasonable costs and fees, the District Court entered an order awarding the City fees in the amount of $153,285.62 and the State Defendants fees in the amount of $21,964.75. (Order Regarding Monetary Sanctions, RE 179, Page ID # 7142-7168). The District Court entered judgment on the same day. (Judgment, RE 180, Page ID # 7169-7170).

10

**II.    Issues to Particular to these Appellants**

On December 3, 2021, Appellants filed their Notice of Appeal. (Notice of Appeal as to Sanctions, RE 182, Page ID # 7174-7176).

## SUMMARY OF THE ARGUMENT

This case is about nine attorneys who filed an enormously-consequential lawsuit with virtually no diligent assessment of the facts and law. Appellants were not sanctioned for what they call "the offense of representing Michigan Republican Presidential Electors;" they were sanctioned because they filed, in bad faith and for an improper purpose, a lawsuit that had no basis in law or fact. Corrected Brief of Interested Parties-Appellants Gregory J. Rohl, Brandon Johnson, Howard Kleinhendler, Sidney Powell, Julia Haller and Scott Hagerstrom ("Appellants' Brief"), RE 27, Page ID # 18 (Case No. 21-1786). The District Court applied the correct law and afforded Appellants all appropriate procedural protections. The District Court properly sanctioned Appellants, when it found that no reasonable attorney would file a lawsuit making extraordinary allegations about election fraud based on affidavits consisting of speculation and hearsay, without first determining that the affidavits provided legitimate evidentiary support for their legal claims.

There was no legitimate legal basis for these claims. Appellants are still unable to cite any authority that would empower the District Court to grant their requested relief of decertifying the election and declaring candidate Trump the

11

winner of the election in Michigan. *Bush v. Gore*, 531 U.S. 98 (2000) does not support the proposition that allegations of election misconduct are sufficient to undo an election.

As noted by the District Court, Appellants' interest in advancing a false narrative of a stolen election explained why they waited so long to file a lawsuit based on speculation and then failed to timely serve the Defendants. The District Court's sanctions did not violate the First Amendment rights of these attorneys; there is no First Amendment right to file frivolous lawsuits.

In their appeal of Rule 11 sanctions, these Attorneys continue to rely heavily on misstatements of the law, citing case law that pre-dates the 1993 amendments to Rule 11.  Appellants' reliance on pre-1993 case law is not an innocent mistake; their references to outdated rules were called out in the City's Reply Brief in Support of its Rule 11 Motion and in the District Court's Opinion.[7] (City's Reply Brief in Support of Rule 11 Motion, RE 103, Page ID # 4184-4186; Opinion, RE 172, Page ID # 6915).

---

[7] The City anticipates filing a separate motion asking this Court to sanction Appellants under Fed. R. App. P. 38 and/or 28 U.S.C. § 1927.

## ARGUMENT

### I.    Standard of Review

This Court reviews the imposition of sanctions with an abuse of discretion standard. *Cooter & Gell v. Hartmax Corp*., 496 U.S. 384, 405 (1990); *Jones v. Ill. Cent. R. Co*., 617 F.3d 843, 850 (6th Cir. 2010). A district court abuses its discretion if it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell*, 496 U.S. at 405. When reviewing an award of costs and fees, "[s]ubstantial deference is 'appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

### II.    Appellants Violated Rule 11 By Filing Claims Lacking Any Basis In Fact Or Law

#### A.    Appellants' Factual Claims Violated Rule 11(b)(3)

##### 1.    Erroneous Beliefs of Others do not Relieve Appellants of their Rule 11 Duties

Appellants are not shielded from Rule 11 simply because others believe the 2020 election result was affected by fraud. Appellants claim they were sanctioned for "advancing what is a mainstream Republican position on the 2020 Presidential Election." Appellants' Brief, RE 27, Page ID # 73 n. 61 (Case No. 21-1786).

13

Appellants cannot rely on the subjective beliefs of others, no matter how widespread, as a defense to their own failure to objectively evaluate the false allegations in their Complaints and the misrepresentations in the attached affidavits.[8] Rule 11 imposes an affirmative duty to conduct a reasonable pre-filing inquiry into factual claims asserted in court. *Albright v. Upjohn*, 788 F.2d 1217, 1221 (6th Cir. 1986). As the City argued below, many Americans believe that Santa Claus, the Easter Bunny and the Tooth Fairy are real, but that belief does not protect an attorney who files a frivolous lawsuit based upon affidavits purportedly signed by one of them. Rule 11(b)(3) makes no exception for an attorney who blindly relies on the ignorance of others, the filings of other attorneys, or the unsupported claims of partisans.

### 2. Appellants did not justifiably rely on information received from their clients

Appellants were not sanctioned for relying on information received from their clients; they were sanctioned for uncritically accepting that information as true and making factual representations to the court which lacked any evidentiary support. (Opinion, RE 172, Page ID # 6954-6955). Rule 11 required an appropriate prefiling inquiry into the legitimacy of these affidavits. Rule 11(b)(3).

---

[8] Sidney Powell is openly contemptuous of all courts that objectively evaluated similar election fraud claims. According to Ms. Powell, cases alleging that the 2020 election outcome was the product of fraud were universally rejected "because the corruption goes deep and wide." Quote from video interview of Sidney Powell, promoted on her now-banned twitter account at https://twitter.com/AKA_RealDirty/status/1338401580299681793.

*In re Big Rapids Mall Associates*, 98 F.3d 926 (6th Cir. 1996) does not support the proposition that attorneys are entitled to blindly rely on their clients' representations. First, this Court did not hold in *Big Rapids* that attorneys are relieved of their Rule 11 duties simply because they obtain information from their clients. *Id.* at 930 (noting that in determining whether attorneys violated Rule 11 a district court should consider "[w]hat independent investigation, if any, did the attorneys undertake prior to filing? What did their clients tell them? Were they justified in believing what their clients told them?"). Second, the trial court in *Big Rapids* sanctioned attorneys after it determined that their client's principals were not credible. *Id.* at 931. On appeal, this Court held that the trial court's determination that the principals were not credible justified sanctions only against the principals; sanctions against their attorneys required "specific findings that the party being sanctioned was aware of the wrongdoing." *Id.* at 932 (quoting *White v. General Motors Corp., Inc.*, 908 F.2d 675, 686 (10th Cir. 1990)). Here, the District Court did make detailed findings regarding the culpability of the sanctioned attorneys. Third, the District Court here did not sanction Appellants for taking their clients at their word; they were sanctioned for making factual assertions based upon third-party affidavits which they accepted without diligently determining whether the affidavits actually (or even plausibly) provided evidentiary support for the factual assertions in their pleadings. (Opinion, RE 172, Page ID # 6954-6955).

15

### 3.    Plaintiffs' Claims Had No Legitimate Factual Support

This Brief will not address every one of the false claims asserted by Plaintiffs' counsel. However, the first nine pages of the Amended Complaint offer a good sampling of their misrepresentations:

- Plaintiffs and their counsel allege that their case *"brings to light a massive election fraud…[a] scheme and artifice to defraud…for the purpose of illegally and fraudulently manipulating the vote count to elect Joe Biden as President of the United States."* (Amended Complaint, RE 6, Page ID # 873 at ¶¶ 1-2). In fact, their pleadings presented *no* legitimate evidence of election fraud, let alone "massive" election fraud. Appellants presented *no* evidence that a single vote was manipulated.

- Plaintiffs and their counsel assert that the Amended Complaint *"details an especially egregious range of conduct in Wayne County and the City of Detroit"* and that *"[e]lection workers [in Detroit] illegally forged, added, removed or otherwise altered information on ballots, the Qualified Voter File (QVF) and Other Voting Records."* (*Id.* at Page ID # 873, 878-879 at ¶¶ 2, 14). The Amended Complaint detailed no such thing. Every single allegation related to Wayne County and Detroit has either been repeatedly disproven, been shown to be mistaken or was based on fantasy. Even in the unlikely event that the initial declarants were innocently mistaken about the process, by the time Appellants adopted them, the

allegations had been discredited. On November 11, 2020, two weeks before the initial Complaint was filed, Christopher Thomas, a senior advisor to the Detroit City Clerk and the former Director of Elections for the State of Michigan, submitted an affidavit categorically disputing these points in the *Costantino* case; and on November 13, 2020, the judge in that case rejected those false claims with a detailed refutation of the claims. Nevertheless, Appellants did not inquire into whether the allegations were actually true; instead, they copied the affidavits filed in *Costantino* and regurgitated that case's debunked claims.[9]

- The Amended Complaint alleges that *"Dominion systems derive from the software designed by Smartmatic Corporation,"* that *"Smartmatic and Dominion were founded by foreign oligarchs and dictators"* as part of *"a criminal conspiracy to manipulate Venezuelan elections in favor of dictator Hugo Chavez."* (*Id.* at Page ID # 874-875 at ¶¶ 4-6). There is simply no evidentiary basis for these wild claims. The fact that trolls from sundry corners of the internet and other

---

[9] In a recent opinion regarding an election challenge case, the United States District Court for the District of Colorado found that "[g]iven the volatile political atmosphere and highly disputed contentions surrounding the election both before and after January 6, 2021, circumstances mandated that Plaintiffs' counsel perform heightened due diligence, research, and investigation before repeating in publicly filed documents the inflammatory, indisputably damaging, and potentially violence-provoking assertions about the election having been rigged or stolen." *O'Rourke v. Dominion Voting Sys., Inc.*, 552 F. Supp. 3d 1168, 1198 (D. Colo. 2021). Here, Appellants did not perform heightened due diligence; they performed no due diligence at all.

fraudsters make the claim does not protect Appellants from their failure to independently confirm the representations they make to the court.

