No. 21-1786

# United States Court of Appeals
## for the Sixth Circuit

———— ı ————

**Timothy King, et al.**
*Plaintiffs*

and

**Gregory J. Rohl; Brandon Johnson; Howard Kleinhendler;
Sidney Powell; Julia Haller; Scott Hagerstrom**
*Interested Parties - Appellants*

v.

**Gretchen Whitmer; Jocelyn Benson; City of Detroit, MI**
*Defendants-Appellees*

———— ı ————

Appeal from the United States District Court
Eastern District of Michigan
No. 2:20-cv-13134
Honorable Linda V. Parker, District Judge, Presiding

**APPELLANTS' MOTION FOR STAY OF MANDATE**

Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
**Counsel for Appellants**

## **TABLE OF CONTENTS**

INTRODUCTION.................................................................1

STANDARD FOR GRANTING RELIEF.................................2

REASONS FOR GRANTING THE STAY .................... ...................3

I.    This Case Presents Substantial Questions...............................3

    A.    There Is a Reasonable Probability That
          Certiorari Will Be Granted and the Sixth Circuit's
          Judgment Reversed...............................................................3

    B.    The Panel Created a Circuit and Intra-circuit
          Split by Affirming Sanctions Without Detroit's
          Strict Compliance with Rule 11.......................................10

    C.    The Panel Opinion Violates the Plain Text of §1927
          and Supreme Court and Circuit Precedent............................12

    D.    The Panel Opinion Contradicts Supreme Court
          and Sixth Circuit Precedent that Rule 11 Sanctions
          May Not Be Imposed against
          Non-Presenting Attorneys.................................................13

II.    Irreparable Injury Will Ensue if the Mandate is Not Stayed.........13

III.    The Balance of the Equities and the Public Interest
      Favor a Stay....................................................................15

CONCLUSION.................................................................17

CERTIFICATE OF COMPLIANCE............................................18

CERTIFICATE OF SERVICE..................................................19

## **INTRODUCTION**

Pursuant to Rule 41(d)(2) of the Federal Rules of Appellate Procedure and Rule 41 of the Sixth Circuit Rules, Appellants respectfully move for a stay of the issuance of the mandate in the above-captioned case pending the filing and disposition of a petition for writ of certiorari to the United States Supreme Court.

The Court should stay the mandate because the certiorari petition will present substantial questions regarding the infringement of core First Amendment rights to petition; the Due Process requirements for deprivation of those rights; and the intersection of those core constitutional values in the conduct of federal elections. There is a reasonable probability that certiorari will be granted, and this Court's judgment reversed, because the Supreme Court has granted over a dozen petitions raising these issues in the last three terms and reversed the judgment below in the majority of those cases. *See infra* Section I.A.

Appellants' petition for certiorari will raise threshold questions over which the Circuit Courts are split and address material errors of law prescribed by the Sixth Circuit. In view of the conflicts briefed below, the circuit splits presented, and the material, adverse nature of sanctions on

the livelihood, reputations, and careers of attorneys across the country,

these issues present substantial questions ripe for Supreme Court review.

Moreover, irreparable harm will result from the denial of a stay, not only

to Appellants, but also to potentially thousands of plaintiffs whose

preferred attorneys who will no doubt refuse to take on controversial

cases due to the imminent threat of sanctions and the multi-faceted

lawfare to which counsel in this case have been subjected.

This Court issued its decision on June 23, 2023, and denied the

petition for  rehearing en banc on August 8, 2023.  Under Rule 41(b) of

the Federal Rules of Appellate Procedure, this Court's mandate will

ordinarily issue on August 15, 2023.  Appellants intend to file a petition

for writ of certiorari with the Supreme Court within ninety days.  *See*

Sup. Ct. R. 13(1).  Accordingly, Appellants request a 90-day stay to file

their petition for a writ of certiorari, with a continuance of the stay to

follow official notification that the petition has been filed.  Fed. R. App.