- The Amended Complaint alleges that there *"is incontrovertible physical evidence that the standards of physical security of the voting machines and the software were breached, and machines were connected to the internet in violation of professional standards, which violates federal election law on the preservation of evidence."* (*Id.* at Page ID # 876 at ¶ 9). There was never any evidence that the physical security of the machines and software were breached, and, indeed, the flawed and fabricated reports from the various "experts" do not actually make that claim, instead they (falsely) assert that the machines and software were susceptible to breach.

- The Amended Complaint alleges that *"Detroit election workers added 'tens of thousands' of new ballots and/or new voters to QVF in two separate batches on November 4, 2020, all or nearly all of which were votes for Joe Biden."* (*Id.* at Page ID # 878 at ¶ 14a). There was never any legitimate support for that claim. And, by the time these Appellants attached the witness statements and allegations made in prior lawsuits, these allegations had been thoroughly discredited, placing Appellants on notice that further inquiry was required.

- Plaintiffs and their counsel allege that Detroit election workers counted *"ineligible ballots – and in many cases – multiple times;"* and counted ballots

*"without signatures, or without attempting to match signatures and ballots without postmarks, pursuant to direct instructions from Defendants."* (*Id.* at Page ID # 879 at ¶ 15). As with all the other allegations about Detroit and Wayne County, these claims were discredited prior to filing. There is no evidence that "ineligible" ballots were counted, when, in fact, the City demonstrably followed election law and disallowed the tabulation of any ballot received after 8:00 p.m. on Election Day. Similarly, there was no evidence that signatures were not verified—a claim based entirely on statements that signatures were not being verified *at the TCF Center*. In fact, verification occurred *before* the ballots were delivered to the TCF Center. (Affidavit of Christopher Thomas, RE 39-5, Page ID # 2877 at ¶ 19). Appellants cannot hide behind the ignorance of challengers at the TCF Center or other people who did not understand the process; they had a duty to investigate the validity of their claims before asserting them in federal court.

Plaintiffs' counsel apparently knew that they could not succeed on the merits, so when the extended deadline came to respond to the Motions to Dismiss, they filed notices of voluntary dismissal. But Plaintiffs' counsel have never corrected or withdrawn any of their lies. Instead, even now, they continue to use the federal courts to broadcast their false claims, proclaiming in their Brief on Appeal that "[m]illions of Americans believe the central contentions of the complaint to be true, and perhaps they are." Appellants' Brief, RE 27, Page ID # 22 (Case No. 21-1786).

19

### 4. Appellants' reliance on affidavits consisting of speculation and hearsay was unreasonable

Appellants argue that any analysis of the reasonableness of their actions requires consideration of "the draconian time-limits of the certification process." Appellants' Brief, RE 27, Page ID # 28 (Case No. 21-1786). But they made no effort to expeditiously bring this case to the courthouse following the 2020 election. Instead, Appellants waited 23 days after the election to file suit, even though they were on notice of their alleged concerns well before Election Day. (Opinion, RE 172, Page ID # 6985). As noted by the District Court, this inexplicable delay "show[ed] that counsel planned to challenge the legitimacy of the election if and only if Former President Trump lost." (*Id.*).

Nor can Appellants claim that they delayed the filing of the lawsuit because they were collecting and scrutinizing the affidavits at issue, as the record indicates that most of the affidavits attached to the Complaint were recycled from previously-filed (and previously-rejected) cases challenging the election. (*Id.* at Page ID # 6968-6972). Appellants have repeatedly disclaimed any duty to conduct any pre-filing inquiry into the affidavits they submitted in support of their factual claims because "other lawyers saw it" and "they believed it to be appropriate for submission to the Court in that circumstance." (*Id.* at Page ID # 6969) (brackets omitted). Appellants had ample time to scrutinize the evidentiary basis of their factual claims. Apparently,

20

they chose not to do so because it was so obvious that the affidavits did not plausibly support the factual claims they sought to assert.

Contrary to Appellants' interpretation of the District Court's Opinion, the Court did not find that rejection of similar claims by other courts rendered their case frivolous *per se*; it held that the rejection of such claims, based upon identical affidavits, put Appellants "on notice that there was a duty to inquire further." (*Id.* at Page ID # 6952); *see also United States ex re. Tingley v. PNC Financial Services Group, Inc*., 705 F. App'x 342, 346-47 (6th Cir. 2017) (finding that counsel's participation in earlier suits where similar claims were rejected "should have placed counsel *on notice of the potential frivolity* of another suit based on [similar claims]") (emphasis added).

Appellants suggest that the District Court sanctioned them for using previously-filed affidavits and rely upon *Eclipse Res.-Ohio, LLC. v. Madzia*, No. 2:15-CV-00177, 2017 WL 247732 (S.D. Ohio Jan. 20, 2017) for their claim that there is nothing improper about using affidavits filed by other attorneys in other cases. But the issue in *Madzia* was whether the Ohio Department of Natural Resources properly denied a drilling permit based on the filing of a permit application with a previously-used affidavit, not whether lawyers are relieved of their Rule 11 duties when they copy affidavits filed in other cases. *Id*. at *6-7. The District Court did not sanction Appellants for filing affidavits used in other cases; it

21

sanctioned Appellants because they failed to diligently determine whether the affidavits supported their legal claims.

The affidavit of Melissa Carone, a service contractor with no election experience, illustrates Appellants' carelessness. Appellants cited the Carone affidavit as "the most probative evidence" in support of their claim that "Election Workers Fraudulently Added 'Tens of Thousands' of New Ballots and New Voters in the Early Morning and Evening of November 4." (Amended Complaint, RE 6, Page ID # 899-900 at ¶ 84). However, the cited paragraph of the Carone affidavit merely states that:

> There was two vans that pulled into the garage of the counting room, one on day shift and one on night shift. These vans were apparently bringing food into the building because they only had enough food for not even 1/3 of the workers. I never saw any food coming out of these vans, coincidently it was announced on the news that Michigan had discovered over 100,000 more ballots- not even two hours after the last van left.

(Carone Affidavit, RE 6-5, Page ID # 1306 at ¶ 8). Accordingly, Ms. Carone witnessed the arrival of two vans, believed that they were bringing in food for election workers, and then, based upon something "announced on the news," apparently concluded these vans brought in "over 100,000 more ballots" because she "never saw any food coming out of the vans." (*Id.*). At the sanctions hearing, Appellants admitted that they never inquired into whether Ms. Carone's speculation was probative of anything. (Transcript. RE 157 Page ID # 5426-5428). Instead,

Appellants alleged in their Amended Complaint that "Ms. Carone witnessed this illegal vote dump." (Amended Complaint, RE 6, Page ID # 899-900 at ¶ 84). As the District Court noted, the fact that Appellants did not inquire into whether Ms. Carone's affidavit disclosed any personal knowledge of unlawful activity and chose instead to allege that she witnessed an "illegal vote dump" was "a quintessential example of guesswork laced with bad faith." (Opinion, RE 172, Page ID # 6964 n. 58).

Appellants also seek some type of safe harbor because some allegations were made on information and belief. But only three of the Amended Complaint's 233 paragraphs were alleged on information and belief, and none of those allegations were central to Appellants' claim that purported violations of the Michigan Election Code amounted to Constitutional wrongs. (*Id.* at Page ID # 6911 n. 11). Regardless, asserting facts "on information and belief" does not relieve Appellants of their obligation "to conduct a reasonable investigation and uncover evidentiary support for fact allegations *before* filing the complaint." *Johnson v. Moseley*, 790 F.3d 649, 656 (6th Cir. 2015) (citing Rule 11(b)(3)) (emphasis in original); *see also Goldman v. Barrett*, 825 F. App'x 35, 38-39 (6th Cir. 2020) ("Tolerance of factual contentions in initial pleadings by plaintiffs or defendants when specifically identified on information an belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances; it

23

is not a license to join parties, make claims, or present defenses without any factual basis or justification") (quoting Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment)).

*Christianburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412 (1978) does not support Appellants' claim that they were entitled to discovery to substantiate their claims. *Christianburg Garment Co.*, decided long before the strict pleading requirements of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 555 U.S. 1030 (2008), addressed entitlement to prevailing party attorney fees under Title VII of the Civil Rights Act, not whether an attorney can rely upon future discovery to shore up claims that lacked a sufficient evidentiary basis at the time of filing. *Id*. at 414. The District Court correctly noted that in this Circuit a party "may not rely on discovery to manufacture a claim that lacks factual support in the first instance." (Opinion, RE 172, Page ID # 6965) (citing *Goldman*, 825 F. App'x at 38).

The District Court did not sanction Appellants because it found their affidavits "unpersuasive." Appellants' Brief, RE 27, Page ID # 36 (Case No. 21-1786). It sanctioned them because their affidavits failed to support their factual allegations. (Opinion, RE 172, Page ID # 6957-6959). Citing the affidavit of Jessy Jacob, Appellants alleged in their Amended Complaint that election officials "permitted a person to vote in person and also send in his/her absentee ballot, and thereby vote at

24

least twice." (Amended Complaint, RE 6, Page ID # 903 at ¶ 93). But, at most, Jacob

witnessed voters who applied for absentee ballots voting in person without returning

their ballots or signing affidavits that they had lost their ballots. (Opinion, RE 172,

Page ID # 6957-6959). An affiant's speculation that double voting might have

occurred does not plausibly support an inference that double voting actually did

occur. (*Id.* at Page ID # 6957-6959).