P. 41(d)(2)(A)-(B).

## STANDARD FOR GRANTING RELIEF

This Court grants a stay of the issuance of a mandate pending

application for a writ of certiorari when "the certiorari petition would

present a substantial question and . . . there is good cause for a stay."
Fed. R. App. P. 41(d)(2)(A).   "To obtain a stay pending the filing and
disposition of a petition for a writ of certiorari, an applicant must show
(1) a reasonable probability that four Justices will consider the issue
sufficiently meritorious to grant certiorari; (2) a fair prospect that a
majority of the Court will vote to reverse the judgment below; and (3) a
likelihood that irreparable harm will result from the denial of a stay."
*Hollingsworth* v. *Perry*, 558 U.S. 183, 190 (2010).   Further, "[i]n close
cases the Circuit Justice or the Court will balance the equities and
weigh the relative harms to the applicant and to the respondent." *Id*.
That standard is clearly satisfied here.

## REASONS FOR GRANTING THE STAY

### I.    This Case Presents Substantial Questions.

### A. There Is a Reasonable Probability That Certiorari Will Be Granted and the Sixth Circuit's Judgment Reversed.

The First Amendment rights to free speech, free exercise and right
to petition the government for redress of grievances are facing an
unprecedented assault from the political branches, private media
companies, and non-profit organizations formed and funded upon the
election specifically to destroy the lives and reputations of the lawyers

who dared file challenges to the 2020 presidential election[1].  Political candidates, electors, and their attorneys face routine and widespread censorship from government officials and private companies acting in concert for their out-of-court statements on matters of the highest public concern like election integrity.  *See, e.g., Missouri v. Biden*, --- F.Supp.3d ---, 2023 WL 4335270, at *1-2 (W.D. La. July 4, 2023).  Now political candidates, electors, their attorneys, and investigators face unprecedented criminal prosecutions for engaging in core political speech on these issues and for having the temerity to investigate violations by

---

[1] David Brock, Appellee City of Detroit attorney David Fink,[1] and others formed a 501(c)(3) non-profit— "The 65 Project"—with the express goal of trying to disbar and destroy the lives of more than 100 lawyers who represented Republic Party candidates and officials in litigation related to the 2020 election. In an interview with Axios, The 65 Project founder and advisor David Brock described the initiative as a way to "not only bring the grievances in the bar complaints, but shame them [the lawyers] and make them toxic in their communities and in their firms." Lachlan Markey and Jonathan Swan, *Scoop: High-powered group targets Trump lawyers' livelihoods*, March 7, 2022, available at https://tinyurl.com/5aw9kcfa.  Appellants herein were among the first attorneys targeted.  *See* The 65 Project, "Ethics Complaints," available at https://the65project.com/ethics-complaints/.  *See also* The 65 Project (@The65Project), Twitter (Mar. 7, 2022, 6:51 AM) https://twitter.com/The65Project/status/1500801311306133512; *see also*, The 65 Project (@The65Project), Twitter (Aug. 31, 2022, 4:52 PM) https://twitter.com/The65Project/status/1565080230947160065.

those very government officials and petition the courts for redress violations of state election laws and the U.S. Constitution.

Absent a stay, this Court's decision—permitting draconian and potentially career-ending sanctions to be imposed without the most basic requirements of Due Process and  in violation of the strict requirements of Rule 11 and Section 1927—sends the message that it is open season on election attorneys and their clients.  Attorneys facing the triple or even quadruple threats of censorship, sanctions, criminal prosecution, and disbarment will refuse to represent clients with meritorious claims, rendering the First Amendment a dead letter for election-related claims. The result is the assured destruction of First Amendment rights and the abuse of judicial proceedings to silence political opponents.

Were it not for these protections, were filings in other cases scrutinized and lawyers sought to be punished as in this case, landmark cases like *Brown v. Board of Education*, *Baker v. Carr, Miranda v. Arizona, Obergefell v. Hodges, Heller v. District of Columbia, New York Times v. Sullivan, Nixon v. United States, Gideon v. Wainwright, Bush v. Gore,* and scores of cases like them would never have reached the Supreme Court.  None of these cases were supported by then-existing

precedent; in most, established law was directly contrary. Lawyers stood up in these high-profile cases and advocated extremely controversial positions. None were subjected to the scrutiny, targeting, and lawfare that has been heaped on counsel in the 2020 election cases by those who well know "the process is the punishment."