Likewise, the affidavit of Articia Bomer did not support Appellants'

allegation that "Election Workers Changed Votes for Trump and Other Republican

Candidates." (Amended Complaint, RE 6, Page ID # 902). Appellants claim that

sanctioning them for relying on Ms. Bomer's subjective belief that "some…workers

were changing votes that had been cast for Donald Trump and other Republican

candidates" is like sanctioning a plaintiff on the basis of their subjective belief that

they had been discriminated against. This argument misses the point.[10] The District

---

[10] Appellants state that courts in this Circuit "routinely refuse sanctions on such facts" but each of the cited cases is distinguishable. Appellants' Brief, RE 27, Page ID # 42 n. 19 (Case No. 21-1786). In *Cicero v. Borg-Warner Automotive, Inc.*, 163 F. Supp. 2d 743 (E.D. Mich. 2001) the district court did not sanction counsel for the plaintiff in an employment discrimination suit where there was "no evidence before the court indicating that [counsel] were acting unreasonably at the time [of filing]." *Id.* at 746. In *Kleinmark v. St. Catherine's Care Ctr.*, 585 F. Supp. 2d 961 (N.D. Ohio 2008) the district court declined to impose sanctions under 28 U.S.C. § 1927 because counsel's "conduct did not fall short of the obligations he owed to the court." *Id.* at 965. And *McNeill v. Wayne Cty.*, No. 05-72885, 2005 WL 1981292 (E.D. Mich. Aug. 10, 2005), did not involve sanctions at all, but rather whether a *pro se* litigant had adequately alleged an irreparable injury when seeking a preliminary injunction. *Id.* at *1. There the district court noted that it was unwilling to engage in

Court did not sanction Appellants because it found Ms. Bomer's stated belief incredible; it sanctioned Appellants because Ms. Bomer's affidavit had evidentiary value only if she actually saw votes being changed, and her affidavit indicates she did not. (Opinion, RE 172, Page ID # 6967). Appellants submitted the Bomer affidavit as the only evidentiary support for their explosive allegation that election workers were switching ballots from one presidential candidate to another, and they did so without asking Ms. Bomer if she actually saw votes being switched. (*Id.*). The court determined that Appellants' failure to conduct any pre-filing inquiry into what Ms. Bomer actually saw, together with their decision to label her affidavit "eyewitness testimony of election workers manually changing votes," demonstrated that Appellants fell short of their duties under Rule 11. (*Id.*).

Appellants fault the District Court for focusing on the lack of evidentiary support for certain claims, while ignoring the support they claim to provide for other "objectionable procedures." Appellants' Brief, RE 27, Page ID # 46 (Case No. 21-1786). But Appellants never explain how these perceived "irregularities," most of which were reported by affiants unfamiliar with Michigan's election laws and procedures, supported their legal claims. The District Court correctly determined that Appellants' attempt to support their constitutional claims with minor perceived

---

a fact-intensive analysis of whether the plaintiff at risk of irreparable harm where remedial relief was available for any injury sustained, a point that has no bearing on this case. *Id*.

irregularities, which did not amount to violations of Michigan law, did not fulfill their duties under Rule 11, particularly where they were on notice that similar claims had been rejected in cases like *Costantino*. (Opinion, RE 172, Page ID # 6948-6950).

*Brubaker v. City of Richmond*, 943 F.2d 1363 (4th Cir. 1991) does not support Appellants' argument that they cannot be sanctioned under Rule 11 simply because there was some evidence for a few of their minor factual allegations. The issue in *Brubaker* was whether a claim that an individual was involved in a conspiracy against the plaintiffs was supported by a sufficient evidentiary basis. *Id.* at 1377. The Fourth Circuit determined that an allegation did not violate Rule 11 where it had *some* evidentiary basis, even though there were many facts which did not support the allegation. *Id*. Here, the District Court determined that there was *no* evidentiary basis for critical factual allegations made in the complaint. (Opinion, RE 172, Page ID # 6957-6975). Appellants argue that Rule 11 is intended "to prevent the filing of frivolous claims," and that each of their legal claims had some degree of factual support. Appellants' Brief, RE 27, Page ID # 60-61(Case No. 21-1786). But, Rule 11(b)(3) requires that "factual contentions have evidentiary support."

### 5. Appellants' reliance on the "expert" reports was unreasonable

Appellants claim that they were justified in relying on the affidavit of Russell Ramsland, which was the sole basis of their allegation that "Dominion alone is responsible for the injection, or fabrication, of 289,886 illegal votes in Michigan,

that must be disregarded." (Amended Complaint, RE 6, Page ID # 877 at ¶ 11).

Appellants admit that "some of the figures Ramsland relied on were wrong," but claim that their reliance on the Ramsland affidavit was proper because they submitted an amended report which corrected some of the errors in the original. Appellants' Brief, RE 27, Page ID # 53 (Case No. 21-1786). Appellants also claim that they were entitled to rely on Ramsland's figures because they believed the official numbers "were generated by a corrupt process." Appellants' Brief, RE 27, Page ID # 55 (Case No. 21-1786). These objections miss the point. The District Court sanctioned Appellants because it determined that no reasonable attorney would rely on Ramsland's report to allege that hundreds of thousands of illegal votes were fabricated in Michigan, without inquiry into whether the report plausibly supported that conclusion. (Opinion, RE 172, Page ID # 6974-6975).

Ramsland's report also demonstrates Appellants refusal to take any responsibility for their lack of diligence in vetting their factual claims.[11] Appellants

---

[11] Also emblematic of Appellants' contempt for the facts is another "expert" report that was filed with the Complaint but removed from the Amended Complaint. Paragraph 18 of the Complaint introduced "Expert Navid Kashavarez-Nia" and alleged that "[h]e concludes that hundreds of thousands of votes that were cast for President Trump in the 2020 general election were transferred to former Vice-President Biden." (Complaint, RE 1, Page ID # 9). This "expert" relied on a finding that in "Edison County, MI, Vice President Biden received more than 100% of the votes…" (Complaint, RE 1-19, Page ID # 828 at ¶ h). There is no Edison County in Michigan (or anywhere in the United States). This fabrication was only removed after it was discovered and widely reported publicly.

alleged, based on Ramsland's report, that "[t]he first red flag is the Antrim County, Michigan 'glitch' that switched 6,000 Trump ballots to Biden, *and that was only discoverable through a manual hand recount*." (Amended Complaint, RE 6, Page ID # 920 at ¶ 138) (emphasis added). But there had been no hand recount in Antrim County at the time the Amended Complaint was filed. When the District Court asked Appellants at the hearing why they had failed to correct their allegation that the Antrim County error was discovered through a "hand recount," Appellants doubled down on their claim. Ms. Haller stated that "[i]t was…the county secretary who did that hand recount, and that's reported on at that time. So there was what they called a hand recount." (Transcript, RE 157, Page ID # 5398). And Mr. Kleinhendler stated "[m]y understanding was that someone recounted it by hand," and claimed that Ramsland's report "has a photograph of the hand recount that was done in Antrim County." (*Id.* at Page ID # 5399, 5407). But the photograph depicted the results of a machine re-tabulation of the ballots and the report clearly stated that it depicted tabulator results. (City's Supplemental Brief in Support of Sanctions, RE 164, Page ID # 6141). Everyone with any understanding of Michigan election procedures would know that no manual recount could have occurred so soon. And, the slightest critical analysis would have revealed that the photograph did not depict a hand recount, but Appellants latched onto the fact that the description of the photograph included the word "recount" and chose to end their inquiry there.

Despite filing a lawsuit alleging that Michigan officials failed to follow the law, Plaintiffs' counsel demonstrated stunning ignorance of Michigan election law. Plaintiffs' counsel attached a "Michigan 2020 Voting Analysis Report" to their Amended Complaint. (Amended Complaint, RE 6, Page ID # 1771-1801). The authors of this report concluded that candidate Biden's performance in certain Michigan counties was anomalous, because it supposedly demonstrated "excessive votes in favor of Biden often in excess of new Democrat registrations." (*Id.* at Page ID # 1778). Apparently, neither Plaintiffs' counsel nor their clients were aware that Michigan does not have party registration.

Appellants attempted to mislead the District Court by submitting the affidavit of Joshua Merritt, an individual whose identity they attempted to redact and whom they represented to be a "former electronic intelligence analyst with 305th Military Intelligence" and a "US Military Intelligence Expert."[12] Appellants' Brief, RE 27, Page ID # 57 (Case No. 21-1786). Mr. Merritt is not, in fact, a former military intelligence analyst. (Opinion, RE 172, Page ID # 6986). Appellants now admit that they were incorrect about Merritt's credentials, but claim that they had little opportunity to bring this "mistake" to the District Court's attention and argue that the District Court's criticism "is another one-sided effort to paint Appellants as

---

[12] Plaintiffs' Counsel attempted to conceal Merritt's identity by redacting his affidavit. However, they failed to properly redact his name and his identity was discovered and reported in the news media.

scoundrels bent on deceiving the court." Appellants' Brief, RE 27, Page ID # 57 (Case No. 21-1786). But Plaintiffs' counsels' submission of Merritt's affidavit was not an honest mistake. According to a *Washington Post* article, Merritt "blamed 'clerks' for Powell's legal team" for the false statements about his credentials, and stated "[m]y original paperwork that I sent didn't say that." (City's Rule 11 Motion, RE 78, Page ID # 3651). Appellants were well aware that Merritt was not a military intelligence expert and they did not attempt to redact his name from the affidavit in an attempt to protect his identity; they did so to hide their fraud on the District Court.