The Supreme Court has recognized these growing threats to First Amendment rights and Due Process. In recent terms, it has issued landmark decisions affirming and defending core First Amendment rights. *See, e.g., 303 Creative LLC v. Ellenis*, 143 S.Ct. 2298 (2023); *Kennedy v. Bremerton School Dist.*, 142 S.Ct. 2407 (2022).

In 2021, 2022, and 2023 Terms, for example, the Supreme Court has granted certiorari for over a dozen petitions addressing the First Amendment or statutes protecting First Amendment freedoms or prohibiting discrimination based on rights protected by the First Amendment. *See, e.g., Houston Community College System v. Wilson*, No. 20-804; *Austin v. Reagan Nat'l Advertising*, No. 20-1029; *Carson v. Makin*, No. 20-1088; *Shurtleff v. Boston*, No. 20-1800; *FEC v. Ted Cruz for Senate*, No. 21-12; *Egbert v. Boule*, No. 21-147; *Kennedy v. Bremerton School Dist.*, No. 21-418; *Ramirez v. Collier*, No. 21-5592; *Groff v. Dejoy*,

No. 22-174; *U.S. v. Hansen*, No. 22-179; *303 Creative LLC v. Elenis*, No. 21-1476; *Counterman v. Colorado*, No. 22-138; *O'Connor-Ratcliffe v. Garnier*, No. 22-324; *Lindke v. Freed*, No. 22-611.   The Supreme Court has also granted certiorari for several petitions presenting Due Process claims, *see, e.g., Vega v. Tekoh*, No. 21-499; *Mallory v. Norfolk Southern Rwy. Co.*, No. 21-1168; *Culley v. Atty. Gen. of Ala.*, No. 22-585; *McElrath v. Georgia*, No. 22-721; *Glossip v. Oklahoma*, No. 22-7466, and election-related questions.   *See, e.g., Allen v. Milligan*, No. 21-1086; *Moore v. Harper*, No. 21-1271.   In the cases that have been decided, it has reversed, vacated and/or remanded the judgment below in the significant majority of those cases. Accordingly, there is at the very least a reasonable probability that certiorari will be granted, and this Court's judgment reversed.

In recent terms, the Supreme Court has also granted certiorari, and reversed or vacated the judgment below, in cases where lower courts or agencies had imposed exhaustion requirements limiting access to the federal courts.   *See, e.g., Axon Enterprise, Inc. v. FTC*, No. 21-86; *Santos-Zacaria v. Garland*, No. 21-1436. These cases show that the current

Supreme Court will protect the right to petition and access to the federal courts to address constitutional challenges like those raised by Appellants.

Finally, Appellants' reasonable probability of success is further increased by the nature of the claims they raise and the source of that threat. The threats to First Amendment freedoms raised in the certiorari petitions referenced above originated in the co-equal federal political branches or from State governments or courts to whom comity is owed in our federal system. The abuse of the judicial sanctions process arises entirely and solely from and within the federal courts and the (mis)application of federal rules and a federal statute. It now threatens all lawyers practicing in the federal courts—and is thus entirely and exclusively within the jurisdiction and control of the Supreme Court.

By the same token, the solution to this problem—application of the Fifth Amendment's Due Process requirements of notice and hearing, *see, e.g., Matthews v. Eldridge*, 424 U.S. 319 (1976)—can be effectuated solely by the federal courts' strict application of their own federal rules, in particular, Rule 11's procedural and notice requirements and the strict construction of Section 1927's language and controlling precedent.

Given the Supreme Court's concerns for First Amendment freedoms, it is all the more likely to act on Appellants' petition to preserve the independence and legitimacy of the federal courts, the unbridled right to petition them, and to protect the federal courts from becoming political weapons themselves.

The Supreme Court has not decided a Rule 11 or Section 1927 case in several years. The most recent decision was in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017), the certiorari petition for which was granted seven years ago in the 2016 term. Much has changed since then: four new justices have joined the Court; the circuit split described below on the application of Rule 11 has fully developed; and a massive coordinated, and well-funded lawfare campaign against attorneys who challenge the 2020 presidential election has erupted with the sanctions process as one of its principal weapons. It is likely that the current Supreme Court will see the need to grant certiorari to give guidance to the lower courts, to the national bar, and to protect the integrity of federal courts.