Appellants now attempt to mislead *this* Court. Appellants claim that they learned the truth about Merritt from "a January 5, 2021, exposé in the Washington Post" and therefore they only had "seven business days between the Post's publication of the story and [their] voluntary dismissal on January 14" during which they could have notified the Court that the affidavit they submitted was misleading. Appellants' Brief, RE 27, Page ID # 57 (Case No. 21-1786). However, the *Washington Post* article was published on December 11, 2020, not January 5, 2021. (Opinion, RE 172, Page ID # 6988). The District Court noted that it was clear that Appellants were aware of the *Washington Post* story when it was published, because Sidney Powell is quoted in the article. (*Id.*).[13]

---

[13] Howard Kleinhendler testified during the hearing that "had he known in advance of the January 14 dismissal that Merritt had transferred out, he would have made it clear." (Opinion, RE 172, Page ID # 6989) (brackets omitted). However,

Appellants claim that if they are sanctioned for filing a lawsuit containing factual allegations supported only by speculative affidavits, it "would significantly narrow the kind of cases that can be brought in federal court." Appellants' Brief, RE 27, Page ID # 56 (Case No. 21-1786). Appellants' concerns are misplaced. In this Circuit, the test for the imposition of Rule 11 sanctions is "whether the attorney's conduct was objectively reasonable under the circumstances." *Nieves v. City of Cleveland*, 153 F. App'x 349, 352 (6th Cir. 2005) (citing *Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989)). Attorneys who bring antitrust or discrimination cases supported by *reasonable* inferences of unlawful conduct will not be subject to sanctions under Rule 11. Here, the District Court properly determined that Appellants' uncritical reliance on affidavits and "expert" reports that did not support their factual allegations fell short of their duties under Rule 11. (Opinion, RE 172, Page ID # 6959-6965).

---

Appellants knew that Mr. Merritt was not actually a "Military Intelligence Expert" by December 11, 2020, well before they dismissed the case on January 14, 2021. Appellants made no effort to inform the Court that the affidavit was misleading. Appellants dispute the District Court's quotation of Mr. Kleinhendler, but the context of the quotation makes it clear that Mr. Kleinhendler was stating that he would have informed the Court had he learned of Mr. Merritt's status prior to dismissal. Mr. Kleinhendler stated to the court that "when I first learned of [the fact Mr. Merritt was not a military intelligence expert] was after all the cases had been decided and dismissed and then we withdrew" making clear that when he stated "had I known in advance" he meant "in advance of dismissal." (Transcript, RE 157, Page ID # 5375).

## B.    Appellants' Legal Claims Violated Rule 11(b)(2)

Appellants' legal claims violated Rule 11(b)(2) (1) because they were not warranted by existing law, (2) because Appellants were unable to identify any authority that would authorize the District Court to grant them their requested relief (to decertify the election in Michigan and declare candidate Trump the winner), and (3) because Appellants failed to advance a non-frivolous argument for the extension, modification, or reversing of existing law or establishing new law. (Opinion, RE 172, Page ID # 6942-6946).

### 1.    *Bush v. Gore* does not Establish that Appellants' Claims are Warranted by Existing Law

*Bush v. Gore*, 531 U.S. 98 (2000) does not stand for the proposition that unsupported allegations of election fraud are sufficient to justify a court-ordered coup. Appellants claim that, because *Bush v. Gore* was not frivolous, their claims were not frivolous, but fail to further develop this argument. Appellants' do not even try to explain how standing, Eleventh Amendment immunity, laches, or *Colorado River* abstention could have been applied in *Bush v. Gore*.[14]

---

[14] Plaintiffs' argument on this point is further undermined by the fact that the other district courts in which they filed similar election challenge cases denied the requested injunctive relief on nearly identical grounds. *See Bowyer v. Ducey*, 506 F. Supp. 3d 699 (D. Ariz. 2020) (denying motion for injunctive relief on standing, abstention, Eleventh Amendment, laches and mootness grounds); *Feehan v. Wisconsin Elections Comm'n*, 506 F. Supp. 3d 596 (E.D. Wisc. 2020) (denying motion for injunctive relief on standing, Eleventh Amendment and mootness grounds).

Appellants claim that the only difference between this case and *Bush v. Gore* is that the relief sought there was an order stopping a recount, whereas here "Appellants represented parties asking for a recount."[15] Appellants' Brief, RE 27, Page ID # 63 (Case No. 21-1786). But this is yet another misrepresentation. Appellants were not asking for a recount; they were asking for the already-certified election results to be decertified and that candidate Trump be declared the winner of the election in Michigan. (Amended Complaint, RE 6, Page ID # 955 at ¶ 233). *Bush v. Gore* does not authorize a federal court to grant relief of such magnitude.

The District Court determined that Appellants lacked standing to assert their claim for violation of the Equal Protection Clause because Appellants failed to establish injury-in-fact, causation, or that their claimed injury was redressable. Plaintiffs did not allege that they were denied the right to vote—an injury that would be particularized to the individual Plaintiffs—they alleged their votes were diluted. Even assuming that Plaintiffs could establish that their own votes were unlawfully diluted, their injury could not be remedied by an order decertifying millions of other votes. (Order Denying Injunction Motion, RE 62, Page ID # 3318-3319). Regarding Plaintiffs' claims under the Elections Clause and the Electors Clause, the District Court determined that Plaintiffs' alleged injuries (that Michigan officials failed to

---

[15] As noted by the District Court, candidate Trump could have petitioned for a recount under Mich. Comp. Laws § 168.879 but failed to take advantage of this established procedure for reviewing the results of the 2020 election.

follow state election law) were "precisely the kind of undifferentiated, generalized grievance about the conduct of government that courts have refused to countenance." (*Id.* at Page ID # 3321) (quoting *Lance v. Coffman*, 549 U.S. 437, 442 (2007)) (brackets omitted).

Appellants' argument that standing could have been invoked in dismissing *Bush v. Gore* is limited to an assertion that "persons charged with performing one-half of the constitutionally-required process to select the President and Vice President…are in a stronger position than a candidate" with regard to standing. Appellants' Brief, RE 27, Page ID # 62 n. 57 (Case No. 21-1786). But the District Court primarily relied on redressability in finding that Plaintiffs lacked standing. Even if the elector-nominee Plaintiffs had suffered a cognizable injury, they still lacked standing because their requested relief (decertifying the election and declaring candidate Trump the winner) would not have redressed their alleged injury (the failure of state officials to follow election law). *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) ("A plaintiff's remedy must be tailored to redress the plaintiff's particular injury."). Standing here raises very different issues than *Bush v. Gore*, where candidate Bush was the plaintiff.[16]

---

[16] Candidate Bush's standing was so uncontroversial that none of the four dissenting opinions argued that he lacked standing to request a stay of the Florida Supreme Court's order.

While candidate Bush's standing in *Bush v. Gore* was uncontroversial, cases that have addressed whether elector-nominees have standing to assert claims based on generalized violations of election laws have nearly unanimously found that they do not. *See, e.g.*, *Feehan v. Wisconsin Elec. Comm'n*, 506 F. Supp. 3d 596, 612-13 (E.D. Wis. 2020) (holding that nominee-electors lacked standing to assert claims for violation of election law under the electors clause); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 710 (D. Ariz. 2020) (same); *Gohmert v. Pence*, 510 F. Supp. 3d 435, 441-43 (E.D. Tex. 2021) (same). The outlier case cited by Appellants, *Carson v. Simon*, 978 F.3d 1051, 1057 (8th Cir. 2020), was decided on the basis that "Minnesota law treats prospective presidential electors as candidates," which is not the case in Michigan. Appellants' claims involved the sort of "generalized grievances" about government conduct which the Supreme Court has long held to be insufficient to confer standing. *United States v. Richardson*, 418 U.S. 166, 173-75 (1974).

Appellants offer no argument to support their assertion that Eleventh Amendment immunity could have been invoked to dismiss *Bush v. Gore*. Appellants claim that the District Court's analysis of the *Ex parte Young* exception to Eleventh Amendment immunity, "amounted to the tautology that *Ex parte Young* does not apply because the Plaintiffs' claims failed on the merits." Appellants' Brief, RE 27, Page ID # 62 n. 57 (Case No. 21-1786) (quotation marks omitted). But the District Court held that *Ex parte Young*, 209 U.S. 123 (1908) did not apply (1) because most

of Plaintiffs' claims were state law claims couched in constitutional language; and (2) because Appellants were not requesting prospective relief, but rather retroactive relief decertifying the election in Michigan. (Order Denying Injunction Motion, RE 62, Page ID # 3304-3307).

Appellants also fail to offer any argument to support their claim that laches could have been invoked to dismiss *Bush v. Gore*. Instead, they fault the District Court for citing cases that applied a laches analysis in cases that did not challenge an election. This ignores the District Court's citation to *Detroit Unity Fund v. Whitmer*, 819 F. App'x 421, 422 (6th Cir. 2020), in which this Court upheld the dismissal of an election case on laches grounds. (Order Denying Injunction Motion, RE 62, Page ID # 3311). The District Court properly determined that Appellants' claims were barred by laches where they unreasonably waited more than three weeks after the election to assert their claims—after the District Court could grant them most of their requested relief. (*Id.* at Page ID # 3310-3313).

Likewise, Appellants offer no argument to support their assertion that the abstention doctrine could have been invoked in *Bush v. Gore*. Instead, they cite two Supreme Court cases which they claim stand for "the proposition that federal courts should not abstain." Appellants' Brief, RE 27, Page ID # 62 n. 57 (Case No. 21-1786). However, both cited cases merely hold that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging," to which

*Colorado River* abstention doctrine is an exception.[17] *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817 (1976)) (quotation marks omitted).

Appellants argue that the case was not moot "until Congress resolved any dispute between the rival slates of electors." Appellants' Brief, RE 27, Page ID # 65 (Case No. 21-1786). However, the mere fact that their case was not moot when it was filed does not mean mootness could not be considered by the District Court in its Rule 11 analysis. *Dearborn Street Bldg. Associates, LLC v. Huntington Nat. Ban*k, 411 F. App'x 847 (6th Cir. 2011) ("Rule 11 sanctions are nonetheless proper where…instead of withdrawing a complaint or agreeing to dismissal, a plaintiff 'continued to litigate after it became clear that his claim was frivolous, unreasonable or without foundation.'") (quoting *Bailey v. Papa John's USA, Inc*., 236 F. App'x 200, 203 (6th Cir. 2007)). Appellants claim that their case did not become moot because "[w]hen an alternative slate of electors was advanced in early January [2021], new life came into the case." Appellants' Brief, RE 27, Page ID # 64 (Case No. 21-1786). But the District Court correctly determined that the nominee-elector

---

[17] Additionally, this Court has recently affirmed the decisions of district courts to abstain on *Colorado River* grounds. *See, e.g*., *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390 (6th Cir. 2019) (affirming abstention on *Colorado River* grounds); *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388 (6th Cir. 2017) (same).