**B.** **The Panel Created a Circuit and Intra-circuit Split by Affirming Sanctions Without Detroit's Strict Compliance with Rule 11.**

The Fifth and Tenth Circuits require identicality of the notice and the filing. *See Uptown Grill, LLC v. Camellia Grill Holdings*, 46 F.4th 374, 389 (5th Cir. 2022) ("identicality"); *Roth v. Green*, 466 F.3d 1179, 1191–92 (10th Cir. 2006) (notice under Rule 11(c)(1)(A) "requires a copy of the actual motion for sanctions" filed with the Court "to be served on the person(s) accused of sanctionable behavior at least twenty-one days prior to the filing of that motion."). Other circuits used different language, but require more than what Detroit provided. As argued below, Detroit's Rule 11 notice bore no resemblance to its actual filing, hiding in its brief the specifics to which it objected. It is time for the Supreme Court to resolve this Circuit split and to set the ultimate standard and eliminate the confusion dramatically exacerbated by this Court's opinion.

Detroit's Rule 11 "notice," the basis of the Panel's affirmance, did not provide clear notice to plaintiffs of what was sanctionable pursuant to the Rule's outlined procedure. *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (requiring strict adherence). Without specific

notice, plaintiffs were not given "the opportunity to correct their allegedly violative conduct." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 529 (6th Cir. 2002). Instead, Detroit's notice simply recited the language of Rule 11, claiming that the Complaint was "frivolous and legally deficient," filed "for an improper purpose," and sought to undermine democracy.[2] This failed Rule 11's specific notice requirement as a matter of law and contradicts this Court's precedent which "precludes imposing sanctions on the party's motion" if the safe harbor provision is not satisfied. *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 767-68 (6th Cir. 2014); *Ridder*, 109 F.3d at 297.

It also splits from other sister circuits. *See Uptown Grill*, 46 F.4th at 389 (identicality); *Roth v. Green*, 466 F.3d 1179, 1192–93 (10th Cir. 2006) (notice must be same as filing); *Schlaifer Nance & Amp. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) ("[O]nly conduct explicitly referred to in the instrument providing notice is sanctionable."); *Truesdell v. S. Cal. Permanente Med. Grp.*, 293 F.3d 1146, 1151 (9th Cir. 2002) ("a filing-ready motion" required as notice). The split is sufficiently deep to be ripe for Supreme Court review.

---

[2] Notice attached as Exhibit A.

11

**C. The Panel Opinion Violates the Plain Text of §1927 and Supreme Court and Circuit Precedent.**

Section 1927 sanctions should not be imposed where there is a plausible basis for claims.[3] *Kidis v. Reid*, 976 F.3d 708, 723 (6th Cir. 2020) (rejecting sanctions where some claims plausible). Likewise, sanctions should not be imposed when the Plaintiff has made only the basic filings to pursue his suit, or a simple motion would resolve the issue. As a matter of law, filing a single complaint (and an amended complaint) cannot be held to "have multiplied the proceedings unreasonably and vexatiously and therefore §1927 cannot be employed to impose sanctions." *DeBauche v. Trani*, 191 F.3d 499, 511-12 (4th Cir. 1999) (also requiring specific findings to each individual).

In this Circuit, courts may impose "§1927 sanctions only where there was some improper purpose, such as harassment or delay." *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997) (citations omitted). Here the panel correctly found there was no improper purpose, and therefore erred in affirming section 1927 sanctions. *Barney*, 110 F.3d

---

[3] The panel found two claims and the relief requested were not frivolous and not sanctionable. Accordingly, counsel could have amended the complaint upon remand. Op. at 21.

at 1213 (plaintiffs' purpose to obtain relief). Accordingly, the Panel's finding of no improper purpose foreclosed Section 1927 sanctions. Other circuits differ on this issue also, and it is unlikely the Supreme Court would expand the reach of Section 1927 as this Court has done.