Plaintiffs' belief they were "an alternative slate of electors" was not a legal basis for determining that they were, in fact, electors and was inconsistent with Michigan law controlling the appointment of electors. (Opinion, RE 172, Page ID # 6937-6938).

Appellants did not make the argument that their case had "new life" prior to the sanctions hearing. (*Id.*). Likewise, Appellants now argue, for the first time, that their case could not have become moot before January 6, 2021, because after the 1960 election Hawaii did not certify its electors to Congress until January 6, 1961. Appellants' Brief, RE 27, Page ID # 65 (Case No. 21-1786). But Hawaii involved a genuine dispute between competing slates of electors in 1960, as the acting governor certified the Republican slate on November 26, 1960, and then the newly-elected governor certified the Democratic slate on January 4, 1961. *Bush v. Gore*, 531 U.S. at 127 n. 5 (Stevens, J. dissenting). Here, the elector-nominee Plaintiffs simply decided that they were electors without any basis in law. (Opinion, RE 172, Page ID # 6937-6938).

### 2. The District Court did not Have Authority to Grant the Requested Relief

Even if there had been a factual basis for the claims made by Appellants, their lawsuit still would have been frivolous, because the relief they requested could not be supported by their legal claims. Plaintiffs requested in their Amended Complaint, among other relief, the following:

- "An order directing Secretary Benson, Governor Whitmer, the Board of State Canvassers and Wayne County to de-certify the election results;"

- "An order requiring Governor Whitmer to transmit certified election results that state that President Trump is the winner of the election." (Amended Complaint, RE 6, Page ID # 955).

As the District Court noted, the relief Plaintiffs' sought was to "disenfranchise the votes of more than 5.5 million Michigan citizens who, with dignity, hope, and a promise of a voice participated in the 2020 general election." (Order Denying Injunction Motion, RE 62, Page ID # 3296). Plaintiffs' counsel have not produced any authority supporting the power of a federal court to grant such relief.

### 3. Appellants Never Advanced a Nonfrivolous Argument for the Extension, Modification or Reversal of Existing Law, or Establishing New Law

Appellants argue that election cases frequently involve "uncharted waters." Appellants' Brief, RE 27, Page ID # 66 (Case No. 21-1786). But this lawsuit was not a serious attempt at charting any such waters. Tellingly, when the District Court asked Appellants to provide some authority that could support the requested relief, Mr. Kleinhendler stated that the Court had "inherent equitable authority to do as it sees fit" because "fraud vitiates everything" and cited *United States v. Throckmorton*, 98 U.S. 61 (1878). (Transcript, RE 157, Page ID # 5334-5335). But the *Throckmorton* court did not hold that fraud vitiates everything. Rather, the Supreme Court's holding in *Throckmorton* was that a prior judgment confirming a

land grant could *not* be collaterally attacked on the basis that it was the product of fraud. *Throckmorton*, 98 U.S. at 68.

The District Court found Appellants' citation to a nineteenth-century case that did not support their position "enlightening" because the phrase "fraud vitiates everything" had become a meme among candidate Trump's supporters on social media, where it was invoked as a basis for invalidating the 2020 election.[18] (Opinion, RE 172, Page ID # 6944-6946). As the City argued below, the fact this argument had been repeated by Appellants in court demonstrated that "this suit has been driven by partisan political posturing, entirely disconnected from the law and is the dangerous product of an online feedback loop, with these attorneys citing 'legal precedent' derived not from serious analysis of case law, but from the rantings of conspiracy theorists sharing amateur analysis and legal fantasy in their social media echo chambers." (*Id.* at Page ID # 6945-6946) (quotation marks omitted).[19]

---

[18] The District Court quoted a handful of examples of the *Throckmorton* 'analysis' shared on social media in its Opinion at RE 172, Page ID # 6945 n. 31.

[19] Appellants fault the District Court for "conflating absurd third-party Twitter comments with [their] legal position," but offer no alternative explanation for their claim *Throckmorton* supported the District Court's authority to grant their requested relief. Appellants' Brief, RE 27, Page ID # 30 (Case No. 21-1786). Furthermore, after the City pointed out that Appellants' citation of *Throckmorton*, a 150-year-old case that did not support their position, could be explained only by reference to 'legal' theory circulating on social media, Appellants doubled down on their claims, stating that "Fraud does vitiate everything" and "a Supreme Court opinion doesn't stop being law just because it's cited in social media." (Powell et al. Response to City's Supplemental Brief in Support of Sanctions, RE 167, Page ID # 6685).

41

Tellingly, at the sanctions hearing, Mr. Kleinhendler defended Appellants' presentation of false claims and their reliance on non-existent legal precedent by stating it "appear[ed] consistent with the narrative." (Transcript, RE 157, Page ID # 5451). In other words, Appellants believe they can say anything in court if its fits their storyline.

## III. The District Court's Sanctions Order Was Procedurally Proper

Appellants object that the District Court's Order "fails to specify which sanctions authority it used to impose which sanctions against which Appellant." Appellants' Brief, RE 27, Page ID # 74 (Case No. 21-1786). But it is Appellants who seek to create confusion by misconstruing the various standards.

### A. Appellants' Arguments Rely on Misstatements of the Law

Strangely, even in this Court, Appellants continue to misstate the law. Appellants claim that "[t]he Supreme Court has made clear that Rule 11 liability must be personal only to a signer" citing *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989) and other pre-1993 cases. Appellants' Brief, RE 27, Page ID # 88-89 (Case No. 21-1786). But Rule 11 was amended nearly 30 years ago, and it now permits courts to sanction those "responsible" for the violation, regardless of whether they signed a filed document. Fed. R. Civ. P. 11(c)(1). Appellants then state that "Rule 11, the sole possible basis for the non-monetary sanctions, imposes no continuing obligation," tendering two distinct misstatements of the law in one

42

sentence. Appellants' Brief, RE 27, Page ID # 89 (Case No. 21-1786). First, Rule 11 is not the "sole possible basis" for non-monetary sanctions. As discussed below, the District Court had the authority to impose non-monetary sanctions under its inherent authority. Second, this Court has unequivocally held that Rule 11 imposes on attorneys a "continuing duty of candor." *Rentz*, 556 F.3d at 395

Appellants cite *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor* for the proposition that Rule 11 applies only at the time a document is signed and "does not create a continuing obligation like that imposed by § 1927." Appellants' Brief, RE 27, Page ID # 75 (Case No. 21-1786). But *Jackson* was decided before Rule 11 was amended in 1993, when language was added clarifying that "a litigant's obligations with respect to the contents of [filed] papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment)

Appellants should now know that Rule 11 was amended in 1993, and their persistence in citing pre-1993 case law is inexplicable. Appellants argued that Rule 11 applied only to signers in their opposition to the City's Rule 11 motion. (Plaintiffs' Opposition to City's Rule 11 Motion, RE 95, Page ID # 4116). The City explained that Appellants were relying on outdated case law in their reply brief.

43

(City's Reply in Support of Rule 11 Motion, RE 103, Page ID # 4184-4186). And, the District Court clearly informed Appellants that they were relying on outdated case law. (Opinion, RE 172, Page ID # 6915). They nonetheless fail to acknowledge the state of the law.

### B. Appellants Have Attempted to Avoid Accountability by Misrepresenting the Facts of Their Involvement

Despite initially trumpeting their involvement in this case, Appellants later attempted to avoid responsibility for this litigation by blaming each other. The Michigan lawyers claimed they signed the filings, but did not prepare them, so they could not be responsible, while the out-of-state attorneys claimed they prepared the filings, but did not sign them, so they could not be responsible. (*See* Response to the City's Rule 11 Motion, RE 95, Page ID # 4118; Plaintiffs' Supplemental Response to the City's Rule 11 Motion, RE 111, Page ID # 4556). Appellants argued in their Response to the City's Rule 11 Motion that Sidney Powell and the other out-of-state attorneys could not be sanctioned because "the only signator [*sic*] or appearance made in the short life of this case has been by Plaintiffs' local counsel." (Response to the City's Rule 11 Motion, RE 95, Page ID # 4118).

This was blatantly false. Sidney Powell had signed the following documents:

- Complaint [RE 1, Page ID # 75];

- Amended Complaint [RE 6, Page ID # 957];

- Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief [RE 7, Page ID # 1847];

- Plaintiffs' Emergency Motion to File Affidavits under Seal [RE 8, Page ID # 1854]; and

- Plaintiffs' Reply in Support of their Injunction Motion [RE 49, Page ID # 3098].

These misrepresentations about the signing of the pleadings were not made out of ignorance or mistake, they were made by Sidney Powell herself. The affidavit of Plaintiffs' local counsel Gregory Rohl was attached as an exhibit to Plaintiffs' Supplemental Brief in Opposition. (Rohl Affidavit, RE 111-1, Page ID # 4597-4599). Rohl swears that he was asked to assist in "litigation involving alleged election fraud in Michigan which was being spearheaded by Sidney Powell and Lin Wood." (Rohl Affidavit, RE 111-1, Page ID # 4597 at ¶ 2). Rohl states that he was to "serve as a conduit for pleadings and essentially 'hold the fort' until Sidney Powell's Pro Hac Vice application was accepted by the Court." (*Id.* at Page ID # 4598 at ¶ 7). After the filing of the City's Rule 11 Motion, Rohl states that "Ms. Lambert Junttila surprisingly advised Rohl that she was not the one preparing the response to the Rule 11 Sanction Motion, and that it was being provided for review by Sidney Powell's team." (*Id.* at Page ID # 4599 at ¶ 13). So, while Stefanie Junttila signed the brief falsely claiming that Sidney Powell did not sign documents in this case, Sidney Powell herself initially authored those misrepresentations.