### D. The Panel Opinion Contradicts Supreme Court and Sixth Circuit Precedent that Rule 11 Sanctions May Not Be Imposed against Non-Presenting Attorneys.

Rule 11 sanctions may not be imposed on attorneys who did not sign or otherwise present the complaint. The Supreme Court has not changed its opinion that Rule 11 responsibilities are personal. *Pavelic & LeFlore v. Marvel Entm't Grp. et. al.*, 493 U.S. 120, 125–26 (1989). It was error for the Court to impose sanctions against counsel who did not sign, file, or submit any pleading; nor "later advocat[ed]" a pleading. *See* FED. R. CIV. P. 11, 1993 Advisory Committee Notes; *In re Ruben.* 825 F.2d 977, 984 (6th Cir. 1987). The Supreme Court will likely grant Appellants' certiorari petition to clarify the reach of Rule 11 since its Amendment in 1993 and *Pavelic*.

### II. Irreparable Injury Will Ensue if the Mandate is Not Stayed.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*,

427 U.S. 347, 373 (1976).  This Court's decision not only deprives Appellants of their First Amendment right to petition, but it affects the every-day practice of law for hundreds of thousands of lawyers.  It has created—and in the absence of a stay it will continue to create—a monstrous chilling effect on the willingness of attorneys nation-wide to take on controversial or politically charged cases where such lawsuits are most needed—both as a pressure valve and to preserve the legitimacy of our separate branches of government.

It is especially important with the approaching election year that these issues be addressed and resolved before more attorneys are subjected to the massive unprecedented, coordinated, and well-funded lawfare and abuses of process that have been heaped upon those who dared to file court challenges to the 2020 election.  To affirm any aspect of that is the very essence of "chilling" the Supreme Court has instructed federal courts to avoid.  *See Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2000) (imposing sanctions for core political speech "create[s] … a chilling effect" on the enforcement of civil rights).

The irreparable harm from failure to grant a stay will persist at least until the Supreme Court acts on Appellants' certiorari petition or

reverses the judgment, a crucial period of nearly a year (assuming the Court grants and decides the petition in the 2023 term) when, if the 2020 election cycle is a guide, this will affect hundreds of election-related challenges will be brought in courts throughout the United States. Or worse, attorneys will not dare bring such challenges, no matter how valid—because of the example made of counsel herein.

In addition to the irreparable harms faced by lawyers and candidates nation-wide, this Court's decision and failure to grant a stay directly and personally impacts Appellants who each face lifelong and career-altering ramifications. Without notice or Due Process, the opinion wrongly stains previously sterling reputations, destroys livelihoods, and feeds attacks simultaneously launched by multiple bar associations and multi-billion-dollar litigants. The counsel herein know first-hand that other lawyers fear they too will become a target of the relentless, coordinated harassment, and draining lawfare litigation.

## III.   The Balance of the Equities and the Public Interest Favor a Stay.

The protection of the First Amendment right to petition is crucial to the nation and its citizens. Strict construction and application of Rule 11's procedural requirements and Section 1927's statutory language and

precedent are crucial to providing due process to attorneys before they can be subjected to what amounts to quasi-criminal penalties. Moreover, counsel were entitled to –but denied—an evidentiary hearing before sanctions could be imposed here given the great severity of the sanctions awarded: over a hundred-fifty thousand dollars, referrals to multiple bars for disbarment proceedings, and multiple other serious adverse ramifications.[4] Page ID #6997. *See*, *Indah v. U.S. S.E.C.*, 661 F.3d 914, 929 (6th Cir. 2011). Likewise, sanctioning conduct far beyond any means of notice is plain error. *Id.* These violations of Due Process are of great public interest and will have ramifications for many litigants to come if this panel opinion stands. It also has the precise chilling effect on future election challenges that certain parties want. That is unconstitutional.

---

[4] While routine sanctions cases may not require an evidentiary hearing, courts have found that Due Process requires an evidentiary hearing where sanctions are based on findings of bad faith or improper purpose, credibility determinations, or disputed issues of material fact. *See, e.g., Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 206 (7th Cir. 1985) (bad faith); *accord INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.,* 815 F.2d 391, 405 (6th Cir. 1987), *cert. denied sub nom*, 484 U.S. 927 (1987); *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) (en banc) (credibility); *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229-30 (5th Cir. 1998) (disbarment).