In attempting to evade responsibility, several of the Appellants have sought to minimize their own involvement by emphasizing the culpability of their co-counsel. During the sanctions hearing, Sidney Powell stated "I take full responsibility for the pleadings in this case…[i]t was my responsibility and it was Mr. Kleinhendler's." (Transcript, RE 157, Page ID # 5533). However, Ms. Powell and Mr. Kleinhendler now focus on what they characterize as the District Court's belief that Mr. Wood is the "proud, unbowed architect" of the litigation and object that the District Court's Opinion does not adequately explain "how Powell and Kleinhendler are Wood's equal in culpability." *See* Appellants' Brief, RE 27, Page ID # 87 (Case No. 21-1786). While Ms. Powell and Mr. Kleinhendler attempt to paint Mr. Wood as the ringleader, Mr. Wood claims he had no involvement with the litigation whatsoever. *See* Wood Brief on Appeal, RE 18, Page ID # 26-41 (Case No. 21-1785).

### C.    Appellants Violated 28 U.S.C. § 1927

The City requested sanctions against Appellants under 28 U.S.C. § 1927 in its Motion to Dismiss.[20] The District Court found that § 1927 sanctions were appropriate because Appellants "unreasonably and vexatiously multiplied the proceedings in this case." (Opinion, RE 172, Page ID # 6936-6941). Appellants

---

[20] The District Court initially believed that the City's Rule 11 motion mooted the request for 28 U.S.C. § 1927 sanctions in its Motion to Dismiss. (Pre-Hearing Order, RE 149, Page ID # 5266). However, the District Court later determined that the City's request for § 1927 sanctions was not moot. (Order Regarding Monetary Sanctions, RE 179, Page ID # 7158).

*admitted* "the case at bar was…effectively over on December 7, 2020," but they did not dismiss the case. (Plaintiffs' Opposition to State Defendants' Motion for Sanctions, RE 112, Page ID # 4610). Appellants *admitted* that the case would become moot after December 14, 2020, but they did not dismiss the case. Instead, Plaintiffs' counsel denied concurrence in the Defendants' motions to dismiss and then filed motions to extend their time to answer the motions to dismiss. (State Defendants' Request for Concurrence in Motion to Dismiss, RE 105-3, Page ID # 4432; Plaintiffs' Motion for Extension of Time regarding Motions to Dismiss, RE 82, Page ID # 3857-3864). But, as discussed above, Appellants did not respond to the motions to dismiss.

### D.    The District Court had Inherent Authority to Sanction Appellants

Appellants claim that the District Court erred in imposing "the sanctions of requiring continuing legal education or referral for bar discipline," as neither the State Defendants, nor Davis, moved for Rule 11 sanctions. According to Appellants, "after *Haeger*, inherent authority sanctions are…limited to legal expenses caused by the misconduct." Appellants' Brief, RE 27, Page ID # 81 (Case No. 21-1786). However, this argument is based on a misreading of *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) ("*Goodyear*"). The Supreme Court did not hold in *Goodyear* that the only sanction available to a court under its inherent authority is "legal expenses caused by the misconduct." Rather, the Supreme Court held that

when a district court awards legal expenses under its inherent authority, the expenses it can properly award "may go no farther than to redress the wronged party for losses sustained; it may not impose an additional *amount* as punishment for the sanctioned party's misbehavior." *Goodyear*, 137 S. Ct. at 1186 (emphasis added). The Supreme Court noted in *Goodyear* that an assessment of attorney fees is "one permissible sanction" under a court's inherent authority. *Id*. It is well established that district courts may impose an array of sanctions under their inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991) (listing non-monetary sanctions available to courts under their inherent authority).

Appellants claim that the District Court improperly imposed sanctions under its inherent authority, because the District Court determined that Appellants "knew or should have known that these claims and legal contentions were not well-grounded in fact or law." According to Appellants "'knew or should have known' is an almost ostentatiously wrong recitation of the standard for a bad faith finding" required to impose inherent authority sanctions. Appellants' Brief, RE 27, Page ID # 80-81 n. 63 (Case No. 21-1786). Appellants are wrong on the law. In this Circuit, the standard for awarding attorney fees based on bad faith conduct is met where a district court finds "the claims advanced were meritless, *that counsel knew or should have known this*, and that the motive for filing the suit was an improper purpose such as harassment." *Big Yank Corp.*, 125 F.3d at 313 (quoting *Smith v. Detroit*

48

*Federation of Teachers Local 231 AFT, AFL-CIO*, 829 F.2d 1370, 1375 (6th Cir. 1987)) (emphasis added). Here, the District Court made all the findings required to impose sanctions under its inherent authority for Appellants. (Opinion, RE 172, Page ID # 6990-6991).

### E.    The District Court's Disciplinary Referrals were Proper

The District Court properly determined that "the conduct of [Appellants], which also constituted violations of the Michigan Rules of Professional Conduct, *see, e.g.*, MRPC 3.1 and 3.3, calls into question their fitness to practice law." (Opinion, RE 172, Page ID # 6997). Appellants object that this statement was inappropriate because the District Court has specific procedures for disciplining attorneys. The District Court found that Appellants' conduct violated the Michigan Rules of Professional Conduct and referred Appellants to the Michigan Attorney Grievance Commission as well as the "appropriate disciplinary authority for the jurisdiction(s) where each attorney is admitted…for investigation and possible suspension or disbarment."[21] (Opinion, RE 172, Page ID # 6999). The District Court was explicitly authorized to do so by local rule, which provides in pertinent part that:

---

[21] While this Circuit does not appear to have addressed the issue, it is not clear that a district court's referral of an attorney to a bar association for investigation is reviewable. *See Landscape Props., Inc. v. Whisenhunt*, 127 F.3d 678, 685 (8th Cir. 1997) (finding that referral of Rule 11 violation to other judges in the district to determine whether disciplinary action should be taken "was not itself a sanction" and therefore not reviewable); *Converse Const. Co., Inc. v. Converse Steel Fabricators & Erectors, Inc.*, 181 F.3d 79 (1st Cir. 1998) (finding that district court's

[w]hen misconduct…that, if substantiated, would warrant discipline of an attorney…come[s] to the attention of a judicial officer…the judicial officer may refer the matter to: (1) the Michigan Attorney Grievance Commission for investigation and prosecution, (2) another disciplinary authority that has jurisdiction over the attorney. E.D. Mich. L.R. 83.22(c).

The District Court simply followed that Rule.

The cases cited by Appellants on this point are distinguishable and demonstrate that the District Court's referrals to disciplinary bodies were entirely proper. *In re Corrinent*, 645 F.3d 1141, 1143 (9th Cir. 2011) involved an appeal from a district court judge's *sua sponte* revocation of an attorney's membership in the District of Oregon bar. And *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393-95 (10th Cir. 1992) involved Rule 11 sanctions, imposed on the basis of misrepresentations made by an attorney during a hearing, and was decided when the pre-1993 version of Rule 11 limited its application to representations made in papers filed with the court. Here, the District Court did not improperly discipline Appellants; it referred them to the relevant disciplinary authorities, as authorized by the local rules.

---

referral to bar disciplinary body was not reviewable because such a referral was "merely the first step in a process to investigate the misconduct for the purpose of determining what sanction…ought to be imposed.") (quotation marks omitted); *Wisconsin Voters Alliance v. Harris*, 28 F.4th 1282, 1284 (D.C. Cir. 2022) (finding that order referring attorney to grievance commission was not an appealable final order as "[a] referral to the Committee on Grievances neither determines whether an attorney will receive discipline nor what form discipline may take…[and] if the Disciplinary Panel reaches an adverse decision, the attorney may appeal.").

### F.     Remand is Unnecessary

Appellants claim that "[c]onfusion like that resulting from the District Court's opinion requires remand," but any confusion is solely of Appellants' own making. Appellants' Brief, RE 27, Page ID # 84 (Case No. 21-1786). Appellants claim the District Court failed to engage in separate analyses of whether sanctions are warranted under Rule 11, 28 U.S.C. § 1927 and inherent authority, but they offer no explanation of how it failed to do so. The District Court *did* engage in separate analyses of whether sanctions were warranted under Rule 11, § 1927, and its inherent authority and determined that Appellants were subject to sanctions under each source of authority. (Opinion, RE 172, Page ID # 6936-6991). Appellants' argument that the District Court's findings of fact were too general, based on *Oliveri v. Thompson*, 803 F.2d 1265, 1277 (2d Cir. 1986), does not support their claim. In *Oliveri*, the district court's factual findings were limited to a statement that sanctions were being imposed on plaintiff's counsel "for instituting meritless claims and for continuing the prosecution of claims after it became apparent that they were without a factual or legal basis." *Id*. at 1275. Appellants offer no explanation as to why the single sentence of factual findings in *Oliveri* "look[s] like the movement of a Swiss chronograph compared to those here." Appellants' Brief, RE 27, Page ID # 85 (Case No. 21-1786).