Attorneys have a duty to serve their clients zealously and to seek justice—which often means taking cases that many in the general public and on the bench might find distasteful, controversial, or unpopular. It is crucial that lawyers not be dissuaded from taking such cases because of a fear of politically charged retaliation against them—particularly when exercising their First Amendment Right to Petition the Government. Our Framers gave us the First Amendment not merely to protect individual liberty but to secure the legitimacy (and thereby the continuation) of our democratic republican form of government itself. It is incumbent upon the Third Branch to protect the Rule of Law, Due Process, and the Right to Petition from this kind of attack.

## <u>CONCLUSION</u>

Appellants respectfully request that the Court grant Appellants' Motion to Stay the Mandate pending the filing of a petition for writ of certiorari.

Respectfully submitted this 10th day of August 2023.

/s/ Sidney Powell_____
Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com

17

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 27(d), I certify that the attached brief is proportionately spaced, has a typeface of at least 14 points, including headings and footnotes, and contains 3,442 words.

DATED this 10th day of August 2023.


/s/ Sidney Powell
Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of August, 2023, I electronically filed with the Clerk's Office of the United States Court of Appeals for the Sixth Circuit this Appellee's Motion for Stay of the Mandate, and further certify that opposing counsel will be notified of, and receive, this filing through the Notice of Docket Activity generated by this electronic filing.

/s/ Sidney Powell
Sidney Powell, Esq.
2911 Turtle Creek Blvd, Ste 300
Dallas, TX 75219
Ph: 214-707-1775
Email: sidney@federalappeals.com
*Counsel for Appellants*

Exhibit A



**FINK BRESSACK**

December 15, 2020

**VIA E-MAIL/FIRST-CLASS MAIL**

Sidney Powell
Emily P. Newman
Julia Z. Haller
Brandon Johnson
Attorneys at Law
SIDNEY POWELL, PC
2911 Turtle Creek Blvd., Ste. 300
Dallas, TX 75219

Gregory J. Rohl
Attorney at Law
41850 West 11 Mile Rd., Ste. 110
Novi, MI 48375

Stefanie L. Junttila
Attorney at Law
FEDERAL CRIMINAL
  ATTORNEYS OF MICHIGAN
500 Griswold St., Ste. 2340
Detroit, MI 48226-4484

Scott Hagerstrom
Attorney at Law
222 West Genesee
Lansing, MI 48933

L. Lin Wood
Attorney at Law
L. LIN WOOD, PC
P.O. Box 52584
Atlanta, GA 30305-0584

Howard Kleinhendler
Attorney at Law
369 Lexington Ave., 12th Flr.
New York, NY 10017

> *Re:*    *Timothy King, et al v Gretchen Whitmer, et al*
>        *U.S. District Court, Eastern District of Michigan Case No. 2:20-cv-13134*

Dear Counsel:

Please find enclosed, and served, a copy of *Intervenor-Defendant City of Detroit's Motion for Rule 11 Sanctions* in the above-entitled matter.

Very truly yours,

**FINK BRESSACK**

*Nathan J Fink /KSH*

Nathan J. Fink

NJF:ksh
Encl.
cc:    All Counsel for Defendants and
       Intervenor-Defendants (via e-mail only)

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| TIMOTHY KING, MARIAN ELLEN SHERIDAN, JOHN EARL HAGGARD, CHARLES JAMES RITCHARD, JAMES DAVID HOOPER and DAREN WADE RUBINGH, | No. 2:20-cv-13134<br><br>Hon. Linda V. Parker |
|        Plaintiffs,<br><br>  v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of the State of Michigan, et al,<br><br>       Defendants,<br><br>  and<br><br>CITY OF DETROIT, et al,<br><br>       Intervenor-Defendants. | |

**INTERVENOR-DEFENDANT CITY OF DETROIT'S**
**MOTION FOR RULE 11 SANCTIONS**

Intervenor-Defendant City of Detroit (the "City"), by and through counsel, respectfully moves for sanctions against Plaintiffs and their counsel pursuant to Federal Rule of Civil Procedure 11.