### G.    The District Court Properly Sanctioned Appellants Jointly and Severally

The District Court appropriately assessed attorney fees jointly and severally. The Court was not obligated to make findings regarding the relative culpability of each attorney, and the Court did find that "[b]y agreeing to place their names on pleadings and/or motions, counsel are responsible for those submissions and will be held accountable" under Rule 11, 28 U.S.C. § 1927 and the District Court's inherent authority. (Opinion, RE 172, Page ID # 6917). This Court has recently held that District Courts are not required to "precisely articulate[] the factual basis for sanctions for each individual attorney." *NPF Franchising, LLC v. SY Dawgs*, No. 21-3516, slip op. at 13, 2022 WL 2137145 at *7 (6th Cir. 2022) (reviewing sanctions imposed under Rule 37).[22]

Appellants also claim that the District Court erred in failing to undertake an individualized assessment of their ability to pay the monetary sanctions. But the District Court did find that Appellants, "many of whom seek donations from the public to fund lawsuits like this one, *see https://defendingtherepublic.org*, have the ability to pay this sanction." (Order Regarding Monetary Sanctions, RE 179, Page ID # 7167). The District Court also noted that Sidney Powell "is profiting from the

---

[22] The District Court was not required to "match up every dollar of sanctions to every individual [attorney] sanctioned. A rough estimate is enough, and there is 'no precise rule for making these determinations.'" *NPF Franchising*, No. 21-3516, slip op. at 14, 2022 WL 2137145 at *8 (quoting *Hensely*, 461 U.S. at 436).

filing of this and other frivolous election-challenge lawsuits." (Opinion, RE 172, Page ID # 6997 n. 85). The monetary sanctions were assessed against Appellants jointly and severally, and it is clear that some of these attorneys have profited handily from this litigation.[23] If an individual attorney lacks the means to pay, that attorney should have raised that issue with the District Court.

The District Court properly explained why sanctions were justified against each Appellant. The District Court found that each attorney in question attempted to evade responsibility and that "no attorney wants to take responsibility now that sanctions are sought." (Opinion, RE 172, Page ID # 6914-6915). The District Court determined that "[b]y agreeing to place their names on pleadings and/or motions, counsel are responsible for those submissions and will be held accountable" under Rule 11, 28 U.S.C. § 1927 and the District Court's inherent authority. (*Id.* at Page ID # 6917). In sum, the District Court determined that all of the attorneys were responsible for the sanctionable conduct and subjected them all to sanctions.

---

[23] Appellants did not raise the issue of their purported inability to pay the Defendants' attorney fees before the District Court, and this issue is not preserved on appeal. *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005). Presumably, Appellants did not raise this issue below because Sidney Powell has used the filing of baseless challenges to the 2020 election to raise more than $14 million from donors. *Sidney Powell group raised more than $14 Million spreading election falsehoods*, WASH. POST, Dec. 6, 2021, available at https://www.washingtonpost.com/investigations/sidney-powell-defending-republic-donations/2021/12/06/61bdb004-53ef-11ec-8769-2f4ecdf7a2ad_story.html

The cases cited by Appellants are inapposite. Appellants cite *Katz v. Household Int'l, Inc*., 36 F.3d 670 (7th Cir. 1994) for the proposition that a district court must clearly explain an award of sanctions. But *Katz* concerned a sanctions order that was "cursory and somewhat unclear, leaving [the reviewing court] in doubt about the actual basis for the imposition of sanctions." *Id*. at 673. Here the District Court, in a 110-page Opinion, expressly identified the three bases for sanctions and separately analyzed why sanctions were warranted under each. (Opinion, RE 172, Page ID # 6936-6991). Appellants cite *Bodenhamer Bldg. Corp. v. Architectural Rsch. Corp*., 989 F.2d 213 (6th Cir. 1993) as an example of a case where this Court vacated and remanded a sanctions order "for precisely this kind of judicial lassitude." Appellants' Brief, RE 27, Page ID # 88 (Case No. 21-1786). The issue in *Bodenhamer* was whether the district court erred in determining that all of the plaintiff's legal expenses were causally linked to the defendant's improper denial of certain allegations in the complaint, in violation of Rule 11. *Id*. at 218. This Court determined that the district court's order was insufficient, because it did not disclose the basis for finding the defendant liable for all of the plaintiff's attorney fees based on the improper denials in the answer. *Id*. Here, the District Court determined that Appellants violated Rule 11 by filing a complaint with no basis in law or fact and found that all of the Defendants' legal expenses were causally connected to the filing of the Complaint. (Opinion, RE 172, Page ID # 6996-6997). Likewise, *Nieves v. City*

*of Cleveland* stands for the proposition that, when imposing sanctions, a district court must "describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." 153 F. App'x at 351-52 (quoting Fed. R. Civ. P. 11(c)(3)). Here, the District Court described the conduct that constituted violations of Rule 11 and explained the bases for the sanctions imposed.

### H.    The City Complied with the Rule 11 Safe Harbor Rule

Appellants claim that they "substantially complied" with the Rule 11 safe harbor because the District Court granted their motion for more time to respond to Davis's motion for sanctions under 28 U.S.C. § 1927, thereby extending the safe harbor period applicable to the City's Rule 11 motion beyond 21 days. Appellants' Brief, RE 27, Page ID # 90-91 (Case No. 21-1786). Appellants cite no authority for the proposition that Rule 11 sanctions can be avoided by dismissing their case after the 21-day safe harbor period has expired. And, as Appellants admit, their motion to extend time to respond to Davis's motion made no reference to an extension of the safe harbor period with regard to the City. Appellants' Brief, RE 27, Page ID # 91 (Case No. 21-1786). Not surprisingly, the District Court's Order granting Appellants' motion to extend time makes no mention of an extension of the safe harbor period. (Order Granting Motion to Extend Time as to Davis, RE 76, Page ID # 3610-3611). The City sent its safe harbor letters to Appellants on December 15, 2020 and stated in its Motion to Dismiss that it intended to file a Rule 11 motion

when the safe harbor period expired. (City's Motion to Dismiss, RE 73, Page ID # 3358 n. 17). Appellants were clearly on notice of the Rule 11 motion when they filed their motion to extend time on January 3, 2021. But Appellants did not request an extension of the safe harbor period and the District Court did not grant one.[24]

## I.    The District Court Properly Awarded the City its Reasonable Attorney Fees

Appellants question the reasonableness of the award of attorney fees to the City, because the amount billed by the City's attorneys was greater than that billed by the attorneys for the State Defendants. Appellants claim that the City of Detroit "came to the nuisance" by intervening in this litigation and baselessly accuse the City of acting as a "[m]ercenar[y]." Appellants' Brief, RE 27, Page ID # 67-68 (Case No. 21-1786) But most of the election procedures being challenged were managed by the Detroit City Clerk. As the District Court noted, "issues were raised by Plaintiffs' attorneys that specifically concerned only the City." (Order Regarding Monetary Sanctions, RE 179, Page ID # 7148). The District Court correctly observed

---

[24] This is Appellants' fourth attempt at contriving an argument that the City failed to comply with the Rule 11 safe harbor requirement. First, Appellants argued that the City's Rule 11 letter was deficient because it was accompanied by a motion, but not a brief in support. Second, Appellants falsely claimed that the Rule 11 letter was not properly served under Rule 5. Third, Appellants argued that the Rule 11 letter was improper because concurrence was sought only from Sidney Powell. The District Court found each of these arguments meritless. (Opinion, RE 172, Page ID # 6926 n. 23).

that "Plaintiffs' attorneys do not point to any case law in which courts compared the fees charged by counsel on the same side when analyzing the reasonableness of one of their requests for attorney's fees." (*Id.*). Appellants cite no such authority in their Brief on Appeal. The District Court further found that the hours billed by the City were "unsurprising and not excessive given the complexity of the issues involved in this matter, the quality of the briefing and arguments presented, and the significance of this litigation to our democracy." (*Id.*). The District Court also found that the time incurred by the City's counsel preparing for the hearing was reasonable where "[c]ounsel for the City presented most of the arguments on behalf of [the Defendants] during oral argument and responded to numerous issues raised." (*Id.* at Page ID # 7159-7160).

## IV.    The District Court Did Not Violate Appellants' First Amendment Rights

Appellants cannot cite a single case that supports their argument that the First Amendment prohibits a court from sanctioning an attorney's in-court conduct. It is unsurprising that Appellants were unable to locate such authority, as every court that has considered the issue has determined that there is no First Amendment right to file frivolous litigation.[25]

---

[25] *See, e.g., Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 743 (1983) ("baseless litigation is not immunized by the First Amendment right to petition") (citations omitted); *In re Kelly*, 808 F.2d 549, 550 (7th Cir. 1986) (finding argument that punishing attorney under Rule 11 "would violate the speech and petition clauses of the First Amendment" frivolous); *Fuller v. Donahoo*, 33 F.3d 1378 (5th Cir. 1994)

Appellants argue that courtroom advocacy is protected by the First Amendment right to freedom of speech, and that attorneys may not be subjected to government sanctions for lying in court or engaging in other sanctionable conduct. Appellants reach this startling conclusion by noting that the District Court cited this Court's opinion in *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) for the proposition that it "is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." Appellants' Brief, RE 27, Page ID # 69 (Case No. 21-1786). But, Appellants claim, the law has changed since *Mezibov* was decided, citing *National Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018) ("*NIFLA*").

Appellants claim that the Supreme Court held in *NIFLA* that regulations on professional speech are subject to the same scrutiny as other content-based restrictions. Appellants stretch this holding to assert that all forms of attorney speech, including in-court advocacy, are fully protected by the First Amendment.[26] *NIFLA*

_____

("there is no First Amendment exception to a Rule 11 violation"); *In re Leone*, 50 F.3d 15 (9th Cir. 1995) (noting that the Ninth Circuit has rejected "First Amendment challenges to Rule 11"); *King v. Fleming*, 899 F.3d 1140, 1151 n. 17 (10th Cir. 2018) ("the First Amendment is in no way a defense to Rule 11 violations").