The undersigned counsel certifies that counsel communicated in writing with opposing counsel, explaining the nature of the relief to be sought by way of this

motion and seeking concurrence in the relief; opposing counsel thereafter denied concurrence.[1]

## Sanctions Pursuant to Fed. R. Civ. P. 11(b)(1)

1.      Sanctions should be imposed under Fed. R. Civ. P. 11(b)(1) when a pleading or other filing is presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

2.      Sanctions pursuant to the sub-rule should be imposed against Plaintiffs and their counsel because they initiated the instant suit for improper purposes, including harassing the City and frivolously undermining "People's faith in the democratic process and their trust in our government." Opinion and Order Denying Plaintiffs' "Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief," ECF No. 62, PageID.3329-3330.

3.      Plaintiffs and their counsel understood that the mere filing of a suit (no matter how frivolous) could, without any evidence, raise doubts in the minds of millions of Americans about the legitimacy of the 2020 presidential election. As this Court noted, "Plaintiffs ask th[e] Court to ignore the orderly statutory scheme established to challenge elections and to ignore the will of millions of voters." *Id.* PageID.3330.

---

[1] Ms. Powell, this paragraph is included in our proposed motion in anticipation that you will not concur. If you do concur, we will not be filing the Motion.

4.     The Complaints (ECF Nos. 1 and 6), Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief and Memorandum in Support Thereof (ECF No. 7), and Emergency Motion to Seal (ECF No. 8) were devoid of merit and thus could only have been filed to harass the City.

**Sanctions Pursuant to Fed. R. Civ. P. 11(b)(2)**

5.     Sanctions under Fed. R. Civ. P. 11(b)(2) are appropriately entered where the claims, defenses, and other legal contentions are not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

6.     Sanctions pursuant to Rule 11(b)(2) should be imposed against counsel for Plaintiffs because the causes of action asserted in the Complaints (ECF Nos. 1 and 6), Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief and Memorandum in Support Thereof (ECF No. 7), and Emergency Motion to Seal (ECF No. 8) were frivolous and legally deficient under existing law and because Plaintiffs failed to present any non-frivolous arguments to extend, modify, or reverse existing law.

7.     The majority of Plaintiffs' claims were moot. As this Court noted, "[t]he time has passed to provide most of the relief Plaintiffs request in their Amended Complaint; the remaining relief is beyond the power of any court. For these reasons, this matter is moot." ECF No. 62, PageID.3307.

8.    Plaintiffs' claims were also barred by laches because "they waited too long to knock on the Court's door." *Id.* at PageID.3310. Indeed, "Plaintiffs showed no diligence in asserting the claims at bar." *Id.* at PageID.3311. This delay prejudiced the City. *Id.* at PageID.3313.

9.    Plaintiffs lacked standing to pursue their claims. *Id.* at PageID.3317-3324.

10.    Plaintiffs' claim for violation of the Elections and Electors Clauses is frivolous. As this Court held, "Plaintiffs ask the Court to find that any alleged deviation from state election law amounts to a modification of state election law and opens the door to federal review. Plaintiffs cite to no case – and this Court found none – supporting such an expansive approach." *Id.* at PageID.3325.

11.    Plaintiffs' due process and equal protection clause claims are also baseless. With regard to the due process claim, this Court held that "Plaintiffs do not pair [the due process claim] with anything the Court could construe as a developed argument. The Court finds it unnecessary, therefore, to further discuss the due process claim." *Id.* at PageID.3317. As to the equal protection claim, this Court stated that "[w]ith nothing but speculation and conjecture that votes for President Trump were destroyed, discarded or switched to votes for Vice President Biden, Plaintiffs' equal protection claim fails." *Id.* at PageID.3328.

Case: 21-1786    Document: 87    Filed: 08/10/2023    Page: 28


12.     For each of Plaintiffs' claims, Plaintiffs did not identify valid legal theories and the controlling law contradicted the claims. The claims were not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

13.     Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief and Memorandum in Support Thereof (ECF No. 7) was without any legal basis because, as described above, the underlying claims are baseless, and the requests for relief were frivolous.