[26] Incredibly, Appellants appear to argue that attorneys have a First Amendment right to lie in court. According to Appellants, an attorney's in-court speech is accorded the full protection of the First Amendment under *NIFLA*. Appellants then cite *United States v. Alvarez*, 567 U.S. 709 (2012) for the proposition that "judges…may not punish speech simply because they believe it's untrue." Appellants' Brief, RE 27, Page ID # 73 (Case No. 21-1786). But *Alverez* did not involve a government sanction for a perceived untruth; it was uncontested

addressed the constitutionality of a California law requiring crisis pregnancy centers

in the state to make certain disclosures regarding the availability of other healthcare

services, including abortion. *Id*. at 2368-70. The Supreme Court held that such

compelled speech violated the First Amendment, regardless of whether the law only

applied to medical professionals. *Id*. at 2372, 2378. Appellants attempt to contort

*NIFLA*'s holding to apply to all regulations of attorney speech by noting that the

Supreme Court "relied on cases dealing with attorneys' First Amendment rights."

Appellants' Brief, RE 27, Page ID # 70 (Case No. 21-1786). But none of the cases

cited by the Supreme Court dealt with sanctions for in-court advocacy. Instead, they

involved regulations of out-of-court speech. *NAACP v. Button*, 371 U.S. 415 (1963)

concerned whether the state of Virginia could ban solicitation of clients by the

NAACP. *Id*. at 418-19. *In re Primus*, 436 U.S. 412 (1978) considered whether a

letter from a legal advocacy organization to a potential client offering free legal

assistance could be sanctioned by a state bar association as prohibited solicitation.

*Id*. at 414-421. While the Supreme Court has interpreted *Button* "as establishing the

principle that 'collective action undertaken to obtain meaningful access to the courts

---

that the *Alverez* defendant's statement that he had been awarded a Congressional
Medal of Honor was knowingly false. *Id.* at 715. And the Supreme Court's holding
in *Alverez* was that there was no general exception to the First Amendment for false
statements. *Id.* at 718. *Alverez* does not support Appellants' position about in-court
statements, as the *Alverez* Court noted that perjured statements "undermine[] the
function and province of law and threaten[] the integrity of judgments that are the
basis of the legal system." *Id*. at 722.

is a fundamental right within the protection of the First Amendment,'" Appellants cite no authority that extends such protection to an attorney's in-court speech. *In re Primus*, 436 U.S. at 426 quoting *United Transportation Union v. Michigan Bar*, 401 U.S. 576, 585 (1971).

*Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2011) also fails to advance Appellants' argument. Appellants claim this Court in *Riddle* "cautioned that imposing sanctions for political speech 'would create a disincentive to the enforcement of civil rights laws and would have a chilling effect on a plaintiff who seeks to enforce his/her civil rights, especially against a government official.'" Appellants' Brief, RE 27, Page ID # 70-71 (Case No. 21-1786) (quoting *Riddle*, 266 F.3d at 551). But *Riddle* did not concern sanctions imposed for political speech. Rather, this Court noted in *Riddle* that a plaintiff should not be sanctioned simply because the defendant obtains summary judgment after the conclusion of discovery. *Id*. Here, the District Court sanctioned Appellants because it determined that their claims were frivolous at the time of filing.

The only case Appellants cite that dealt with in-court speech is *Legal Servs. Corp. v. Velaquez*, 532 U.S. 533 (2001), but it is not relevant here. The issue in *Velaquez* was the constitutionality of a congressional attempt to prevent lawyers who received federal funding through the District of Columbia Legal Services Corporation ("LSC") from arguing in court that a state or federal statute violated the

Constitution. *Id*. at 536-37. The Supreme Court held that such a restriction violated the First Amendment because it was "an attempt to draw lines around the LSC program to exclude from litigation those arguments and theories Congress finds unacceptable but which by their very nature are within the province of the courts to consider." *Id*. at 546. Appellants attempt to equate their situation to *Velaquez* by stating "the District Court's order is designed to prevent Appellants and their clients from speaking expressly because the District Court disapproves of their message." Appellants' Brief, RE 27, Page ID # 71 (Case No. 21-1786). But the District Court's order in no way prevents Appellants or their clients from speaking. The District Court sanctioned Appellants for filing a frivolous lawsuit, not for communicating an offensive message. The District Court did note that Appellants' lawsuit appeared to be designed to further a partisan political narrative, but this observation was related to the Court's analysis of *why* Appellants filed such an egregiously deficient lawsuit. It was not the basis for sanctions itself. Appellants were not sanctioned because they represented an unpopular client or because they advanced a disfavored cause; they were sanctioned because they asserted, in bad faith and for an improper purpose, claims that had no colorable basis in fact or law.

## <u>CONCLUSION</u> [27]

This is no ordinary case. These nine lawyers working together manipulated the federal judicial system to advance the Big Lie. The City railed against the threat posed by these unfounded allegations in its Rule 11 Motion, filed in January, 2021:

> Plaintiffs and their counsel understood that the mere filing of a suit (no matter how frivolous) could, without any evidence, raise doubts in the minds of millions of Americans about the legitimacy of the 2020 presidential election. (City's Rule 11 Motion, RE 78, Page ID # 3618).

This lawsuit was one component of a broader plan to undermine the presidential electoral process. On January 6, 2021, just one day after the filing of the City's Rule 11 Motion, the devastating consequences of these false claims were visited on our nation. As the City argued the day before the Capitol Insurrection:

> The extent of the factual and legal errors in the Complaint would warrant sanctions under any circumstances, but here the Court's processes are being perverted to undermine our democracy and to upset the peaceful transition of power. [These] attorneys deserve the harshest sanctions this Court is empowered to order. (*Id*., at Page ID # 3634-3635).

The City of Detroit respectfully asks this Court to affirm the sanctions ordered by the District Court.

---

[27] Because of the common issues in these four appeals, the City of Detroit's Conclusion is the same for each matter.

Respectfully submitted,

**FINK BRESSACK**

/s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
Attorneys for the City of Detroit
38500 Woodward Ave.; Suite 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing Defendant-Appellee's Brief on Appeal was produced in Microsoft Word, 14 point, Times New Roman font and contains 15,452 words. Concurrent with the filing of this Brief, the City has filed a Motion for Leave to File Oversized Brief, requesting leave to exceed the 13,000 word limit set forth in Fed. R. App. P. 32(a)(7)(B).

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, I electronically filed the foregoing document and this Certificate of Service with the Clerk of the Court using the ECF system, which sent electronic notification of such filing to all counsel of record.

FINK BRESSACK

By:  /s/ Nathan J. Fink
　　　Nathan J. Fink (P75185)
　　　38500 Woodward Ave., Suite 350
　　　Bloomfield Hills, Michigan 48304
　　　Tel: 248.971.2500
　　　Fax: 248.971.2600
　　　nfink@finkbressack.com

64

# ADDENDUM

## Designation of Relevant District Court Documents

| RE | Description of Document | Page ID # |
|----|------------------------|-----------|
| 1 | Complaint, Case No. 2:20-cv-13134 | 1-75 |
| 5 | City's Motion to Intervene | 840-857 |
| 6 | Amended Complaint, Case No. 2:20-cv-13134 | 872-957 |
| 6-5 | Melissa Carone Affidavit | 1305-1307 |
| 7 | Plaintiffs' Injunction Motion | 1832-1849 |
| 8 | Plaintiffs' Emergency Motion to File Affidavits under Seal | 1850-1855 |
| 28 | Order Granting Motions to Intervene | 2142-2147 |
| 38 | Davis Answer to Plaintiffs' Complaint | 2751-2807 |
| 39 | City's Response to Injunction Motion | 2808-2852 |
| 49 | Plaintiffs' Reply in Support of their Injunction Motion | 3068-3098 |
| 62 | Order Denying Injunction Motion | 3295-3330 |
| 64 | Plaintiffs' Notice of Appeal | 3332 |
| 69 | Davis Motion for Sanctions | 3338-3349 |
| 70 | State Defendants' Motion to Dismiss | 3350-3428 |
| 72 | DNC and MDP Motion to Dismiss | 3433-3465 |
| 73 | City's Motion to Dismiss | 3544-3580 |
| 74 | Plaintiffs' Motion to Extend Time as to Davis | 3597-3599 |

| 76 | Order Granting Motion to Extend Time | 3610-3611 |
| 78 | City's Rule 11 Motion | 3616-3671 |
| 82 | Plaintiffs' Motion to Extend Time as to Motions to Dismiss | 3857-3864 |
| 86-91 | Plaintiffs' Notices of Voluntary Dismissal | 4030-4047 |
| 92 | Plaintiffs' Motion for Voluntary Dismissal as to Davis | 4048-4053 |
| 95 | Plaintiffs' Opposition to City's Rule 11 Motion | 4110-4157 |
| 103 | City's Reply in Support of Rule 11 Motion | 4180-4200 |
| 105 | State Defendants' Sanction Motion | 4334-4378 |
| 105-3 | State Defendants' Request for Concurrence in Motion to Dismiss | 4432 |
| 111 | Plaintiffs' Supplemental Response to the City's Rule 11 Motion | 4548-4595 |
| 111-1 | Gregory Rohl Affidavit | 4597-4599 |
| 112 | Plaintiffs' Opposition to State Defendants' Motion for Sanctions | 4600-4661 |
| 147 | Notice of Hearing | 5262-5263 |
| 149 | Pre-Hearing Order | 5265-5268 |
| 150 | Order for Supplemental Briefing | 5269 |
| 157 | Sanctions Hearing Transcript | 5303-5535 |
| 161-3 | City's Rule 11 Notice | 6058-6067 |
| 164 | City's Supplemental Brief in Support of Sanctions | 6134-6154 |
| 167 | Powell et al. Response to City's Supplemental Brief in Support of Sanctions | 6675-6687 |

| 172 | Sanctions Opinion | 6890-6999 |
|---|---|---|
| 179 | Order Regarding Monetary Sanctions | 7142-7168 |
| 180 | Judgment | 7169-7170 |
| 182 | Appellants' Notice of Appeal | 7174-7176 |