14.     Plaintiffs' Emergency Motion to Seal (ECF No. 8) was without any legal basis because Plaintiffs seek to anonymously file supposed evidence of a broad conspiracy to steal the 2020 presidential election without providing any authority whatsoever to attempt to meet their heavy burden to justify the sealed filing of these documents.

### Sanctions Pursuant to Fed. R. Civ. P. 11(b)(3)

15.     Sanctions can be imposed under Fed. R. Civ. P. 11(b)(3) where factual contentions do not have evidentiary support or will likely not have evidentiary support after a reasonable opportunity for further investigation or discovery.

16.     Sanctions should be entered against Plaintiffs and their counsel pursuant to Fed. R. Civ. P. 11(b)(3) because the factual contentions raised in the complaints and motions were false.

17.     The key "factual" allegations from the supposed fact witnesses, some of whom attempt to cloak their identities while attacking democracy, have been debunked. The allegations about supposed fraud in the processing and tabulation of absentee ballots by the City at the TCF Center have been rejected by every court which has considered them. If any of the claims in this lawsuit had merit, that would have been demonstrated in those cases. The City refers the Court to its Response to Plaintiffs' Emergency Motion for Declaratory, Emergency, and Permanent Injunctive Relief for a detailed debunking of Plaintiffs' baseless factual contentions. ECF No. 39, PageID.2808-2933.

### Relief Requested

WHEREFORE, for the reasons specified in this Motion and Brief in Support, the City respectfully request that this Court enter an order, among other things:

a)  Imposing monetary sanctions against Plaintiffs and their counsel in an amount sufficient to deter future misconduct;

b)  Requiring Plaintiffs and their counsel to pay all costs and attorney fees incurred by the City in relation to this matter;

c)  Requiring Plaintiffs and their counsel to post a bond of $100,000 prior to the filing of any appeal of this action;

d)  Requiring Plaintiffs and their counsel to post a bond of $100,000 prior to filing, in any court, an action against the City, or any other governmental

entity or their employees, relating to or arising from the facts alleged in this matter;

e) Requiring Plaintiffs to post a substantial bond, in an amount determined by the Court, prior to filing an action in the Eastern District of Michigan;

f) Requiring Plaintiffs and their counsel to obtain certification from a magistrate judge that the proposed claims are not frivolous or asserted for an improper purpose, before filing an action in the Eastern District of Michigan;

g) Requiring Plaintiffs and their counsel to certify, via affidavit, under penalty of perjury, that they have paid all amounts required to fully satisfy any non-appealable orders for sanctions entered by any court, prior to filing an action in the Eastern District of Michigan;

h) Barring Plaintiffs' counsel from practicing law in the Eastern District of Michigan;

i) Referring Plaintiffs' counsel to the State Bar of Michigan for grievance proceedings; and,

j) Granting any other relief for the City that the Court deems just or equitable.

December 15, 2020                    Respectfully submitted,

**FINK BRESSACK**

By:   /s/ David H. Fink
David H. Fink (P28235)

Darryl Bressack (P67820)
Nathan J. Fink (P75185)
*Attorneys for City of Detroit*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
dbressack@finkbressack.com
nfink@finkbressack.com

**CITY OF DETROIT
LAW DEPARTMENT**
Lawrence T. Garcia (P54890)
Charles N. Raimi (P29746)
James D. Noseda (P52563)
*Attorneys for City of Detroit*
2 Woodward Ave., 5th Floor
Detroit, MI 48226
Tel: (313) 237-5037
garcial@detroitmi.gov
raimic@detroitmi.gov
nosej@detroitmi.gov

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2020, I served the foregoing paper on counsel of record via email and caused it to be served by first class mail on counsel for Plaintiffs.

FINK BRESSACK

By: */s/ Nathan J. Fink*
Nathan J. Fink (P75185)
38500 Woodward Ave., Suite 350
Bloomfield Hills, MI  48304
Tel: (248) 971-2500
nfink@finkbressack.com